IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Fair Isaac Corporation; and myFICO
Consumer Services, Inc.,

          Civil Action No: 06 CV 4112 ADM/JSM

    Plaintiffs,

v.

          **Declaration of Paul Gregson**

Equifax Inc.; Equifax Information Services
LLC; Experian Information
Solutions, Inc.; Trans Union LLC; and
VantageScore Solutions, LLC; and Does I
through X,

    Defendants.

I, Paul Gregson, declare as follows:

1.    I am a Marketing Operations Manager for Fair Isaac Corporation ("Fair Isaac").

2.    I make this declaration in support of Fair Isaac's opposition to defendants' motion to compel documents.

3.    I understand that the defendants have brought a motion to compel Fair Isaac to produce information to show every Internet search term ("keyword") that Fair Isaac has ever used in connection with its on-line advertising efforts. I also understand that, as part of the defendants' motion, they have claimed that Fair Isaac has purchased or used the keyword search term "VantageScore" to direct Internet users to Fair Isaac's website.

4.    Fair Isaac does not purchase or use the word "VantageScore" (or any

1

MP3 20237510.1

variation of that word) as a keyword search term for any Internet search engine, so the defendants' claim that Fair Isaac has purchased or used "VantageScore" as a search terms surprised me. After typing the word "VantageScore" into Google's search box, I was able to determine easily from looking at the "URL" in the resulting link that the purchaser of the VantageScore keyword to which the defendants were apparently referring was one of Fair Isaac's affiliate marketing members, Mark Hardt. It was also clear to me that Fair Isaac was not the purchaser of the keyword.

5. Companies that sell products on the Internet often use affiliate marketing programs to direct Internet traffic to their websites. Fair Isaac and the defendant credit bureaus (to the best of my knowledge) use these types of programs. Typically, an affiliate marketing member places pre-authorized graphics and links on its own website so that when a consumer clicks on those graphics or links, the consumer is brought to the website of the company running the affiliate marketing program. The affiliate is then paid a commission on the sales that result from these links.

6. Here, after I determined that Mr. Hardt likely purchased the search term "VantageScore," I contacted him and he confirmed that he was purchasing this term as a paid search term. He told me that he had begun purchasing this term when he was a member of defendant Trans Union's affiliate marketing program, so that he could direct Internet traffic to Trans Union's website. Sometime after he purchased it, he also became a member of Fair Isaac's affiliate program and he started (on approximately July 7, 2007) using "VantageScore" as a keyword search term to link to Fair Isaac's website. He told me that the only reason he was using "VantageScore" to link to the myfico.com website

2

was because he already had it in his portfolio of purchased keyword search terms when he became an affiliate of Fair Isaac's program. I instructed him to stop using "VantageScore" as a keyword search term to generate links to Fair Isaac's website, and he agreed to do so immediately. Last Friday, August 10, 2007, the day after I contacted him, I confirmed that Mr. Hardt had indeed stopped using the search term "VantageScore" to generate links to Fair Isaac's website.

7. Neither I nor, to my knowledge, any other employee of Fair Isaac had any knowledge of Mr. Hardt's use of the term "VantageScore" as a keyword before the defendants raised it in their motion to compel. Neither I, nor to my knowledge, any other employee of Fair Isaac ever permitted or authorized the use of the term "VantageScore" as a paid search term by Mr. Hardt or any other affiliate of Fair Isaac.

I state under penalty of perjury that the foregoing is true and correct.

Date: August 15, 2007

Paul Gregson