IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Fair Isaac Corporation; and myFICO Consumer Services, Inc., <br><br>  Plaintiffs, <br><br> v. <br><br> Equifax Inc.; Equifax Information Services LLC; Experian Information Solutions, Inc.; Trans Union LLC; and VantageScore Solutions, LLC; and Does I through X, <br><br> Defendants. | Civil Action No: 06 CV 4112 ADM/JSM <br><br> **Fair Isaac's Memorandum of Law in Opposition to the Defendants' Motion to Compel Documents in Response to their Second Set of Document Requests (Nos. 19 and 25)** |

**Introduction**

The defendants' motion to compel Fair Isaac to produce documents should be denied. In one part of their motion, they argue that Fair Isaac should be ordered to produce documents that will identify all of Fair Isaac's keyword search terms for Internet advertising. The defendants say that Fair Isaac is being a hypocrite in seeking damages and an injunction relating to Trans Union and Experian's use of Fair Isaac's trademarks in their Internet advertising because Fair Isaac itself uses "VantageScore" as a paid search term. They argue that documents identifying all of Fair Isaac's paid search terms will support their unclean-hands defense. The defendants are wrong. Fair Isaac does not use "VantageScore" as a paid search term. But more to the point, none of Fair Isaac's keyword search terms relate to the trademark rights at issue in this lawsuit. The

defendants' motion, in other words, overlooks one of the fundamental requirements of an unclean-hands defense: the conduct at issue in an unclean-hands defense must involve the trademark rights claimed by the plaintiff. Fair Isaac does not claim "VantageScore" as its trademark. In the other part of its motion, the defendants seek the production of marketing-type documents relating to Fair Isaac's new version of its scoring model. This is odd because Fair Isaac has already agreed to produce those documents.

## Argument

I.  **The defendants' motion to compel Fair Isaac to produce documents identifying Fair Isaac's keyword search terms should be denied.**

In addition to a trademark-infringement claim against all of the defendants for their use of scoring ranges that infringe on Fair Isaac's trademarked scoring range, Fair Isaac has alleged another trademark-infringement claim against Trans Union and Experian alone. Those two defendants (or others on their behalf) are buying advertising from Internet search-engine companies using Fair Isaac's 300-850®, FICO®, and FAIR ISAAC® trademarks as keyword search terms. This represents an infringement of Fair Isaac's trademarks. *See Edina Realty, Inc. v. TheMLSonline.com,* 2006 WL 737064 at *3 (D. Minn. Mar., 20, 2006) (use of a keyword search term is a use in commerce of a trademark under the Lanham Act) (copy at Declaration of Michael Collyard ("Collyard Decl.," Exh. 1). As a result of Trans Union and Experian's practices, when a consumer types the words "Fair Isaac" into Google's search engine, for example, the customer is lured by those defendants' advertising to a Trans Union- or Experian-sponsored website, to purchase one of their credit-scoring products rather than Fair Isaac's. Trans Union and

Experian are unabashed about this practice: they contend that "everyone" is doing this on the Internet (as if that were relevant) and they contend that Fair Isaac has a similar practice (which is not true and not relevant).

So this is their defense: everyone is doing it and so is Fair Isaac. Together, this amounts to nothing more than an attempt to assert an unclean-hands defense. To support this "defense," all of the defendants (oddly, not just Trans Union and Experian) served Fair Isaac with a document request that demands that Fair Isaac produce documents to identify all of the "keyword search terms" that *Fair Isaac* has ever used in Internet advertising. Fair Isaac objected to this request as unduly burdensome and as seeking documents that were neither relevant to any claims or defenses in the lawsuit nor reasonably likely to lead to the discovery of admissible evidence. (In their Memorandum in support of their motion to compel, the defendants imply that Fair Isaac's relevancy objection came out only during the parties' meet-and-confer when, in fact, the objection is stated explicitly in Fair Isaac's responses, through the definition of the word "overbroad".)

A.  **The argument that "Fair Isaac is doing it too" is not true and nothing more than an attempt by defendants to sandbag their way to success on this motion.**

In what they apparently believe is support for their unclean-hands defense, the defendants argue that Fair Isaac is engaged in the same practice that they are, of purchasing keyword search terms using the trademarks of others. In their motion papers, to support this assertion, the defendants state that if a person types "VantageScore" into Google's search engine, an advertising link to Fair Isaac's website will appear. This was

news to Fair Isaac. In the meet-and-confer that preceded the defendants' motion, the defendants never breathed a word about this. Collyard Decl. ¶ 2. Apparently, they were planning to spring the argument on Fair Isaac for the first time in their motion—in an effort to sandbag their way to success.

