IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Fair Isaac Corporation; and myFICO Consumer Services, Inc.;<br><br>    Plaintiff,<br><br>v.<br><br>Equifax Inc.; Equifax Information Services LLC; Experian Information Solutions Inc.; TransUnion, LLC; VantageScore Solutions LLC; and Does I through X;<br><br>    Defendants. | Civil Action No:<br>0:06-cv-04112 (ADM/JSM) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL PRODUCTION OF
DOCUMENTS RESPONSIVE TO REQUESTS 19 AND 25 OF DEFENDANTS'
SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

Plaintiffs' opposition demonstrates precisely why Defendants need the discovery requested in their Motion. With respect to Defendants' Request No. 19 (concerning Plaintiffs' keyword advertising), Plaintiffs concede that the term "VantageScore" was purchased and used as a keyword to promote Plaintiffs' credit scoring services – the same conduct at issue in this litigation. But Plaintiffs blame an "affiliate" and ask Defendants and this Court to accept the hearsay-laden declaration of Paul Gregson at face value without benefit of discovery. (Opp. Mem. 4) Defendants, however, are entitled to test the veracity of Plaintiffs' story.[1] Moreover, Defendants are entitled to discover whether

---

[1] Facially, Mr. Gregson's cryptic explanation appears inconsistent with the facts, further demonstrating the need for discovery on these issues. The ad linked to the

the conduct of the purported "affiliate" may be properly imputed to Plaintiffs under ordinary principles of agency.

Plaintiffs also fail to address Defendants' first ground for its motion: that Plaintiffs' conduct constitutes an admission by Fair Isaac that the practice at issue is a fair and standard marketing practice among companies doing business online that is not likely to cause confusion. For this reason alone, the Court should grant Defendants' motion with respect to Request No. 19.

With respect to Request No. 25 (concerning Plaintiffs' new scoring service), contrary to Plaintiffs' assertion, Plaintiffs expressly refused without basis to produce the information requested. Accordingly, unless Plaintiffs commit otherwise, Defendants' motion with respect to Request No. 25 remains necessary and should be granted.

## I.  REQUEST NO. 19 – KEYWORD ADVERTISING

Plaintiffs' opposition contains several material misstatements of fact and law that merit a brief response.

First, Plaintiffs argue that the unclean hands defense in trademark cases is limited to conduct related to the trademark rights at issue. That is incorrect. The doctrine is generally applicable when the plaintiff's conduct relates to the <u>claims</u> at issue. <u>Precision Instr. Mfg. Co.</u> v. <u>Automotive Maintenance Mach.</u>, 324 U.S. 806, 815 (1945) ("Any willful act *concerning the cause of action* which rightfully can be said to transgress

---

"VantageScore" keyword contained the "URL" www.MyFICO.com (Gant Decl. Exs. 9, 12, 13), a domain name and website owned by Fair Isaac Corporation. It is difficult to see how Mr. Gregson could "determine easily from looking at the 'URL'" that Mark Hardt, and not Plaintiffs, was behind the keyword ad purchase. Gregson Decl. ¶ 4.

equitable standards of conduct is sufficient cause for the invocation of the maxim . . . ." (emphasis added)).  The court has a "wide range" of discretion in applying the doctrine. Id. at 815.

As discussed in Defendants' opening memorandum, courts repeatedly have applied the unclean hands doctrine where the plaintiff is engaging in the same conduct for which plaintiff claims the defendant is liable.  See Defs. Mem. at 7-8; see also 4 Callman on Unfair Competition, Trademarks and Monopolies § 23:17 (4th ed. 2007) ("The doctrine of unclean hands . . . is clearly applicable if the plaintiff is chargeable with the same inequitable conduct which he charges to the defendant."); 30A C.J.S. Equity § 112 (2007) ("Relief has often been denied because plaintiff, seeking relief against the misconduct of another, has been guilty of a similar but disconnected act.").  Moreover, this brand of unclean hands applies with particular force here because Defendants vigorously dispute that the accused conduct – purchasing a trademark as a keyword search term  – constitutes trademark infringement or unfair competition at all.

Second, Plaintiffs misrepresent the cases cited by Defendants.  In Merrill Lynch, the court applied the unclean hands doctrine because of "Merrill Lynch's policy of encouraging newly hired financial analysts to solicit their former clients," Merrill Lynch, Pierce, Fenner & Smith Inc. v. Callahan, 265 F. Supp. 2d 440, 443 (D. Vt. 2003), not because Merrill Lynch acquired the property right at issue – a client list – through inequitable conduct, as Plaintiff asserts.  (Opp. Mem. 7)

In Haagen-Dazs, the unclean hands doctrine did not relate to the "alleged right to 'exclusive' use of a particularly 'unique Scandinavian marketing technique.'"  (Opp.

