**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Fair Isaac Corporation and
myFICO Consumer Services, Inc.,

        Plaintiffs,

    v.

Equifax Inc.; Equifax Information Services
LLC; Experian Information Solutions Inc.;
Trans Union, LLC; and VantageScore
Solutions, LLC,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 06-4112 ADM/JSM

---

Ronald J. Schutz, Esq., Randall Tietjen, Esq. and Michael A. Collyard, Esq., Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, MN, and Charles F. Rule, Esq., Ngoc Pham Hulbig, Esq. and Joseph J. Bial, Esq., Cadwalader, Wickersham & Taft LLP, Washington, DC, on behalf of Plaintiffs.

Jeffrey J. Keyes, Esq. and Jay W. Schlosser, Esq., Briggs and Morgan, P.A., Minneapolis, MN, and Peter Kontio, Esq., Michael P. Kenny, Esq. and Teresa T. Bonder, Esq., Alston & Bird LLP, Atlanta, GA, on behalf of Equifax Inc. and Equifax Information Services LLC; Mark A. Jacobson, Esq. and Mark H. Zitzewitz, Esq., Lindquist & Vennum PLLP, Minneapolis, MN, and M. Elaine Johnston, Esq., Robert A. Milne, Esq. and Christopher J. Glancy, Esq., White & Case LLP, New York, NY, on behalf of Experian Information Solutions Inc.; Lewis A. Remele, Jr., Esq. and Christopher R. Morris, Esq., Bassford Remele, Minneapolis, MN, and James K. Gardner, Esq. and Ralph T. Russell, Esq., Neal, Gerber, & Eisenberg LLP, Chicago, IL, on behalf of Trans Union, LLC; Barbara Podlucky Berens, Esq. and John D. Bessler, Esq., Kelly & Berens, Minneapolis, MN, on behalf of VantageScore Solutions, LLC.

---

## I. INTRODUCTION

    This matter is before the undersigned United States District Judge on Defendants Equifax

Inc.; Equifax Information Services LLC (collectively "Equifax"); Experian Solutions Inc.

("Experian"); Trans Union, LLC ("Trans Union") (Equifax, Experian, and Trans Union collectively are the "Credit Bureau Defendants"); and VantageScore Solutions, LLC's ("VantageScore") (Equifax, Experian, Trans Union, and VantageScore collectively are "Defendants") Consolidated Objections [Docket No. 179] to: (1) Magistrate Judge Judge Janie S. Mayeron's July 27, 2007, Order [Docket No. 151] denying Defendants' Motion for a Protective Order [Docket No. 82] and granting Plaintiff Fair Isaac Corporation's ("Fair Isaac") Motion to Compel [Docket No. 93]; and (2) Judge Mayeron's July 3, 2007, Amended Protective Order [Docket No. 144].  For the reasons set forth herein, Defendants' Objections are overruled.

## II. BACKGROUND

The facts and procedural history relevant to this discovery dispute are set forth in Judge Mayeron's July 27, 2007, Order.  Therefore, only a brief version of the relevant facts and procedural history is presented here.  Fair Isaac develops algorithms and software that generate consumer credit scores from data collected by the Credit Bureau Defendants.  2d Am. Compl. [Docket No. 81] ¶¶ 43-45.  For a number of years, the Credit Bureau Defendants have licensed Fair Isaac's credit-scoring algorithms and software to generate and provide Fair Isaac's credit scores to lenders and consumers.  Id. ¶ 44.  In March 2006, the Credit Bureau Defendants announced that through a joint venture, VantageScore, they had developed a joint algorithm and software for generating credit scores that would compete with Fair Isaac's credit-scoring products.  Id. ¶ 63.

Plaintiffs Fair Isaac and myFico Consumer Services, Inc. (collectively "Plaintiffs"), a wholly owned subsidiary of Fair Isaac, filed this litigation on October 11, 2006.  In their Second Amended Complaint, Plaintiffs assert fifteen counts, including claims against all Defendants for

unfair competition and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), a claim against Trans Union and VantageScore for misappropriation of trade secrets, a claim against Trans Union for breach of contract, and a claim against VantageScore for interference with contract. 2d Am. Compl. ¶¶ 197-203, 259-75.

