## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Fair Isaac Corporation; and myFICO
Consumer Services, Inc.,

                          Plaintiffs,                    Civil Action No: 06 CV 4112 ADM/JSM

v.

Equifax Inc.; Equifax Information Services    **Defendants Trans Union LLC's and**
LLC; Experian Information                     **VantageScore Solutions, LLC's**
Solutions Inc.; Trans Union, LLC;             **Memorandum in Support of their**
VantageScore Solutions, LLC, and Does I       **Motion to Compel Identification of**
through X,                                     **Allegedly Misappropriated Trade**
                                               **Secrets**

                          Defendants.

Defendants Trans Union LLC and VantageScore Solutions, LLC ("Movants")
move this Court to compel the Plaintiffs, Fair Isaac Corporation and myFICO Consumer
Services, Inc. ("Plaintiffs"), to identify by April 1, 2008 the trade secrets that Plaintiffs
allege Movants misappropriated.  In support of this motion, Movants state as follows:

## I.    INTRODUCTION

"The orderly disposition of cases involving claims of misappropriation of trade
secrets cannot permit a situation where the details concerning the claimed trade secrets
are not disclosed at an early date in the litigation. Adequate discovery cannot be
conducted in the absence of [that] specific disclosure . . . ." *Porous Media Corp. v.
Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999).  Yet, the Plaintiffs in this case
refuse to identify the allegedly misappropriated trade secrets until after fact discovery is
completed.  They claim that they cannot make this disclosure until the deadline for their

expert report (July 15, 2008) because they require the assistance of an expert to identify the trade secrets they will allege were misappropriated.  Plaintiffs suggest that fact discovery on their trade secret claims occur after the expert disclosure date.  This effort to postpone any required fact discovery on the trade secrets is severely prejudicial to Movants and threatens to disrupt the entire remaining pretrial schedule.

## II.    BACKGROUND

Plaintiffs brought suit against Defendants on October 11, 2006.  (Boyle Decl. at ¶2.)  The initial complaint and the Amended Complaint did not contain any claims of misappropriation.  *Id.*  On January 12, 2007, Plaintiffs requested that Defendants produce the secret design of the VantageScore credit scoring model.  (Boyle Decl. at ¶3.)  After Defendants refused, Plaintiffs amended their complaint on April 3, 2007, to add a misappropriation claim against Movants, alleging "on information and belief" that VantageScore "involves a misappropriation of Fair Isaac's trade secrets and proprietary information or property."  (Boyle Decl. at ¶4.)

The Second Amended Complaint makes no attempt to specify the trade secrets allegedly misappropriated. Plaintiffs then moved to compel the disclosure of the VantageScore design, arguing that they needed the design to determine what was misappropriated.  (Boyle Decl. at ¶6.)  On July 30, 2007, Plaintiffs revealed that they had hired an expert in credit scoring.  (Boyle Decl. at ¶5.)  Thereafter, on September 28, 2007, Defendants hand-delivered a paper copy of the complete description of the

VantageScore model design ("VantageScore Specifications") to Plaintiffs' counsel.

(Boyle Decl. at ¶7.)

Trans Union then requested Plaintiffs to identify the allegedly misappropriated

trade secrets by November 22, 2007, through the following interrogatories:

> 1.      Identify what in "VantageScore's scoring model involves a misappropriation of Fair Isaac's trade secrets and proprietary information or property," as Plaintiffs alleged in paragraph 153 of the Second Amended Complaint.

> 2.      Identify which "aspects and contents of Fair Isaac's 'Models'" referenced in paragraph 154 of the Second Amended Complaint were misappropriated into VantageScore's scoring model.

(Boyle Decl. at ¶8.)  The due date for the response gave Plaintiffs two months to review

the VantageScore Specifications.  Plaintiffs objected to each of the interrogatories by

stating as follows:  "Fair Isaac objects to this interrogatory on the ground that it is unduly

burdensome – indeed, impossible – to answer in full, because of the defendants'

insistence on certain restrictions to information about VantageScore's scoring model,"

because Fair Isaac personnel (unlike Fair Isaac outside counsel and experts) are not

permitted to view algorithm-related material under this Court's protective order.

