**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Fair Isaac Corporation; and myFICO Consumer Services, Inc., | Civil Action No: 06 CV 4112 DSD/JJG |
| Plaintiffs, | |
| v. | **Plaintiffs' Memorandum of Law in Opposition to Defendants Trans Union and VantageScore's Motion to Compel Identification of Allegedly Misappropriated Trade Secrets by April 1, 2008** |
| Equifax Inc.; Equifax Information Services LLC; Experian Information Solutions Inc.; Trans Union, LLC; and VantageScore Solutions, LLC; Does I through X, | |
| Defendants. | |

---

## Introduction

Many things are missing from the motion of defendants Trans Union and VantageScore (including a record for some of their factual assertions). But the most glaringly omission is any explanation of just *how* Fair Isaac itself—as opposed to an independent expert—is supposed to further identify Fair Isaac's misappropriated trade secrets by April 1, 2008 (or by any other date, for that matter). The defendants have produced *all* of their algorithm-related documents (nearly 150 million of them in the past three months, by the defendants' own count) with a protective designation that prohibits Fair Isaac itself from seeing the documents—thus preventing Fair Isaac from being able to further identify the misappropriated trade secrets.

From the day that the defendants first produced their algorithm-related documents they have known that their protective designations would prohibit Fair Isaac from being able to look at the documents and they have known (or should have known) that Fair Isaac will have to rely on its independent experts to further identify the misappropriated trade secrets, as part of the expert reports that are due on July 15, 2008. Fair Isaac has tried to discuss the problems—indeed, the impossibility—of the defendants' demand with Trans Union, but Trans Union has so far ignored the practical implications of what they are asking for and refused to agree to any of the proposals that Fair Isaac has offered as solutions to this dispute.

Fair Isaac, for example, offered, as one solution, to agree that the defendants can take trade-secret-related fact depositions *after* the defendants receive Fair Isaac's expert reports on July 15—if the defendants believe that later fact depositions are necessary for their defense. The defendants rejected this idea, without an explanation, and simply demanded, instead, a further identification of the misappropriated trade secrets *by Fair Isaac* (not by Fair Isaac's expert) by May 1. (Now, with this motion, for some unexplained reason, the defendants have moved up their demand to April 1.) Regardless of what deadline the defendants pick, Fair Isaac, itself, cannot comply with the deadline. Because of the defendants' protective designations on their documents, this is a not-unusual case in which experts will have to provide further identification of the misappropriated trade secrets, and they are scheduled to do that by July 15, 2008. The movants have not shown good cause for amending the Pretrial Scheduling Order and their motion should be denied.

## Background

In early April 2007, Fair Isaac amended its complaint to include a misappropriation-of-trade-secrets claim and shortly thereafter Fair Isaac served discovery requests seeking a production of documents relating to the defendants' development of VantageScore's scoring model. The defendants staunchly resisted this discovery. And they only started producing responsive documents after this Court's order compelling them to do so was affirmed by Judge Montgomery in September 2007. On September 28, 2007, for example, the defendants produced what Trans Union's counsel (confusing the role of lawyer and fact witness) now asserts is a "complete description" of VantageScore's design. *See* Boyle Decl. ¶ 7. And in November 2007, the defendants produced what they later described as some nearly 150 million pages of documents that relate to the development and testing of VantageScore's algorithm. *See* Tietjen Decl. Exh. 1 (letter from VantageScore's counsel to Fair Isaac's counsel dated Nov. 19, 2007) (filed Dec. 21, 2008). All of these documents were produced by the defendants with a protective designation of "Confidential-Algorithm," which the defendants know prohibits Fair Isaac itself, under this Court's Amended Protective Order, from ever seeing the documents and which requires Fair Isaac's counsel and independent experts, who *can* see the documents, to take special, restrictive steps in reviewing the documents.

