IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Fair Isaac Corporation; and myFICO
Consumer Services, Inc.,

        Plaintiffs,

v.

Equifax Inc.; Equifax Information Services
LLC; Experian Information
Solutions, Inc.; Trans Union LLC; and
VantageScore Solutions, LLC; and Does I
through X,

        Defendants.

Civil Action No: 06 CV 4112 ADM/JSM

**Declaration of Michael Collyard**

I, Michael Collyard, declare as follows:

1. I am a lawyer at the law firm of Robins, Kaplan, Miller & Ciresi L.L.P. We represent the plaintiffs, Fair Isaac Corporation ("Fair Isaac") and myFICO Consumer Services, Inc. I have prepared this declaration for the purpose of opposing Defendants' Motion to Compel Documents in Response to their Sixth Set of Document Requests (Nos. 1-6 and 18-31).

2. Fair Isaac served its first set of document requests on defendants in January 2006 and soon after that the parties met and conferred to talk about the types of global limitations that they could put on discovery in this case. The defendants insisted at that time that all discovery must be limited to generic credit risk scores and the parties eventually agreed that all of the discovery in this case would be limited to generic credit risk scores

(with a minor exception for certain information for the parties' custom credit scoring models created for a particular lender or institution).

3. During meet and confers on defendants' request nos. 1-6, counsel for Fair Isaac explained to the defendants that their requests are irrelevant not only because these requests seek information beyond the generic risk credit scoring products and services that they have always maintained are the only products and services relevant to this case, but also because the law does not consider claimed procompetitive benefits that are outside the relevant market in the case. We also explained to defense counsel that these requests seek discovery on Fair Isaac's entire business. In addition, we explained that the defendants' document requests don't make sense when you consider what Fair Isaac's EDM business is and how it works. Defendants admitted during these meet and confers that they didn't understand what EDM is or how it works but their answer to that was: That's what discovery is for.

4. The defendants say in their brief that Fair Isaac has yet to identify what the burden would be to search for the information called for by defendants' requests nos. 1-6. But counsel for Fair Isaac explained to defense counsel—before defendants brought their motion—that the only way that Fair Isaac could determine the final prices charged would be to locate every single contract (and all of the addendums to those contracts) for the infinite solutions that Fair Isaac has offered under EDM

5. During a recent meet and confer, Fair Isaac's counsel asked defense counsel if defendants were limiting their requests nos. 18-31 to particular statements that defendants could actually show Fair Isaac made and the defendants said that they were *not* limiting their

requests in that manner. The defendants said that they struggled with that issue internally and decided that they could not limit their requests because they wanted to make sure they got the complete universe of *all* of the statements that Fair Isaac has ever made during the relevant time period.

   6.  Attached to this declaration are true and correct copies of the following documents:

   Exhibit 1:  Letter to Michael Collyard from Teresa Bonder dated March 22, 2007.

   Exhibit 2:  Relevant portions of Defendants' Responses and Objections to Fair Isaac's Third Set of Document Requests, dated July 18, 2007.

   Exhibit 3:  Relevant portions of Defendants' Responses and Objections to Fair Isaac's Sixth Set of Document Requests, dated January 22, 2008.

I state under penalty of perjury that the foregoing is true and correct.

Date: March 3, 2008             s/Michael A. Collyard
                      Michael A. Collyard

# EXHIBIT 1

03-22-2007   05:01pm   From-ALSTON & BIRD                    +4048817777              T-967   P.002/004   F-940

## ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax: 404-881-7777
www.alston.com

Teresa T. Bonder                    Direct Dial: 404-881-7369            E-mail: teresa.bonder@alston.com

March 22, 2007

*VIA E-MAIL*
*& FACSIMILE: (612) 339-4181*

Michael A. Collyard, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402

    Re:    *Fair Isaac v. Equifax, et al.*

Dear Mike:

    I'm responding to your letter dated March 14, 2006, on behalf of the Defendants. We have also received your letter addressing the objections that Defendants raised in their responses on February 14, 2007, and are reviewing your letter. We will get back to you as soon as we are able, but we will not be in a position to work through your 19-page letter and get back to you by March 23, as you request. Nevertheless, we are all endeavoring to produce those documents that are not affected by our objections, and will continue to do so. We hope that Plaintiff will likewise collect and produce documents responsive to Defendants' requests, and not limit itself to the public documents it has produced so far.