As soon as Fair Isaac learned of this story about "VantageScore" as a paid search term, Fair Isaac looked into the matter because it knew that Fair Isaac itself was *not* using the word "VantageScore" for keyword advertising on the Internet. Gregson Decl. ¶ 4. What Fair Isaac learned was that one of Fair Isaac's affiliate marketing members (Mark Hardt) had purchased the word recently.[1] Mr. Hardt had been an affiliate marketing member for Trans Union until recently and the word "VantageScore" was simply in the portfolio of words that he generally purchased from search-engine companies. As soon as Fair Isaac told Mr. Hardt to stop using "VantageScore" to link to Fair Isaac's website, he did, and the advertising link should not appear through search engines any more. *See id. generally.* If the defendants know of any more instances of this, Fair Isaac hopes that they will bring them to the attention of Fair Isaac.

**B.      Fair Isaac's keyword search terms are not relevant because they don't relate to how Fair Isaac obtained or maintains its marks at issue in this lawsuit.**

The defendants' unclean-hands defense is essentially this: if Fair Isaac is using the trademarks of others as keyword search terms, then Fair Isaac should not be allowed to

---

[1]. Companies that sell products on the Internet often use what are called affiliate marketing programs to direct Internet traffic to their websites. Typically, an affiliate marketing member places pre-authorized graphics and links on its own website so that when a consumer clicks on those graphics or links, the consumer is brought to the website of the company running the affiliate marketing program. The affiliate is then paid a commission on the sales that result from those links. *See* Paul Gregson Decl. ¶ 5.

stop the defendants from using Fair Isaac's trademarks as keyword search terms. Courts have consistently prohibited defendants from using this type of argument as the basis for an unclean-hands defense.

One of the fundamental limitations of any unclean-hands defense to a trademark-infringement claim is that the defense can only be used if the alleged conduct "has an immediate and necessary relation" to the right in suit. *Shaver v. Heller Merz Co.,* 108 F. 821, 834 (8th Cir. 1901).[2] In other words, a defendant can only have an unclean-hands defense if the alleged conduct relates to the rights in the trademarks that the plaintiff is seeking to enforce. *Flow Control Industries, Inc. v. AMHI, Inc.*, 278 F. Supp.2d 1193, 1198 (W.D. Wash 2003) ("The doctrine of unclean hands would preclude enforcement of a trademark only if plaintiff's wrongdoing is related to the getting or using of the trademark rights that plaintiff was attempting to enforce."). Here, even though an affiliate of Fair Isaac did briefly use "VantageScore" as a keyword search term, that fact cannot, as a matter of law, be a basis for an unclean-hands defense for Trans Union and Experian. The term "VantageScore" does not relate to any trademark rights that Fair Isaac has put at issue in this case.

In the *Flow Control* case, the defendant used the plaintiff's "SKOFLO" trademark as a metatag to direct Internet users to its website instead of the plaintiff's website. *See* 278 F. Supp.2d at 1198.  The plaintiff sued for infringement of trademark and the defendant asserted an unclean-hands defense, arguing that the plaintiff should be barred

---

2. *See also, e.g.*, *General Elec. Co v. Minneapolis Elec. Lamp Co.*, 10 F.2d 851, 854-55 (D. Minn. 1924); *People for the Ethical Treatment of Animals v. Doughney*, 113 F. Supp.2d 915, 921 (E.D. Va. 2000), *aff'd* 263 F.3d 359 (4th Cir. 2001).

from pursuing its claim because the plaintiff used defendant's "AMFLOW" trademark in metatags to direct Internet users to the plaintiff's website. The court rejected this idea, explaining that the plaintiff's use of the defendant's trademark had nothing to do with the manner in which the plaintiff obtained or used its "SKOFLO" mark. *Id.* at 1198. The court in *Flow Control* said: "Because plaintiff's alleged wrongdoing is unrelated to the right it seeks to enforce in this litigation, the doctrine of unclean hands does not apply." *Id.*

Like the defendant in *Flow Control*, Trans Union and Experian do not base their unclean-hands defense on any rights that Fair Isaac has in its 300-850®, FICO® or FAIR ISAAC® trademarks—the trademark rights that Fair Isaac seeks to enforce in this lawsuit. For this reason, Trans Union and Experian have no basis to assert their unclean-hands defense. Indeed, they have cited no cases that support their novel theory of unclean hands. The cases that they cite simply stand for the same proposition that Fair Isaac asserts: that neither Trans Union nor Experian have any basis to claim that Fair Isaac's keyword search terms are relevant because the defendant's unclean-hands argument is not based on Fair Isaac's rights in suit.