Mem. 7) Instead, the defense related to "plaintiff's allegations that defendants' container is intended to deceive the public into believing that their product is made and/or sold in Sweden," a separate unfair competition claim in the nature of false advertising. Haagen-Dazs v. Frusen Gladje Ltd., 493 F. Supp. 73, 75-76 (S.D.N.Y. 1980). The court found that because Haagen-Dazs attempted to convey the same impression – that it was of Swedish origin, when its ice cream is made in New Jersey – Haagen-Dazs could not be heard to complain that Frusen Gladje did the same thing.[2] The case is directly on point.

Western Union does not deal with the "unclean hands defense involving the rights in suit," as Plaintiffs assert. (Opp. Mem. 7) Western Union sought to enjoin MCI from tortiously diverting telex traffic by manipulating access codes and making false representations. MCI asserted unclean hands on the ground that Western Union also improperly diverted telex traffic, but through bribes. Thus, the parties' conduct was similar but distinct, and there were no "rights in suit" other than the general right to sue for the tortious conduct of another.[3]

---

[2] In this regard, the court in Specialty Minerals, Inc. v. Pluess-Staufer AG, 395 F. Supp. 2d 109, 113 (S.D.N.Y. 2005) is simply wrong in its description of Haagen-Dazs. Defendants refer this Court to the Haagen-Dazs decision itself.

[3] Plaintiffs' other authority is inapposite. In Flow Control Indus., Inc. v. AMHI, Inc., 278 F. Supp. 2d 1193 (W.D. Wash. 2003), the propriety of the conduct involved – the use of the other party's trademarks as metatags and domain names – was not disputed. In contrast, Defendants here maintain they have a right to use a trademark as a keyword, a right that Plaintiffs seem to have enjoyed until recently – and may still with respect to other trademarks, although Plaintiffs refuse to disclose the extent of this practice at Fair Isaac. In Specialty Minerals, Inc. v. Pluess-Stauffer AG, 395 F. Supp. 2d 109, 112-13 (S.D.N.Y. 2005), the plaintiff's alleged conduct was not the same as, or even similar to, defendant's alleged conduct. Here, both parties have engaged in the exact same conduct.

Third, Plaintiffs misstate the law of keyword advertising.  Contrary to Plaintiffs' contention, the purchase of trademarks as keywords does not constitute trademark infringement.  (Opp. Mem. 2)  No court has held that it does.  Most courts that have addressed the issue have ruled that a trademark used as a keyword is not a "use in commerce" under the Lanham Act.[4]  Courts that have declined to dismiss keyword advertising claims outright have done so only where the mark at issue is visibly displayed in the sponsored ad.[5]  For this reason, Plaintiffs' reliance on Edina Realty is misplaced.  In Edina Realty, the court held that the purchase of a trademark as a keyword was a "use in commerce" under the Lanham Act, but denied plaintiff's motion for partial summary judgment because there was a genuine issue of fact whether there was a likelihood of confusion.  Edina Realty, Inc. v. TheMLSonline.com, 2006 WL 737064, at *6 (D. Minn. Mar. 20, 2006).  Significantly, the defendant prominently displayed the "Edina Realty" mark in the sponsored ad triggered by the keyword.  Id. at *1, *5.

Fourth, Plaintiffs' claim that Defendants tried to "sandbag" them by "spring[ing]" the unclean hands argument on them "for the first time in their motion" is wrong.  (Opp. Mem. 4)  In a letter to Plaintiffs' counsel, Defendants clearly stated:

> [A]s we discussed, Plaintiffs allege that Defendants' use of paid internet search terms or keywords, among other things, is a "deceptive trade practice" and constitutes "unfair competition."  To the extent Plaintiffs engage in the very same practices that Defendants allegedly are engaging in, that is clearly relevant to what Plaintiffs consider a fair and standard practice in the industry.  Defendants are entitled to seek discovery for such admissions.  This discovery also may be relevant to Defendants' unclean hands defense.

---

[4] See, e.g., Rescuecom Corp. v. Google, Inc., 456 F. Supp. 2d 393 (N.D.N.Y. 2006).

[5] See, e.g., Edina Realty, Inc. v. TheMLSonline.com, No. Civ. 04-4371JRTFLN, 2006 WL 737064, at *5 (D. Minn. Mar. 20, 2006).

(Gant Decl. Ex. 3.)