On January 12, 2007, Fair Isaac served discovery requests seeking "the algorithm and the software and process used in conjunction with the algorithm to produce a credit score." Schlosser Aff. [Docket No. 86] Ex. A. at 3. On April 25, 2007, Defendants moved for a protective order precluding discovery regarding "the actual model, design, algorithm, computer program, portions or drafts thereof and numerous other materials that would reveal the actual model, design or computer program (collectively, the 'Algorithm'), used by Defendants in calculating the VantageScore credit score." Mem. in Supp. of Defs.' Mot. for Protective Order [Docket No. 84] at 1-2. Simultaneously, Fair Isaac moved to compel production of VantageScore's algorithm and related documents.

Meanwhile, the parties requested a general protective order that would govern disclosure of confidential and highly confidential information. The parties agreed on most of the provisions of a proposed protective order, but disagreed regarding protections for any algorithm information the parties might be required to disclose. Judge Mayeron issued a Protective Order [Docket No. 139] on June 19, 2007, and, pursuant to the parties' stipulation, issued an Amended Protective Order on July 3, 2007.

On July 27, 2007, Judge Mayeron issued an Order denying Defendants' Motion for a Protective Order precluding discovery of the VantageScore algorithm information, granting Fair Isaac's Motion to compel disclosure of such information, and ordering that Defendants disclose

3

the information by August 24, 2007.  On August 22, 2007, this Court issued an Order [Docket No. 205] staying production of Defendants' algorithm and related data so that Defendants' Objections would not be rendered moot.

### III. DISCUSSION

**A.     Standard of Review**

The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential.  <u>Reko v. Creative Promotions, Inc.</u>, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999).  The district court must affirm an order by a magistrate judge unless it is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).  "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  <u>Chakales v. Comm'r of Internal Revenue</u>, 79 F.3d 726, 728 (8th Cir.1996).

**B.     Objections to the July 27, 2007, Order**

Defendants object to Judge Mayeron's July 27, 2007, Order requiring disclosure of the VantageScore algorithm information.  The Federal Rules of Civil Procedure generally provide for liberal discovery.  "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  However, Rule 26(c)(7) provides that "for good cause shown . . . the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that a

trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way."

The Eighth Circuit analyzes trade secret discovery disputes under the burden-shifting framework set forth in In re Remington Arms Co., 952 F.2d 1029, 1032 (8th Cir. 1991). Under this framework, Defendants must show that the algorithm information is a "trade secret" under Rule 26(c)(7) and that its disclosure would be harmful to Defendants' interest in the algorithm information. Remington Arms Co., 952 F.2d at 1032. The burden then shifts to Fair Isaac to show that the algorithm information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial. Id. If Fair Isaac shows both relevance and need, the court must weigh the injury that disclosure might cause Defendants against Fair Isaac's need for the algorithm information. Id.

For the purposes of the instant discovery dispute, Fair Isaac does not dispute that Defendants have met their burden of showing that the VantageScore algorithm information is a trade secret under Rule 26(c)(7) and that disclosure of the algorithm information would be harmful to Defendants. See Fair Isaac's Resp. [Docket No. 206] to Defs.' Objections at 6. Therefore, the Court proceeds to analyze whether Fair Isaac has met its burden under the second prong of the Remington Arms test.