(Boyle Decl. at ¶9.)  Plaintiffs argued that "Fair Isaac – the only one who can sign and

answer this interrogatory under the federal rules of civil procedure – can only answer this

interrogatory based on its review of publicly-available information about VantageScore's

model."  (Boyle Decl. at ¶9.)

To avoid this issue concerning the need for a client signature, Trans Union then served requests for admissions, in which it identified the elements of the VantageScore model design and requested Plaintiffs to admit that each element was not a trade secret of Plaintiffs. (Boyle Decl. at ¶10.)  Trans Union was forced to walk through each part of the VantageScore design and set out these elements (most of which were identified by their numeral designation in the VantageScore Specifications) in 324 paragraphs in a format similar to the first and last paragraphs that follow:

> 1.   Admit that the use of the definitions of "goods" and "bads," as described in the VantageScore User's Guide, for purposes of designing a sample of credit data to develop a consumer credit risk scoring model is not a FICO Trade Secret.
>
> 324.   Admit that no aspect of the Attributes labeled TR8704 is a FICO Trade Secret.

(Boyle Decl. at ¶10.)  The answers to those requests for admissions were not due until January 9, 2008, more than three months after Defendants delivered the VantageScore Specifications to Plaintiffs' Counsel. (Boyle Decl. at ¶10.)  Plaintiffs similarly objected to the requests for admission on the grounds that "Fair Isaac does not have access to information about VantageScore's scoring model other than information that Fair Isaac has found in publicly available sources, and access to more information or documents— including information and documents that Trans Union refers to in this Request and that the defendants have prohibited Fair Isaac from having access to—is necessary to respond to this Request." (Boyle Decl. at ¶11.)

Counsel had several conferences to try to resolve this dispute and counsel for Trans Union negotiated in good faith. (Boyle Decl. at ¶12.)  Ultimately, Plaintiffs offered

to identify the allegedly misappropriated trade secrets at the time of their disclosure of expert reports (July 15, 2007) and then allow Movants unspecified limited fact discovery thereafter.  (Boyle Decl. at ¶12.)  Plaintiffs also offered to make the disclosure earlier if Defendants would be willing to make their expert disclosures on unrelated antitrust issues earlier.  (Boyle Decl. at ¶12.)  Trans Union's final offer of compromise was to allow Plaintiffs until May 1, 2008 to identify the allegedly misappropriated trade secrets, which would have given Plaintiffs seven months to review the VantageScore Specifications while allowing Movants only two months to take whatever written and oral fact discovery will be needed.  (Boyle Decl. at ¶12.)  The parties were not able to agree upon a compromise.

## III.   ARGUMENT

Plaintiffs must agree that at some point in this litigation they are required to tell Movants what they are claiming was stolen.  In many misappropriation cases, the plaintiff is required to disclose allegedly misappropriated trade secrets before or in the early stages of discovery via the scheduling order.  "Ordering the listing of trade secrets at the outset of the litigation is a common requirement."  *Porous*, 187 F.R.D. at 600 (D. Minn. 1999) (upholding a pre-trial scheduling order that required the plaintiff to produce "a list of its trade secrets upon which its allegations are based," and holding that an "Interrogatory which makes this same request would be redundant.")  *See, e.g., Xerox Corp. v. Int'l Bus. Machines Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) (holding that after nearly a year of pre-trial discovery, a trade secret plaintiff should be able to identify

in detail the trade secrets and confidential information alleged to have been misappropriated).

Here, Plaintiffs argued that they needed the design of the VantageScore model in order to determine what was misappropriated.  That "need" was met when Defendants' were required to produce the VantageScore Specifications.  Now, Plaintiffs attempt to further delay their case relying on the need to consult an outside expert to determine what they will allege was misappropriated.  Movants do not dispute that Plaintiffs may need the assistance of an outside expert to review the VantageScore Specifications, but that should not deprive or limit Movants' ability to conduct fact discovery once Plaintiffs reveal what they are alleging to have been misappropriated.  *Porous*, 187 F.R.D. at 600 ("Adequate discovery cannot be conducted in the absence of . . . specific disclosure" of "the details concerning the claimed trade secrets . . .").  Plaintiffs retained a scoring expert on July 30, 2007.  Plaintiffs' counsel (and supposedly their expert thereafter) has had the VantageScore model design since September 28, 2007.