On October 19, 2007, after the defendants produced some of their algorithm-related documents with these restrictive protective designations, Trans Union served Fair Isaac with two interrogatories—neither of which, Trans Union knew (or should have known), could be answered in full by Fair Isaac. These interrogatories asked Fair Isaac to

- 3 -

identify all of the trade secrets and other property of Fair Isaac's that had been misappropriated in VantageScore's scoring model. Fair Isaac answered these—in a long, detailed answer—by identifying the publicly identifiable features or aspects of Vantage-Score's model that reflect a misappropriation of Fair Isaac's property. *See* Boyle Decl. Exh. 2. But Fair Isaac was prevented—by the defendants' restrictive protective designations on its documents—from providing an answer based on any non-public features or aspects of VantageScore's model. Similarly on December 6, 2007, Trans Union served a set of 324 requests for admission related to VantageScore's model that Fair Isaac was largely unable to admit or deny because the requests—like Trans Union's interrogatories—required access to "Confidential-Algorithm" materials. *See id.* Exh. 4.

Frustrated, apparently, by the irreconcilable tension that the defendants themselves had created by the protective designations on their documents and the answers or responses that they wanted to their discovery, Trans Union's counsel contacted Fair Isaac's counsel in late January 2008 and asked Fair Isaac's counsel to come up with some means by which Fair Isaac would provide answers to Trans Union's interrogatories or otherwise provide Trans Union with the information that those interrogatories were seeking. As a precondition to any proposal from Fair Isaac, Trans Union's counsel said that the defendants would never allow any employees of Fair Isaac to see VantageScore's confidential algorithm-related information, so any proposal from Fair Isaac involving that possibility was out of the question.

In an effort to accommodate the defendants, Fair Isaac eventually proposed two solutions for the defendants' problem:

- 4 -

1. Because the defendants believe that fact depositions after further identification of Fair Isaac's misappropriated trade secrets might be necessary for the preparation of their defense, Fair Isaac offered to agree to allow the defendants to take trade-secret-related fact depositions after the defendants receive Fair Isaac's independent expert reports on July 15. These depositions—which would be part of the total number of depositions allowed by the defendants under the Pretrial Scheduling Order—would be in addition to the depositions of Fair Isaac's experts. These could be depositions of Fair Isaac employees, Fair Isaac itself, or third parties.

2. As an alternative, Fair Isaac offered to agree to serve an early expert report (by June 1, 2008), identifying misappropriated trade secrets, *if* the defendants would also agree to serve an early expert report on the subjects to which they have *elected* to defer to their experts (unlike Fair Isaac, which is obligated to defer to its experts). This would include subjects like identifying the defendants' competition and markets, which the defendants themselves decline to do.

Trans Union rejected both of these proposals, without a word of explanation, and insisted, instead, that it would bring a motion to compel Fair Isaac to answer its interrogatories or to strike Fair Isaac's responses to its requests for admission and deem them admitted. Trans Union, of course, has brought neither of those motions. Instead, Trans Union and VantageScore have moved to amend the Pretrial Scheduling Order to require Fair Isaac itself (how, it does not explain) to "identify" the misappropriated trade secrets by April 1, 2008.

MP-Primary 80007647.1

**Argument**

There is an incongruity in Trans Union and VantageScore's position—one that they do not want to confront or even acknowledge. They prohibit Fair Isaac from looking at any of the documents that might show how VantageScore's scoring model works but, at the same time, they demand that Fair Isaac itself identify the ways in which Vantage-Score's model misappropriates Fair Isaac's trade secrets. The defendants know that Fair Isaac cannot do the impossible—that it cannot identify the misappropriated trade secrets without reviewing the defendants' documents—yet they ignore this point in their motion. The defendants have known from the outset of their algorithm document production that Fair Isaac itself would not be able to review the details of how VantageScore's model operates and that Fair Isaac would be forced to rely on its independent experts to further identify the misappropriated trade secrets. In these circumstances, the movants do not suddenly now have "good cause" for amending the Pretrial Scheduling Order to require Fair Isaac to do, by April 1, what Fair Isaac has never been allowed to do by the defendants—review 150 million pages of algorithm documents.

**I.    Given defendants' protective designations, the trade secrets must be further identified by experts; the two cases cited by the defendants are inapposite.**

Cases involving claims for misappropriation of trade secrets present a variety of situations to courts and parties, including with respect to the identification of the trade secrets at issue. In some cases, for example, a plaintiff might allege that a former employee possesses, in his or her own mind, a discreet trade secret for a manufacturing process that is owned by the plaintiff, and that the former employee has misappropriated

MP-Primary 80007647.1

that trade secret by manufacturing a competing product. In that situation, the plaintiff might be able to easily and readily identify the trade secret at issue without discovery and without the help of experts. But not every trade-secret case presents those circumstances, where a plaintiff itself—as opposed to independent experts—can readily and specifically identify the trade secrets at issue.