### Time Period

    As an initial matter, let me repeat the reasons that Defendants initially proposed January 2005 as the cut-off date for relevant documents in response to Plaintiff's requests. Plaintiff's claims relate primarily, if not exclusively, to the creation and operation of VantageScore, which was not launched until March of 2006. The 2005 date is more than a year prior to the creation of the entity and competitive service that Plaintiff claims violates the law. Defendants' defenses, on the other hand, relate to, among other things, Plaintiff's use of the scoring range at issue which, according to Plaintiff's

Bank of America Plaza            90 Park Avenue              3201 Beechleaf Court, Suite 600       The Atlantic Building
101 South Tryon Street, Suite 4000   New York, NY 10016        Raleigh, NC 27604-1062            950 F Street, NW
Charlotte, NC 28280-4000         212-210-9400                919-862-2200                      Washington, DC 20004-1404
704-444-1000                     Fax: 212-210-9444           Fax: 919-862-2260                 202-756-3300
Fax: 704-444-1111                                                                              Fax: 202-756-3333

Michael A. Collyard, Esq.
March 22, 2007
Page 2

submission to the PTO, was first used in 2001. Thus, we do not understand why you continue to suggest that the time period for relevant documents must be the same for Plaintiff as for Defendants.

Nevertheless, during our meet and confer sessions, we repeatedly stated that Defendants would be willing to go back in time prior to January 2005. Plaintiff's initial stance that there could be absolutely no date cut-off for its requests, however, is simply unsupportable and unacceptable.

With respect to Defendants' responses, we may be able to reach an agreement regarding a 2001 cut-off date for the trademark/unfair competition/false advertising claims so long as Plaintiff understands that Defendants do not agree to waive any defenses whatsoever. To the extent that Defendants intend to rely on prior use of the alleged trademark in support of one of their defenses, they will produce the documents sufficient to show the prior use of the mark. To require the production of all documents Plaintiff has requested going back earlier than 2001 would be unreasonable. This is especially true because many of Plaintiff's requests seek "all documents relating to" a broad host of topics, including consumer credit data differences, communications with lenders, any advertising agency or public relations firm used, modifications of scores, sales incentives, the amounts charged for consumer credit reports or credit scores, etc.

A similar approach would apply to Plaintiff's discovery responses. In particular, Plaintiff has alleged infringement of its purported trademark rights in the designation 300-850, and Defendants are entitled to all documents concerning those purported rights. If Plaintiff intends to argue that its purported trademark rights existed prior to 2001, or if it took any steps prior to 2001 in connection with the enforcement thereof or the consideration or use of the scoring range at issue, then it must produce the associated responsive documents.

As for Plaintiff's requests that go to its antitrust claims, Defendants believe that going back to 1999 is not warranted by the allegations of the Complaint and would be unduly burdensome. The 4-year statute of limitations on the antitrust claims would only bring the time period back to 2002. To the extent Plaintiff now claims some conspiracy that allegedly occurred before 2005, the Complaint does not adequately plead such a conspiracy. Although you suggest the 1999 date is appropriate because "it's the time frame we believe Fair Isaac and the bureaus started to have discussions about Fair Isaac's NextGen scores/models," Plaintiff's Complaint does not allege any conspiracy to thwart NextGen. Seeking documents prior to the development of VantageScore is simply a fishing expedition with no hope of finding relevant documents. Nevertheless, we believe that having different time periods for different types of requests would be confusing and subject to varying interpretations. Accordingly, in order to keep the time period across the requests consistent, Defendants would agree to go back to 2001 for the antitrust-related requests as well.

03-22-2007   05:02pm   From-ALSTON & BIRD                    +4048817777           T-967   P.004/004   F-940

Michael A. Collyard, Esq.
March 22, 2007
Page 3

### Types of Scores

As you recall, Defendants proposed in the initial meet and confer on February 20 that all discovery requests be limited to generic credit risk scores, as defined in Defendants' discovery responses. We also proposed that each party prepare a list of the scores they have used in commerce, along with the scoring ranges, and dates of first use. We appreciate your willingness to consider our proposal. We are working toward determining what such lists should and, as a practical matter, can include. We will get back to you with our thoughts in the near future.

### Backup Tapes

First, on behalf of Equifax, let me amend my earlier statement to you. There is no auto-deletion policy applied to the vast majority of the custodians we have identified as potentially having relevant documents in this matter. I believe that, for the majority of these custodians, this has been the case since before the filing of the complaint in this matter. And, of course, relevant emails should have been saved pursuant to the document hold notices put in place for this litigation in any event.