In *Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*, for example, a case cited by Trans Union and Experian, the plaintiff brought a preliminary-injunction motion against the defendant to try and enjoin it from using a container for its ice cream product, which the plaintiffs alleged was confusingly similar to the plaintiff's ice cream container and intended by the defendant to deceive the public into believing that the defendant's product was made in Sweden. But the plaintiff's product also wasn't made in Sweden,

and the defendant argued that the plaintiff's container also misled consumers to believe that its product was of Scandinavian origin. The court found that the unclean-hands defense applied to these facts "because the plaintiff's misconduct related to its exercise of the right in suit, the alleged right to 'exclusive' use of a particular 'unique Scandinavian marketing' technique." *See Specialty Minerals, Inc. v. Pluess-Staufer AG,* 395 F. Supp.2d 109, 113 (S.D.N.Y. 2005) (reviewing the court's rationale in *Haagen-Dazs* and distinguishing that case from the same type of argument that Trans Union and Experian are making).

Similarly, in the *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Callahan* case cited by the defendants, the unclean-hands defense also dealt with the rights in suit. There, the court applied the unclean-hands defense because the plaintiff acquired the right in suit— that is, the right to exclusive use of a list of client names—through the same inequitable conduct in which it accused the defendant of engaging. *See* 265 F. Supp.2d 440, 443 (D.Vt. 2003). This is quite different from the Trans Union and Experian's effort to construct an unclean-hands defense. Here, Fair Isaac did not gain its rights to use the trademarks that it has placed at issue in this litigation through the use of another party's trademarks.

Another case that the defendants cite is *Western Union Telegraph Co. v. MCI Communications Corp.*, which also dealt with an unclean-hands defense involving the rights in suit (unlike Trans Union's and Experian's defense). There, the plaintiff claimed that the defendant had improperly diverted a substantial amount of international telecommunications traffic to itself, which otherwise would have gone to the plaintiff, by

manipulating certain telecommunications access-code numbers and by making false representations to telecommunication subscribers and other customers. *See* 1986 WL 2769 at *1 (S.D.N.Y. Feb. 26, 1986) (Collyard Decl., Exh. 2). The court concluded that the unclean-hands defense could be applicable because the right sought to be vindicated by the plaintiff—which in that case was the right to fair competition and proper operation of the proportional return system in the particular foreign markets where the plaintiff gained entry—was improperly obtained by illegal bribes that allowed the plaintiff to operate in the countries at issue. *See id.* at *2.

A Ninth Circuit case cited in the *Western Union* decision summarized the point nicely: "'[W]hat is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts . . . .'" *Western Union*, 1986 WL 2769 at *2 (quoting *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir. 1985)). Here, of course, Fair Isaac did not "dirty" its hands in obtaining its 300-850®, FICO® or FAIR ISAAC® trademarks—and Trans Union and Experian don't base their unclean-hands defense on any such allegation.[3]

---

3. Similarly, the decision in *Precision Instrument MFG. Co. v. Automotive Maintenance Machinery*, which the defendants also cite, dealt with an unclean-hands defense relating to the rights in suit. There, the defendant's unclean-hands defense to the plaintiff's patent-infringement and breach-of-contract claims was based on the perjury that the plaintiff concealed from the Patent and Trademark Office to obtain the patents in suit. Contrary to the defendants' suggestion in their opening brief, the *Nikkal Indus., Ltd. v. Stalton, Inc.* case cited by the defendants didn't even decide the issue of unclean hands. *See* 735 F. Supp. 1227 (S.D.N.Y. 1990) ("Since Nikkal has failed to establish a violation of the Lanham Act or any resultant damages, the court need not consider whether the equitable defense of 'unclean hands' applies to this ice-cream case.").

**C.     The defendants themselves, in response to Fair Isaac's document requests, admit that the information that they are seeking is irrelevant.**

Trans Union and Experian have refused to produce to Fair Isaac the very documents that they are seeking in this motion. Fair Isaac recently served document requests on Trans Union and Experian in which Fair Isaac requested that Trans Union and Experian produce, among other things, documents that identify the keyword search terms that defendants have used. Even though Fair Isaac has trademark-infringement claims against Trans Union and Experian based on the defendants' use of Fair Isaac's 300-850®, FICO® and FAIR ISAAC® trademarks as keyword search terms, Trans Union and Experian refused to produce any documents responsive to this request (except for documents relating to keyword search terms that contain the terms 300-850, FICO or FAIR ISAAC). *See* Collyard Decl., Exh. 3 at 3-4 and Exh. 4 at 6-7 (Trans Union's and Experian's Responses to Fair Isaac's Third Set of Document Requests).

Trans Union and Experian based their objections on relevancy and burden grounds. *See id*. And they took the position that only the marks at issue in this suit, *and nothing else*, are relevant to this case and that Fair Isaac's trademark claims are only based on its 300-850®, FICO® and FAIR ISAAC® marks. *See* Collyard Decl., Exh. 5 at 2 (letter from Fair Isaac's counsel to Trans Union and Experian's counsel). Given their position on Fair Isaac's request, it's hypocritical for the defendants to demand production of documents identifying all of Fair Isaac's trademarks when they have flatly refused to provide any such information to Fair Isaac.