Fifth, Plaintiffs misstate the law of standing. Standing is only required to assert a claim; there is no standing requirement to assert an affirmative defense. See, e.g., 15 Moore's Fed. Prac. 3d § 101.20 (2007). Plaintiffs' cited cases are not to the contrary.

Sixth, Plaintiffs claim that "TransUnion and Experian also cannot make an unclean hand defenses out of conduct that has stopped." (Opp. Mem. 10) There is no such rule. Plaintiffs cite McCarthy on Trademarks that merely says that in such circumstances "unclean hands *may* be no defense," 6 McCarthy on Trademarks § 31:55 (2006) (emphasis added), while citing a single case, Fund of Funds, in which the court declined to apply the doctrine to misconduct alleged by the SEC because after the complaint was filed the SEC settled its claim against plaintiff without making any findings of misconduct. Fund of Funds, Ltd. v. First Am. Fund of Funds, 274 F. Supp. 517, 519 n.1 (S.D.N.Y. 1967). That is a far cry from this case, where Plaintiffs admit that the conduct occurred, but assert that it has stopped. The case certainly does not support denying discovery into the matter.

## II. REQUEST NO. 25 – NEW FICO SCORING SERVICE

The issue concerning Request No. 25 is more than semantic. Contrary to Plaintiffs' opposition, counsel refused to produce any technical information responsive to Request No. 25 (this would include, among other things, technical documents showing the differences between the new version of FICO Classic and other FICO models), regardless whether that information revealed the FICO Classic algorithm or not. (Gant Decl. 5.) Defense counsel responded that Defendants were in fact seeking responsive

technical information. (Gant Decl. Ex. 6.) But Plaintiffs never responded, thus necessitating Defendants' motion.

However, if Plaintiffs intend by their opposition to represent to Defendants and this Court that they will produce all information responsive to Request No. 25 – as clarified by defense counsel's correspondence to exclude production of information revealing the relevant algorithms – then Defendants will withdraw their Motion. If not, then Defendants' motion remains necessary and should be granted for all the reasons set forth in Defendants' opening memorandum.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion to compel.

## LOCAL RULE 7.1(C) CERTIFICATION

The undersigned movants certify that this Reply Memorandum of Law contains 1,740 words. Together, this Reply Memorandum of Law and the Memorandum of Law filed on August 8, 2007 contain a cumulative total of 3,926 words. These counts were prepared with the word count feature of Microsoft Office Word 2003, the program used to prepare Memorandum of Law and the Reply Memorandum of Law. The word counts were applied specifically to include all text, including headings, footnotes, and quotations, but excluding captions, signature text, and certificates of counsel.

Respectfully submitted this 21st day of August, 2007.

**Lindquist & Vennum PLLP**

By: <u>s/Mark A. Jacobson</u>
     Mark A. Jacobson (MN Bar #188943)
     Mark H. Zitzewitz (MN Bar #0289073)

4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 371-3211
Fax: (612) 371-3207

– and –

M. Elaine Johnston
Robert A. Milne
Christopher J. Glancy
Jack E. Pace III
**White & Case LLP**
1155 Avenue of the Americas
New York, NY 10036-2787
Tel: (212) 819-8200
Fax: (212) 354-8113

*Attorneys for Defendant*
*Experian Information Solutions, Inc.*
*(Authorized to sign on behalf of all Defendants)*

Jeffrey J. Keyes (MN Bar #55505)
Jay W. Schlosser (MN Bar #204353)
**Briggs and Morgan, P.A.**
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 977-8400
Fax: (612) 977-8650

– and –

Peter Kontio
Michael P. Kenny

Teresa T. Bonder
**Alston & Bird LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Tel: (404) 881-7000
Fax: (404) 881-7777

*Attorneys for Defendants Equifax Inc. and Equifax Information Services LLC*

Lewis A. Remele, Jr. (MN Bar #90724)
Christopher R. Morris (MN Bar #230613)
**Bassford Remele**
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402
Tel: (612) 376-1601
Fax: (612) 333-8829

– and –

James K. Gardner
Ralph T. Russell
**Neal, Gerber & Eisenberg LLP**
Two North LaSalle Street, Suite 2200
Chicago, IL 60602
Tel: (312) 269-8030
Fax: (312) 269-1747

*Attorneys for Defendant TransUnion LLC*

Barbara Podlucky Berens (MN Bar #209788)
John D. Bessler (MN Bar #218418)
**Kelly & Berens**
3720 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 349-6171
Fax: (612) 349-6416

*Attorneys for Defendant VantageScore Solutions, LLC*