Judge Mayeron concluded that Fair Isaac showed that the algorithm information is relevant and necessary to prepare this case for trial of Fair Isaac's misappropriation and contract claims. Defendants have not directly challenged this conclusion.[1] Instead, they rely on a district

---

[1] Defendants have objected to Judge Mayeron's conclusion that the algorithm information is necessary for trial of Fair Isaac's false advertising claims. However, as explained below, this Court agrees that the information is discoverable for Plaintiffs' misappropriation and contract claims. Therefore, it is unnecessary to determine whether the information is

court decision in <u>Puritan-Bennett Corp. v. Pruitt</u>, 142 F.R.D. 306, 308 (S.D. Iowa 1992) for the proposition that Fair Isaac must also demonstrate a "substantial factual basis" for these claims before obtaining discovery of the trade secret algorithm information.  Puritan-Bennett sought discovery of its competitor's trade secrets in order to prove that Pruitt, a former Puritan-Bennett employee, had provided the competitor with Puritan-Bennett's trade secrets.  <u>Id.</u> at 307.  Relying on a decision of the District of Massachusetts, the court held that in addition to the relevance and necessity requirements discussed in step two of <u>Remington Arms</u>, a plaintiff seeking discovery of a competitor's trade secrets must also establish a "substantial factual basis" for its claims based on evidence gathered through discovery.  <u>Id.</u> at 308-09, <u>citing</u> <u>Microwave Research Corp. v. Sanders Assocs.</u>, 110 F.R.D. 669, 674 (D. Mass. 1986).

     Judge Mayeron rejected <u>Puritan-Bennett Corp.</u>'s substantial factual basis requirement as inconsistent with <u>Remington Arms</u>.  In the alternative, Judge Mayeron concluded that Fair Isaac has demonstrated a substantial factual basis for its misappropriation and contract claims.  Defendants argue that Judge Mayeron erred as a matter of law by not requiring the substantial factual basis showing, and that Judge Mayeron committed clear error by concluding in the alternative that Fair Isaac has demonstrated a substantial factual basis.

     It is dubious whether <u>Puritan-Bennett Corp.</u>'s substantial factual basis requirement is necessary under <u>Remington Arms</u>.  Regardless, this Court agrees with Judge Mayeron's conclusion that Fair Isaac has submitted "the type of circumstantial evidence and inferences that could support its claims against these defendants."  July 27, 2007, Order at 14.  In reaching this conclusion, Judge Mayeron cited the following: (1) pursuant to contractual arrangements, Trans

---

discoverable for Plaintiff's false advertising claims.

Union had access to the specifications of Fair Isaac's scoring models; (2) Fair Isaac's and VantageScore's scoring systems appear to perform similar functions through similar processes; (3) Trans Union admitted in its Answer that "certain Trans Union employees who had access to Fair Isaac's confidential information participated in the planning of VantageScore . . . ." Trans Union's Answer [Docket No. 123] ¶ 152; (4) a March 31, 2005, draft document produced by Equifax stating that one of the "worksteps" for developing a new scoring system would be to include team members from each credit bureau who had "[f]amiliarity with FICO and similar delinquency/default prediction." July 24, 2007, Tietjen Letter [Docket No. 148] Attach. 2 at 5; and (5) the VantageScore scoring model was developed in four months, which is contrary to evidence in the record that developing a new scoring model could "easily take two years or more." May 2, 2007, Tietjen Decl. [Docket No. 113] Ex. 8.

      Defendants first argue that "the Magistrate Judge improperly relied on [the above-quoted language in] Trans Union's answer to the complaint, while ignoring the remaining statement that 'Trans Union deliberately chose employees to build the VantageScore scoring model who did not have access to any confidential information about Fair Isaac's scoring services.'" Objections at 7. However, as Judge Mayeron concluded, the fact that Trans Union employees with knowledge of Fair Isaac's confidential information helped in the planning of VantageScore provides support for Fair Isaac's showing of a substantial factual basis for its misappropriation of trade secrets and contract claims. Moreover, Judge Mayeron cited documents provided by Fair Isaac that suggest that some members of Trans Union's VantageScore development team previously had access to Fair Isaac's trade secret algorithm information. See Towne Decl. [Docket No. 128] Exs. 5-6.