## A.    Movants's Need for the Requested Discovery

Once Plaintiffs finally reveal what trade secrets are alleged to have been misappropriated, Movants will need to determine whether those disclosed items are in fact trade secrets and, if so, whether they actually belong to Plaintiffs.  This investigation will probably involve third-party discovery to obtain evidence that the source of the alleged trade secrets may have been someone other than Plaintiffs.  It is also likely to involve discovery from Plaintiffs' employees to establish that Plaintiffs' alleged trade

secrets have been disclosed to the public, which would prove that they are not in fact trade secrets.  In any event, Movants cannot be expected to anticipate the exact contours of the discovery it will need and who it will need to depose.  It would therefore be unfair to "shoehorn" Movants' opportunity to take this fact discovery after Plaintiffs' expert disclosure.

In addition, Plaintiffs' refusal to identify the alleged misappropriated trade secrets until after the fact discovery period is closed, may cause the entire remaining schedule to be unnecessarily enlarged.  This Court's Scheduling Order provides for two months between Plaintiffs' expert report (July 15) and Defendants' expert report (September 15).  If fact discovery on the trade secrets does not begin until after July 15, this period of time may be inadequate to take that discovery prior to deposing Plaintiffs' expert and providing sufficient time for Defendants' expert to prepare a report.  In that light, Plaintiffs' proposal appears to be an attempt to delay this litigation yet again, as fact discovery following their expert's report is very likely to postpone all of the remaining deadlines in the Scheduling Order.

### B.      Plaintiffs Would Not Suffer Undue Burden or Unfair Prejudice

Plaintiffs cannot reasonably claim that they will be unduly burdened or unfairly prejudiced by having to identify the trade secrets that they are alleging were misappropriated a few days short of a year after Plaintiffs brought this claim.  First, Plaintiffs have successfully "bought" themselves several months to review the VantageScore Specifications and consult with outside consultants.

Second, Plaintiffs cannot now complain that they are unable to identify the misappropriated trade secrets without going through many documents or electronic files. The complete design of the VantageScore model is plainly described in the VantageScore Specifications, which consists of 133 pages and was hand-delivered to them separately in paper form.  In fact, the only two documents to which Trans Union's requests for admissions refer, other than the VantageScore Specifications, are the VantageScore User Guide and the Characteristic Leveling Process White Paper, consisting of a total of 63 pages and produced to Plaintiffs as part of Trans Union's first production of documents almost a year ago on March 8, 2007.

Third, Movants are not requesting early disclosure of Plaintiffs' expert report. Their request is for Plaintiffs to reveal the factual basis of their misappropriation allegations.  Rather than suggesting a disclosure date in the pretrial scheduling order, Trans Union sought to obtain this information through discovery by serving two contention interrogatories and requests for admission.  Indeed, *Porous* – the primary Minnesota District Court decision on this issue – required the plaintiff to identify the allegedly misappropriated trade secrets with the specificity that would be required in the context of an injunction or a motion *in limine*.  *See Porous*, 187 F.R.D. at 600.  That Plaintiffs require the assistance of an expert in providing particularity on their generalized misappropriation allegations does not justify waiting to reveal those particulars to Movants after fact discovery has closed.

## IV.   CONCLUSION

WHEREFORE, Movants respectfully request this Court to compel Plaintiffs to identify the trade secrets that they allege to have been misappropriated by April 1, 2008.

Respectfully submitted this 25th day of February, 2008.

**Bassford Remele**

By:   /s/ Christopher R. Morris
Christopher R. Morris (MN Bar #230613)
Lewis A. Remele, Jr. (MN Bar #90724)
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402
Tel: (612) 376-1601
Fax: (612) 333-8829

James K. Gardner
Ralph T. Russell
Dao L. Boyle
**Neal, Gerber & Eisenberg LLP**
Two North LaSalle Street, Suite 2200
Chicago, IL 60602
Tel: (312) 269-8030

*Attorneys for Defendant*
*Trans Union LLC*

**Kelly and Berens, P.A.**

By:   /s/ Justi Rae Miller
Justi Rae Miller (MN Barr #0387330)
Barbara Podlucky Berens (MN Bar #209788)
3720 IDS Center -- 80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 349-6171
Fax: (612) 349-6416

*Attorneys for Defendant*
*VantageScore Solutions, LLC*