In some cases, as in the circumstances of this case—where the defendants refuse to allow Fair Isaac to have access to what the defendants consider to be their own competing trade secrets—a plaintiff can only generally identify the subject matter allegedly misappropriated (e.g., an elaborate and complex algorithm) and the parties have to rely on independent experts and discovery to further identify the specific trade secrets at issue. Commentators have recognized that courts have to remain "flexible" in their approach to requiring the identification of trade secrets, "taking into account the varying ways in which trade secret disputes arise." James Pooley, *Trade Secrets* § 11.02[2][c] (1997) (noting that courts must be flexible in their approach to the identification of the trade secrets based on a variety of factors, *including "the extent to which the information relative to the trade secret claims may be exclusively in the possession of the defendant or a third party"*). Here, Trans Union and VantageScore cite only two decisions in support of their motion to require Fair Isaac to identify its misappropriated trade secrets within the next few weeks, and both of those cases involve facts that are far different from this case.

In the *Porous Media* case, for example, a long, unpublished decision that the defendants do *not* cite gives some context for the shorter, procedural decision that the

- 7 -

defendants do cite. That longer decision—which ultimately dismissed the plaintiff's trade-secret claim on summary judgment, for reasons unrelated to the defendants' argument—shows that the plaintiff, Porous Media, had a contract with Midland Brake to manufacture air-brake parts for industrial vehicles. Porous Media alleged that during a brainstorming session with representatives of Midland Brake—where the parties were all trying to overcome a particular manufacturing problem—Porous Media developed a trade-secret idea for how to resolve the problem and Midland Brake later allegedly passed this trade-secret idea on to another manufacturer, which used the trade-secret idea in manufacturing competing brake parts. *See* Porous Media Corp. v. Midland Brake, Inc., 2001 WL 1631332 at *1-2 (D. Minn. 2001).

At the outset of the *Porous Media* case, the Court issued a Pretrial Scheduling Order requiring Porous Media to "provide a list of its trade secrets upon which its allegations [were] based" by a certain date, before fact discovery commenced. Porous Media provided a "generalized statement" of its trade secrets that the Court decided was insufficient in detail and so ordered Porous Media to provide the necessary detail. *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999). These facts— which involve no mention of a protective order or experts or the necessity of discovery for the identification of the trade secrets—are much different from the set of facts that this case presents. Here, Fair Isaac itself has no means by which to specifically identify the trade secrets that were misappropriated and the defendants are relying on the protective designations allowed by this Court's Protective Order to prohibit Fair Isaac from ever being able to specifically identify the trade secrets.

- 9 -

In the *Xerox Corporation* case from thirty-four years ago—the only other decision cited by the movants—Xerox claimed that IBM had misappropriated trades secrets relating to its office-copier technology. A special master required Xerox, after a year of "extensive discovery," to provide a list of the documents that contained or comprised the trade secrets that IBM had misappropriated. *Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367, 370 (S.D.N.Y. 1974). Xerox provided a list and IBM maintained that the list had to be refined by Xerox to more specifically identify the trade secrets. *Id.* at 371. The district court agreed. *Id.* at 371-73. These facts, too, are unlike the facts of this case. There was no contention by Xerox that it could *not* identify the trade secrets anymore specifically and there is no mention of a protective order or the use of experts to review the pertinent documents, etc. Also, Xerox, by the time of IBM's motion, had the opportunity to conduct "extensive discovery," where here, the parties have only recently completed a massive document exchange and no trade-secret depositions have taken place yet.

Trade-secret cases, in short, present their own unique facts. This one is no different, and it cannot be analogized to *Porous Media* or *Xerox Corporation*.

**II.     The movants are not willing to acknowledge that the relief they seek is irreconcilable with the protective designations on their documents.**

The defendants know that Fair Isaac cannot do the impossible—that without access to the defendants' algorithm-related documents, it cannot further identify the alleged misappropriated trade secrets. In fact, the defendants themselves—through their document production and under the provisions of the Amended Protective Order, on which they insisted—have set this case up as one in which details of the trade secrets at

issue can only be identified by experts, and not by Fair Isaac itself. Before this motion was filed, Fair Isaac raised the subject of the irreconcilable tension between the movant's demands and their document production several times, but the movants ignored the subject, and they do the same in their motion. The fact that Trans Union is not moving to compel answers to its interrogatories or responses to its requests for admission can be viewed as a tacit recognition by the defendants that Fair Isaac itself cannot possibly answer or respond in full to the discovery and that identification of the specific trade secrets at issue will have to be done by experts.