I believe we are in agreement regarding the treatment of backup tapes: All parties may recycle all of their backup tapes in the normal course pursuant to pre-existing retention policies so long as the parties have put in place appropriate document hold measures that would result in the retention of relevant documents that might be on the backup tapes. If I have misunderstood and you do not agree with this statement, please let us know as soon as possible.

Finally, in your letter and during our meet and confer session in Minneapolis, Plaintiff's counsel appears to be taking the position that Plaintiff somehow has a lighter burden in responding to discovery than Defendants because Defendants are not pursuing counterclaims at this time. To be clear, Defendants are entitled to discovery with respect to each and every one of the many allegations in Plaintiff's 66-page complaint, however baseless and misguided, as well as each and every one of the defenses thereto. If Plaintiff is of the view that it does not need to fully and completely fulfill its obligations to respond to discovery in this matter, please let us know immediately.

Sincerely,

*Teresa T. Bonder*
Teresa T. Bonder

TTB:ttb
cc:   James K Gardner, Esq.
      Jack E. Pace, Esq.
      Barbara Berens, Esq.
LEGAL02/30298779v1

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION; my FICO CONSUMER SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> EQUIFAX, INC.; EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS INC.; TRANS UNION LLC; and VANTAGESCORE SOLUTIONS, LLC <br><br> Defendants. | Civil Action No.  06-cv-4112-ADM/JSM |

**EQUIFAX INC.'S AND EQUIFAX INFORMATION SERVICES LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF DOCUMENT REQUESTS**

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of this Court, Equifax Inc. and Equifax Information Services LLC (collectively "Equifax") hereby object and respond to Plaintiffs' Third Set of Document Requests ("Requests") as follows:

**GENERAL OBJECTIONS**

Equifax makes the following General Objections to each and every instruction, definition, and request set forth in the Requests, and incorporates them by reference into the specific response below.

1.      Equifax objects to the Requests on the grounds that Equifax Inc. is not a proper party to this action.  Equifax Information Services LLC ("EIS") is the entity that

provides consumer crediting reporting and risk scoring services. Objections and responses set forth below refer to collectively Equifax Inc. and EIS as "Equifax" for convenience and to conform to Plaintiffs' allegations and discovery requests. The production of documents or materials and the use of the term "Equifax" herein shall not constitute a waiver of Equifax Inc.'s defense that it is not a proper party to this action.

2.     Equifax objects to the Requests to the extent they seek documents and information relating to the alleged Aggregated Credit Data Market in general and/or products or services that are not related to the generic credit risk scoring services or the joint venture at issue in this case. To the extent the Requests seek information that is not related to the relevant generic credit risk scoring services or the joint venture at issue in this case, they are overly broad, unduly burdensome, and seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3.     Equifax objects to the Requests to the extent they seek documents and information concerning the algorithms, specifications, characteristics, attributes, logic, leveling, and/or data fields (collectively "algorithm-related" information or materials) of Equifax's proprietary credit risk scoring services. This information constitutes the most valuable competitive asset of Equifax's credit risk scoring business. Production of this valuable intellectual property to Equifax's direct competitors in this litigation would threaten Equifax's ability to compete and undermine competition in the industry for credit risk scoring services.

4.      Equifax objects to the Requests to the extent they seek algorithm-related information concerning VantageScore's scoring model because this information is irrelevant and not likely to lead to the discovery of admissible evidence for the reasons set forth in Defendants' pending Motion for Protective Order.

5.      Equifax objects to the Requests to the extent they seek documents and information regarding services other than generic credit risk scoring services.  Unlike customized scoring services created for a particular creditor, generic credit risk scoring services, i.e., those scoring services that predict credit risk delinquencies and apply to all industries and applications, are the only services relevant to this case.  Both the Plaintiffs' scoring services at issue in this case and the VantageScore scoring model are generic credit risk scoring services.  Subject to and without waiver of this or its other objections, Equifax will produce only those non-privileged, responsive documents that concern generic credit risk scoring services.

6.      Equifax objects to the Requests on the grounds the term "in-house credit-score models" is undefined and vague.  Equifax construes "in-house" to refer to proprietary Equifax credit risk scoring services, which do not include the VantageScore scoring service or other scores developed for or by third parties.