**D.  Trans Union and Experian have no standing to assert a defense based on "VantageScore," especially when the affiliate has stopped using the term.**

Trans Union and Experian have no standing to assert an unclean-hands defense based on one of Fair Isaac's affiliate's now discontinued use of the term "VantageScore" as a keyword search term. As defendants state in their opening brief, "'VantageScore', … is a trademark of Defendant VantageScore" (not Trans Union or Experian). Defendants' Memo at 5; *see also* Dayton Klein Decl, Exh. 1 at ¶¶ 9.1, 9.8 (filed under seal); *see also Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 339 F. Supp. 2d 944, 959 (W.D. Mich. 2004); *Quabag Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 159 (1st Cir. 1977) (overturning lower court's denial of defendant's motion to dismiss on the basis of lack of standing, finding that the plaintiff lacked standing to assert a claim for trademark infringement because it is not a registrant or an exclusive licensee). Trans Union and Experian also cannot make an unclean-hands defenses out of conduct that has stopped. *See* 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 31:56 ("Even if plaintiff's conduct existed at the time of filing suit, if that conduct has been rectified by the time of judgment, unclean hands may be no defense.") (citing *Fund of Funds, Ltd. v. First American Fund of Funds,* 274 F. Supp. 517, 519 (S.D.N.Y. 1967) (allegations based on an SEC investigation cleared after the suit was filed would not form the basis for an unclean hands defense)).

**II.  The defendants' motion to compel documents under Request No. 25 should be denied because Fair Isaac agreed to produce all of the documents.**

The defendants' motion to compel production of documents responsive to Request No. 25 of its Second Set of Document Requests is odd. After the defendants clarified

during the parties' meet-and-confer more precisely what they were seeking by this Request, Fair Isaac agreed to produce responsive documents. At first, by this request, the defendants sought "all documents (except for the algorithms themselves) relating to Fair Isaac's planned changes to its algorithms and databases, or introductions of new algorithms and databases, announced May 17, 2007." Fair Isaac objected to the scope of this request on a number of grounds. Then, after the parties met to talk about the request and Fair Isaac's objections, the defendants "clarified" their request (apparently they didn't want to be accused of contradicting themselves because of their own refusal to produce any documents that might be "revealing of" their algorithms). The defendants "clarified" their request by saying that they were *not* seeking any technical information by this request that would reveal any part of Fair Isaac's algorithm. Instead, they described the "technical information" that they were seeking by this request as marketing-type information—documents, for example, that might state that the "recent redevelopment of the algorithm would involve additional scorecards, improved segmentation, or result in a higher 'KS' score." *See* Collyard Decl., Exh. 6 at 3 (letter from Experian's counsel to Fair Isaac's counsel). They also explained, for example, that "a document describing the calculations for assigning consumers to a given scorecard would reveal a portion of Fair Isaac's algorithm and would *not* be responsive" to their request. *See id.* (emphasis added).

Based on the defendants' own clarification of what they were seeking from this request (and what they were not seeking), Fair Isaac agreed to produce the responsive documents. The defendants' confusion today—and the apparent reason why they filed a

motion to compel without even talking to Fair Isaac again—appears to relate to the defendants' insistence on calling marketing-type information, "technical information." But regardless of how the defendants want to label this type of information, Fair Isaac has agreed to produce the information that defendants say is responsive. In Fair Isaac's view, therefore, there is no dispute here and the defendants' motion to compel should be denied.

## Conclusion

Fair Isaac's keyword search terms are not relevant to Trans Union or Experian's purported unclean hands defense because the search terms don't relate to any of Fair Isaac's rights in the trademarks asserted in this lawsuit. And because Fair Isaac has already agreed to produce the documents that the defendants clarified as responsive to Request No. 25, there is no dispute for the Court to adjudicate. Fair Isaac respectfully requests that the defendants' motion to compel be denied in its entirety.

Date: August 15, 2007        **Robins, Kaplan, Miller & Ciresi, L.L.P.**

                                         **By:** /s Randall Tietjen
                                                 Ronald J. Schutz (MN Bar #130849)
                                                 Randall Tietjen (MN Bar #214474)
                                                 Michael A. Collyard (MN Bar # 302569)

                                           2800 LaSalle Plaza
                                           800 LaSalle Avenue
                                           Minneapolis, MN 55402
                                           Tel: (612) 349-8500
                                           Fax: (612) 339-4181

                                           and

Charles F. (Rick) Rule
Martin L. Seidel
Ngoc Pham Hulbig
Joseph J. Bial
**Cadwalader, Wickersham & Taft LLP**
1201 F Street, N.W.
Washington, D.C. 20004
Tel:  (202) 862-2200
Fax:  (202) 862-2400

**Attorneys for Plaintiffs**