Defendants also argue that the July 27, 2007, Order erroneously relied on the language in the March 31, 2005, draft document produced by Equifax. Defendants assert that the language in the document, prepared by an outside consultant, was based on an incorrect understanding of the project, and that Judge Mayeron should have relied on the final version of the document, which replaces the references to FICO with generic language. Objections at 7-8. Defendants further argue that Judge Mayeron erred in concluding "that the[] generic descriptions in the final version were referencing FICO." July 27, 2007, Order at 15 n.7. However, given the dominant position of Fair Isaac's FICO, and the evidence that Trans Union employees who had access to Fair Isaac's confidential information participated in the planning and development of VantageScore, Judge Mayeron properly considered the draft and final versions of the proposal in determining there is a substantial factual basis for Fair Isaac's claims.

Considering the record as a whole, this Court agrees with Judge Mayeron's conclusion that Fair Isaac demonstrated a substantial factual basis for its misappropriation and contract claims. Because Defendants have not raised any other arguments regarding step two of the Remington Arms analysis, the Court proceeds to step three.

Judge Mayeron concluded that Fair Isaac's need for the algorithm information outweighs the alleged harm to Defendants from disclosure of such information under the terms of the Amended Protective Order. In reaching this conclusion, Judge Mayeron noted that "Defendants have provided this Court with no evidence to conclude that Fair Isaac's outside counsel or its independent experts would violate the protective order and disseminate this Algorithm information to Fair Isaac or the public, or use it for any other purpose than this litigation." July 27, 2007, Order at 25. Defendants' Objections do not specifically address the balancing test of

step three of Remington Arms. Indeed, Defendants's Objections to the July 27, 2007, Order are premised entirely on the substantial factual basis arguments discussed above.

Regardless, the Court agrees that Fair Isaac's need for the algorithm information to litigate its misappropriation and contract claims outweighs the harm to Defendants under the terms of an appropriate protective order. "[O]rders forbidding any disclosure of trade secrets or confidential information are rare." Fed Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill, 443 U.S. 340, 363 n.24 (1979). Instead, where such information is relevant and necessary, "it is incumbent upon the district court to utilize its authority to issue an appropriate protective order to safeguard the rights of the parties." Remington Arms. Co., 952 F.2d at 1033; see also 3M Innovative Props. Co. v. Tomar Elecs., Civ. No. 05-756 MJD/AJB, 2006 WL 2670038 at *10 (D. Minn. Sept. 18, 2006) ("Where information is relevant and necessary to the presentation of a case, the consequence of disclosure of a trade secret is not a bar to discovery."). The Court is mindful that Defendants may suffer great harm if the protective order is violated and Fair Isaac or other competitors gain access to the VantageScore algorithm information. However, Defendants have not identified any likelihood that Fair Isaac's outside counsel or independent experts would violate the Amended Protective Order.[2] Accordingly, Defendants' Objections to Judge Mayeron's July 27, 2007, Order are overruled.

### C.   Objections to Paragraph 21 of the July 3, 2007, Amended Protective Order

Paragraph 21 of the Amended Protective Order sets forth specific conditions regarding disclosure of "consumer credit scoring algorithms, related computer programs, source code, and specifications, and documents reflecting any such information," including that only the receiving

---

[2] Sanctions are available and will be imposed should a party or individual fail to comply with the terms of the Amended Protective Order.

party's outside expert consultants and outside counsel may access confidential algorithm information. Am. Protective Order ¶¶ 21(a), (e). Defendants object to paragraph 21 to the extent it fails to require the use of an escrow agent. In the alternative, Defendants assert that their security concerns would be satisfied if paragraph 21 were modified to include terms: (1) limiting disclosure of algorithm information to three experts per party, (2) requiring that recipients of algorithm information be identified to the owner of the information, and (3) requiring encryption of algorithm information. Objections at 15-16.

Defendants argue that Judge Mayeron clearly erred by rejecting Defendants' proposal that "all Confidential Algorithm information shall be held at the offices of an independent escrow agent, agreed to by the parties. The escrow agent must keep Confidential information in a locked room that is accessible only to the identified expert consultants." Bonder May 18, 2007, Letter at Ex. A ¶ 21(e). In response to Defendants' proposal, Fair Isaac submitted the declarations of Daniel Sevush and Susan Blue Hitt, detailing the logistical difficulties caused by use of an escrow agent. Hitt Decl. [Docket No. 135]; Sevush Decl. [Docket No. 136]. Based on this record, Judge Mayeron determined that Defendants' proposal would unduly hamper a receiving party's analysis of algorithm information.