In this motion, the movants by-pass their own interrogatories and requests for admission and couch their motion, instead, as one to amend the Pretrial Scheduling Order, to provide a trade-secret "disclosure deadline" for Fair Isaac. But what the defendants are really seeking, in effect, is an early deadline for Fair Isaac's expert report (that, or they are trying to create an impossible procedural hurdle for Fair Isaac, before depositions and expert discovery get underway). The movants deny that this is what they are seeking ("Movants are not requesting early disclosure of [Fair Isaac's] expert report." Memo. at 8), but there is really no other way to describe the relief they are seeking. But yet the movants offer no explanation for why they have waited this long to raise this subject. Indeed, two amendments of the Pretrial Schedule have gone by without the movants raising this subject of needing an earlier deadline for Fair Isaac's expert reports.

### III.  The movants are not without information about Fair Isaac's trade secrets and they offer no explanation for rejecting the offer of later fact depositions.

Trans Union and the other bureau defendants have long had access to confidential

MP-Primary 80007647.1

details about Fair Isaac's scoring model. (Indeed, Trans Union admitted in its answer to Fair Isaac's amended complaint that some of the people who planned VantageScore were Trans Union employees who had access to Fair Isaac's models.) *See* Trans Union Answer § 152. Also, as part of Fair Isaac's document production in this litigation, Fair Isaac has produced to the defendants copies of various scoring model specifications that the defendants have had access to over the years.[1] So the movants cannot dispute that they alone (unlike Fair Isaac) have employees or fact witnesses who know the details both of Fair Isaac's models and of VantageScore's models—that is, the defendants know how both models operate while Fair Isaac only knows the details of its own models. These circumstances should give the defendants a substantial "leg up" in developing their defenses to Fair Isaac's trade-secret claim, *before* depositions begin.

The movants' concerns about the identification of trade secrets would be further alleviated if the movants had accepted Fair Isaac's offer to them before this motion was filed. Fair Isaac, as explained above, offered to agree to allow the defendants to take trade-secret-related fact depositions *after* the defendants receive Fair Isaac's independent expert reports on July 15. Thus, if the defendants believe that they need further identification of the trade secrets that they allegedly misappropriated *before* they take trade-secret fact depositions, Fair Isaac has offered them the opportunity to take those

---

1. *See* Order at 14 (filed July 27, 2007): "First, there is no dispute that Trans Union is aware of the confidential information Fair Isaac claims was misappropriated. Pursuant to the parties' agreements allowing Trans Union to sell and maintain Fair Isaac's credit services and products, Trans Union has had access to the specifications for Fair Isaac's Classic and NextGen scoring models, which included very detailed documents that explicitly described all the processes required to compute a Classic or NextGen score from credit bureau data."

MP-Primary 80007647.1

depositions during the two months after receipt of Fair Isaac's expert reports. The depositions that Fair Isaac offered (which would be part of the total number of depositions allowed under the Pretrial Scheduling Order) would be in addition to the depositions of Fair Isaac's experts and could include depositions of Fair Isaac employees, of Fair Isaac itself (under Rule 30(b)(6)), or of third parties.

Trans Union rejected this reasonable offer without explanation before filing this motion but now, in its brief, Trans Union says that Fair Isaac's offer was an attempt to "shoehorn" the movants' opportunity to take fact discovery because Trans Union "cannot be expected to anticipate [now] the exact contours of the discovery it will need and who it will need to depose." This "shoehorn" objection is interesting, to say the least, coming from the defendants, who delayed as long as they possibly could in producing algorithm-related documents and then dumped some 150 million pages on Fair Isaac to review in a few short months before starting depositions.