7.      Equifax objects to the Requests to the extent they seek all documents and information concerning Fair Isaac.  Equifax sells Fair Isaac credit risk scoring services to its customers.  Production of every document concerning Fair Isaac would, for example, require the production of every communication Equifax has had with its thousands of

**Request No. 12:**

All documents that refer to, relate to, reflect or constitute efforts by you to maintain the confidentiality of Fair Isaac's algorithms or the specifications for Fair Isaac's algorithms.

**Response to Request No. 12:**

Equifax incorporates by reference its General Objections. Equifax objects to this request because it seeks irrelevant information not likely to lead to the discovery of admissible evidence. Plaintiffs have made no allegation that Equifax has misappropriated or in any way misused Fair Isaac's credit-score model specifications. Equifax also objects on the grounds the request is vague, overly broad, and unduly burdensome.

Served this 18th day of July, 2007.

**ALSTON & BIRD LLP**
By:     s/ Peter Kontio
Peter Kontio, *Admitted Pro Hac Vice*
Michael P. Kenny, *Admitted Pro Hac Vice*
Teresa T. Bonder, *Admitted Pro Hac Vice*
1201 W. Peachtree Street
Atlanta, GA  30309
(404) 881-7000
(404) 881-7777 (fax)

**BRIGGS AND MORGAN**

Jeffrey J. Keyes (#55505)
Jay W. Schlosser (#204353)
2200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
(612) 977-8400
(612) 977-8650 (fax)

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Fair Isaac Corporation; and myFICO
Consumer Services, Inc.,

        Plaintiffs,        Civil Action No: 06 CV 4112 ADM/JSM

v.

Equifax Inc.; Equifax Information
Services
LLC; Experian Information
Solutions Inc.; TransUnion LLC;
VantageScore Solutions, LLC, and Does I
through X,

**Equifax Inc.'s and Equifax Information Services LLC's Responses and Objections to Plaintiffs' Sixth Set of Document Requests**

        Defendants.

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of this Court, Equifax Inc. and Equifax Information Services LLC (collectively "Equifax") hereby object and respond to Plaintiffs' Sixth Set of Document Requests ("Requests") as follows:

**GENERAL OBJECTIONS**

Equifax makes the following General Objections to each and every instruction, definition, and request set forth in the Requests, and incorporates them by reference into the specific responses below:

1.    Equifax objects to the Requests on the grounds that Equifax Inc. is not a proper party to this action. Equifax Information Services LLC ("EIS") is the entity that provides consumer crediting reporting and risk scoring services. Objections and responses set forth below refer collectively to Equifax Inc. and EIS as "Equifax" for

1

convenience and to conform to Plaintiffs' allegations and discovery requests. The production of documents or materials and the use of the term "Equifax" herein shall not constitute a waiver of Equifax Inc.'s defense that it is not a proper party to this action.

2. Equifax objects to the Requests to the extent they seek documents and information relating to products or services that are not related to the generic credit risk scoring services or the joint venture at issue in this case. To the extent the Requests seek information that is not related to the relevant generic credit risk scoring services or the joint venture at issue in this case, they are overly broad, unduly burdensome, and seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3. Equifax objects to the extent the Requests seek documents and information created prior to January 1, 2005, because it would be overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The joint venture that Plaintiffs are challenging in this case was formed in March 2006, and Plaintiffs make no allegations of misconduct prior to the creation of the joint venture. Subject to and without waiver of this or its other objections, Equifax will produce non-privileged, responsive documents that were created between January 1, 2001, and the date of service of these requests on December 17, 2007.

4. Equifax objects to the Requests to the extent they seek documents responsive to earlier requests and that Equifax has already produced. Equifax will not deliberately re-produce documents from its prior productions.

5. Equifax objects to the Requests to the extent they purport to require Equifax to collect and produce documents or information outside its possession, custody,

Served this 22nd day of January, 2008.

              **ALSTON & BIRD LLP**
              By: <u>s/Teresa T. Bonder</u>
              Peter Kontio, *Admitted Pro Hac Vice*
              Teresa T. Bonder, *Admitted Pro Hac Vice*
              Gregory B. Mauldin, *Admitted Pro Hac Vice*
              1201 W. Peachtree Street
              Atlanta, GA  30309
              (404) 881-7000
              (404) 881-7777 (fax)

              **BRIGGS AND MORGAN**
              Jeffrey J. Keyes (#55505)
              Jay W. Schlosser (#204353)
              2200 IDS Center
              80 South Eighth Street
              Minneapolis, MN  55402
              (612) 977-8400
              (612) 977-8650 (fax)

              Counsel for Equifax Inc. and Equifax Information Services LLC