This Court agrees that the use of an escrow agent would present considerable logistical difficulties, and therefore the absence of an escrow agent requirement in the Amended Protective Order is not clearly erroneous. Defendants assert that "given the extreme sensitivity of the [algorithm] material, at a minimum this Court should remand the issue to consider possible escrow arrangements that would ameliorate any perceived hardships created by the proposed escrow arrangement." Objections at 14. As an example, Defendants suggest that the protective

order could "allow for certain material to be brought back to the experts' offices for further analysis if necessary." Id.  However, this proposal would likely result in significant discovery disputes regarding the material that could be removed from the escrow facility.  It is unnecessary to remand the escrow issue for consideration of such measures.

Defendants' alternative proposal is that the Amended Protected Order be modified to include terms: (1) limiting disclosure of algorithm information to three experts per party, (2) requiring that recipients of algorithm information be identified to the owner of the information, and (3) requiring encryption of algorithm information.  Objections at 15-16.  However, Defendants have not previously submitted the first two proposals to Judge Mayeron.  See May 18, 2007, Bonder Letter [Docket No. 131] Ex. A.  The Eighth Circuit has emphasized that the "purpose of referring cases to a magistrate judge for recommended disposition would be contravened if parties were allowed to present only selected issues to the magistrate, reserving their full panoply of contentions for the trial court." Roberts v. Apfel, 222 F.3d 466, 470 (8th Cir. 2000).  Likewise, the purpose of referring pretrial discovery matters would be defeated if this Court modified the Amended Protective Order to include language in paragraph 21 that neither party proposed before Judge Mayeron.  See May 18, 2007, Bonder Letter Ex. A; April 30, 2007, Milne Letter [Docket No. 100] Ex. A.

The parties agree that Defendants raised the encryption issue before Judge Mayeron.  See Fair Isaac's Resp. to Defs.' Objections at 18.  Defendants argue that the proposed encryption is necessary to protect consumer information, and that adequate encryption can be accomplished through readily available software that costs less than $200.  In response, Fair Isaac contends that encryption would be "pointless" because paragraph 21 of the Amended Protective Order

provides adequate protections, such as requirements that any computer with algorithm information: (1) must be password protected, (2) cannot be connected to the internet or be part of a network connected to the internet, and (3) must be locked when not in use.  See Am. Protective Order ¶ 21(d).  The record is silent regarding the discussion of the encryption issue before Judge Mayeron.  The version of paragraph 21 that Defendants proposed to Judge Mayeron does not refer to encryption.  See May 18, 2007, Bonder Letter [Docket No. 131] Ex. A.  Given the stringent protections in paragraph 21(d) of the Amended Protective Order, and the lack of a record regarding the encryption arguments and proposals raised before Judge Mayeron, this Court cannot conclude that the absence of an encryption requirement in paragraph 21 was clear error.  However, the parties are strongly encouraged to reach agreement on basic encryption measures that provide additional protections for the sensitive electronic data that will be produced.

      Defendants have failed to show that Judge Mayeron committed clear error.  Therefore, Defendants' Objections to paragraph 21 of the Amended Protective Order are overruled.  In reaching this conclusion, the Court notes that the Credit Bureau Defendants' confidentiality agreement regarding the development of VantageScore does not provide the protections that Defendants now seek.  See May 18, 2007, Tietjen Decl. [Docket No. 134] Exs. 1, 3.  For example, the confidentiality agreement does not require the use of an escrow agent, nor does the agreement require advance disclosure of individuals receiving algorithm information.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Consolidated Objections [Docket No. 179] are **OVERRULED**.

BY THE COURT:


      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 25, 2007.