**IV.     Fair Isaac needs time to review and conduct discovery on the some 150-million pages of documents that the defendants recently produced.**

One thing missing from the record for this motion is any support for the bare assertion by the movants that Fair Isaac doesn't need anything more to identify its misappropriated trade secrets than a 133-page document (designated "Confidential—Algorithm" by the defendants, of course) that was delivered to Fair Isaac's outside counsel on September 28, 2007. Approximately three months ago, after resisting any trade-secret discovery for months, the defendants deluged Fair Isaac's outside counsel with some 150-million pages of documents that this Court deemed discoverable in

- 12 -

connection with Fair Isaac's trade claim. Now, with this motion to impose a deadline requirement in the next few weeks that can't logically be met by Fair Isaac itself, the defendants would like to curtail Fair Isaac's ability to review those documents. If this is the tactical objective behind this motion, it should be rejected by the Court.

The movants argue that "[t]he complete design of the VantageScore model is plainly described in the VantageScore Specifications, which consists of 133 pages and was hand-delivered to [Fair Isaac's outside counsel] separately in paper form." Memo. at 8. The movants, in other words, would have the Court believe that there is no need for Fair Isaac to review the nearly 150 million pages of algorithm development documents that they produced. Putting aside that there has been no discovery to confirm and no declaration from a fact witness who even asserts that the 133 pages that the movants call the "VantageScore Specifications" (which have not been filed with the Court or even cited by bates number) is, in fact, a "complete description" of the design of the VantageScore model, this argument overlooks what efforts or actions can constitute misappropriation of a trade secret.

Just because the "VantageScore Specifications" do not have a label somewhere on the 133 pages that says "This was misappropriated from Fair Isaac" does not mean that evidence of misappropriation by the developers of VantageScore's model does not exist in the millions of underlying development documents. *Any* improper use or disclosure of Fair Isaac's trade secrets in the development of VantageScore's model, after all, can constitute a misappropriation. *See Surgidev Corp. v. Eye Tech., Inc.*, 648 F. Supp. 661, 694 n.16 (D. Minn. 1986), *aff'd*, 828 F.2d 452 (8th Cir. 1987). Indeed, until now, the

- 13 -

defendants have never tried to argue that the millions of algorithm-related documents that they produced under this Court's Order are *not* relevant to Fair Isaac's trade-secret claim. *See* Order (July 27, 2007) at 10 ("Defendants do not directly challenge the relevancy of the Algorithm information to Fair Isaac's misappropriation of trade secrets claim."); Order (Sept. 25, 2007) at 5 ("Judge Mayeron concluded that Fair Isaac showed that the algorithm information is relevant and necessary to prepare this case for trial of Fair Isaac's misappropriation and contract claims. Defendants have not directly challenged this conclusion.").

## V.     The defendants have not shown good cause for an amendment of the Pretrial Scheduling Order.

The Local Rules of this Court do not allow a party to amend a Pretrial Scheduling Order without good cause. Here, the defendants have known from at least the day that they produced their millions of documents with a "Confidential—Algorithm" designation that Fair Isaac would not be able to see those documents, and yet they have never asked for an amendment of the scheduling order until now. They have always known (or should have known) that a further identification of the misappropriated trade secrets would have to be done by Fair Isaac's experts. There is no sudden good cause now for an amendment of the schedule that would require Fair Isaac to move up the delivery date of its expert report—especially in light of Fair Isaac's offer to allow trade-secret-related fact depositions after delivery of its expert reports.

**Conclusion**

For the reasons stated above, the motion of Trans Union and VantageScore to amend the Pretrial Scheduling Order should be denied. The movants have not shown good cause for an amendment of the schedule.

Date: March 3, 2008              **Robins, Kaplan, Miller & Ciresi, L.L.P.**

                                 **By:**  Randall Tietjen
                                       Ronald J. Schutz (MN Bar #130849)
                                       Randall Tietjen (MN Bar #214474)
                                       Michael A. Collyard (MN Bar # 302569)

                                 2800 LaSalle Plaza
                                 800 LaSalle Avenue
                                 Minneapolis, MN 55402
                                 Tel: (612) 349-8500
                                 Fax: (612) 339-4181

                                 and

                                 Charles F. (Rick) Rule
                                 Joseph J. Bial
                                 **Cadwalader, Wickersham & Taft LLP**
                                 1201 F Street, N.W.
                                 Washington, D.C. 20004
                                 Tel:  (202) 862-2200
                                 Fax:  (202) 862-2400

                                 **Attorneys for Plaintiffs**