**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Fair Isaac Corporation; and myFICO
Consumer Services, Inc.,

        Plaintiff,

  v.

Equifax Inc.; Equifax Information Services,
LLC; Experian Information Solutions, Inc;
Trans Union, LLC; and VantageScore
Solutions, LLC, and Does I thorough X,

        Defendants.

Civil Action No. 06-CV-4112 ADM-JSM

**MEMORANDUM OF LAW IN
SUPPORT OF NON-PARTY
OLSON'S
MOTION FOR PROTECTIVE
ORDER**

## INTRODUCTION

Non-party OLSON + CO ("OLSON") submits this memorandum in support of its Motion for a Protective Order, or Motion to Quash a Subpoena served on it by Defendant Experian Information Solutions, Inc.'s. ("Experian"). OLSON seeks an order from this court either quashing the subpoena served on it by Experian because the costs and expenses of performing under the terms of the subpoena places an undue burden on it pursuant to Fed. R. of Civ. P. 45 (c)(1) or for an order from this Court imposing on Experian as a sanction pursuant to Fed. R. of Civ. P. 45(c)(1) or as a reasonable modification under Fed. R. Civ. P. 45(c)(3)(A)(iv) the costs, lost earnings, expenses and reasonable attorneys fees in responding to the Subpoena.

## FACTS

On or about May 28, 2008 OLSON + CO ("Olson") received a subpoena from Bryan Gant, Esq. with the law firm of White and Case.

On June 3, 2008, counsel for OLSON, Thomas B. Olson, responded to the subponea with the following three objections within the fourteen days as required by Fed. R. of Civ. P. 45(c)(2)(B):  1) that the subpoena was not properly served, 2) no arrangement was made for compensation of OLSON for its time and expense to review and produce responsive documents and 3) the documents sought appear to require an extensive time commitment by OLSON personnel. (Affidavit of Matthew H. Jones, Exhibit A)  The first objection was resolved by the parties, but the second and third objection have not been resolved, thus this motion for a protective order.

Upon request of Experian's counsel, OLSON estimated that it would cost between $10,000 and $12,000 in order to compile and produce the documents identified in the subpoena to OLSON. (Jones Affidavit, Exhibit B).  Experian's Counsel then asked for a specific breakdown in the hours needed to produce the materials.  OLSON then provided the following breakdown to Experian's Counsel:

| Hours | Description (e-mails, power point presentations, Word documents, meeting agendas, conference reports, notes of brainstorms, etc.) |
|---|---|
|  | Electronic Files: |
| 20 | Search for and restore electronic files from archived e-mail and other servers |
| 15 | Search for Fair-Isaac-related e-mails from team members |
| 10 | Print, collate and label electronic documents |
|  | Hard Files: |
| 10 | Search for Fair-Isaac-related files |
| 15 | Extract Fair-Isaac-related files |
| 10 | Copy, collate and label documents |
| 20 | Redact non-Fair-Isaac-related information from electronic and hard copy files |

    100   Total Hours

(Plamann Affidavit, Exhibit A).

    In an attempt to limit the scope of the subpoena, Experian's Counsel sought to narrow the time frame of the subpoena to work performed after March 2006. (Jones Affidavit, Exhibit D).  OLSON then responded that the definition does not limit the scope of the search they will have to make and that OLSON will still have to make roughly the same inquiry to locate documents; and then to review the documents which are produced. (Jones Affidavit, Exhibit E).  OLSON then proposed, in an effort at compromise, that they would be willing to cap the bill to Experian at 75% of the estimate.  (Jones Affidavit, Exhibit E).  This was explained to Experian's counsel as follows: that the time being charged in the original estimate was with rates varying between $100-125 hourly with an estimate of 100 hours.  This yields a cost of $10,000-12,000.  OLSON proposed that the hourly rates would be lowered to 75% or $75-93.75 which would then result in an estimate between $7,500-9,375 and requested a deposit of $7500.  (Jones Affidavit, Exhibit E)

    On July 14, 2008 Experian's Counsel then refused to pay OLSON anything except for negotiated copying and printing charges and no charges for lost earnings, the time spent performing the search required in the subpoena or attorneys fees. (Jones Affidavit, Exhibit F).

    On November 7, 2008 Experian's Counsel indicated that it was not willing to cooperate with Olson and was going to bring a motion to enforce the subpoena.  OLSON

now has brought its own Motion for a Protective Order Quashing the subpoena or in the alternative for reimbursement of its, costs, expenses, lost earnings and attorneys fees in complying with the subpoena.

## ARGUMENT

Non-Party OLSON seeks a protective order from the court pursuant to FRCP 26(c) and Fed. R. of Civ. P. 45(c).  Fed. R. of Civ. P. 26(c) state that: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…"  Further, Fed. R. of Civ. P. 45 (C) states:

>(c) Protecting a Person Subject to a Subpoena.
>
>(1) A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing **undue burden or expense** on a person subject to the subpoena. **The issuing court shall enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply. (emphasis added)**

Fed. R. of Civ. P.  45 (C)(3)(A)(iv) further provides that a court **shall** quash or modify the subpoena if it subpoena subjects the person to undue burden. (emphasis added).

There are several federal cases that stand for the proposition that non-parties are particularly vulnerable to abuses of discovery and are afforded protection by the Court in responding to a subpoena through reimbursement of its costs and expenses.  In *U.S. v. Columbia Broadcasting System, Inc.,* within its motion to quash a subpoena, a non-party expressly reserved the right to seek reimbursement of discovery costs if production was ordered and the court granted the right to seek reimbursement of its expenses. 666 F.2d

364 (9th Cir.1982). In *In re Letters Rogatory,* a non-party moved to quash or modify a subpoena and sought expenses prior to compliance, which the court granted. 144 F.R.D. 272 (E.D.Pa.1992). In *Kisser v. Coalition for Religious Freedom,* a non-party, who moved to quash or modify a subpoena prior to compliance, was entitled to reimbursement. 1995 WL 590169 (E.D.Pa.1995). In *Mycogen Plant Science, Inc. v. Monsanto Co.,* non-parties, who moved to quash subpoenas and for a protective order prior to compliance, were entitled to reimbursement. 164 F.R.D. 623 (E.D.Pa.1996). In *Williams v. City of Dallas,* non-parties moved to quash subpoenas prior to compliance, and were entitled to reimbursement. 178 F.R.D. 103 (N.D.Tex.1998). In *Linder v. Calero-Portocarrero,* non-party agencies sought reimbursement of expenses, prior to compliance with a subpoena, in response to a motion to compel compliance. 251 F.3d 178 (D.C.Cir.2001). In *R.J. Reynolds Tobacco v. Philip Morris, Inc.,* a non-party that was compelled to furnish subpoenaed documents sought reimbursement prior to the production of documents and was awarded reimbursement. 29 Fed.Appx. 880, 881-82 (3d Cir.2002). *see also (Intervet, Inc. v. Merial Ltd.*, 2008 WL 1837257 (D.Neb. 2008.));

    a.    **Non-parties are entitled to their costs and expenses in responding to a subpoena**

In *Linder v. Calero-Portocarrero*, 251 F.3d 178 (C.A.D.C 2001) the Court of Appeals for the District of Columbia analyzed the new protections found in Fed. R. Civ. P. 45 of non-parties in complying with the terms of a subpoena stating:

> As amended in 1991, Fed.R.Civ.P. 45(c)(2)(B) provides that when a district court compels production by a non-party the court "shall protect" that person from "significant expense resulting from the inspection and copying commanded." Before the amendment, costs could be shifted, but the decision to do so was within

the discretion of the district court. See *United States v. CBS, Inc.*, 666 F.2d 364, 371 n. 9 (9th Cir.1982). As the notes to the amendment explain, the 1991 changes were intended "to enlarge the protections afforded persons who are required to assist the court." Fed.R.Civ.P. 45, advisory committee notes.

There are relatively few reported cases applying the new Rule 45. *In re The Exxon Valdez,* 142 F.R.D. 380 (D.D.C.1992), described the 1991 amendment as representing "a clear change from old Rule 45(b), which gave district courts discretion to condition the enforcement of subpoenas on the petitioners paying for the costs of production." *Id*. at 383. The court thought " 'protection from significant expense' does not mean that the requesting party necessarily must bear the entire cost of compliance.... There is no indication that [the amendment] intended to overrule prior Rule 45 case law, under which a non-party can be required to bear some or all of its expenses where the equities of a particular case demand it." *Id*. The district court here considered the factors mentioned in Exxon Valdez and in pre-1991 cases dealing with cost shifting: "whether the non-party actually has an interest in the outcome of the case, whether the non-party can more readily bear its costs than the requesting party, and whether the litigation is of public importance."*Linder*, 180 F.R.D. at 177; *Linder,* 183 F.R.D. at 322.

The Linders claim the court erred in concluding that fee shifting was mandatory. But Rule 45 requires precisely that-the district court "shall protect" a non-party from "significant expense." Under the revised Rule 45, the questions before the district court are whether the subpoena imposes expenses on the non-party, and whether those expenses are "significant." If they are, the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder "non-significant." The rule is susceptible of no other interpretation.

The estimated expenses of compliance here amounted to $199,537.08. Is this amount "significant"? We have no trouble concluding that it is. Compare *Williams v. City of Dallas,* 178 F.R.D. 103, 113 (N.D.Tex.1998) ($9,000 estimate sufficiently significant to shift costs). While a court might take into account the financial ability of the non-party to bear some costs (a question we do not reach today), the district court here was well within bounds in treating expenses of nearly $200,000 as "significant." (Whether the court should have shifted the entire amount is beside the point in light of the Linders' position that they will pay no expenses whatsoever in order to obtain discovery.)

<u>Linder</u> set forth the following factors in discussing the use of subpoena power vis-à-vis a non party:

1) whether the non-party actually has an interest in the outcome of the case

2) whether the non-party can more readily bear its costs than the requesting party

3) and whether the litigation is of public importance

OLSON has no interest in the outcome of the case and Experian and/or its large law firms can surely "more readily bear [the] costs" than OLSON.

The rationale for shifting the expenses in Fed. R. of Civ. P. 45 is to protect a non-party:

> The District Court also denied Wawa fees and costs incurred as a result of its compliance with R.J. Reynolds' subpoena. We find that the court abused its discretion when it summarily denied compensation without considering evidence of the expenses Wawa incurred.
>
> Fed.R.Civ.P. 45(c)(2)(B) imposes mandatory fee shifting and directs the court to "protect" a nonparty from "significant expense resulting from inspection and copying commanded." Thus, district courts must determine whether the subpoena imposes expenses on a non-party and whether those expenses are significant. *James Wm. Moore,* 9 Moore's Federal Practice § 45.04[2] (3d ed.2001). Significant expenses must be borne by the party seeking discovery. *Id.* The District Court abused its discretion when it denied Wawa compensation without determining the existence and magnitude of Wawa's expenses.

*R.J. Reynolds Tobacco v. Philip Morris, Inc.,* 29 Fed.Appx. 880, 881-82 (3d Cir.2002).

Further, *In Re Rogatory* holds that non-parties are entitled to reimbursement for its costs in complying with a subpoena:

Both the Advisory Committee Report and the *Practice Commentaries* are unequivocally clear that under this Court "shall" include in its order granting a subpoena to a non-party a Fed.R.Civ.P. 45 provision for "defraying the expenses that the production, inspection, copying, etc., may require." *Practice Commentary,* C45-21, 28 U.S.C.A., Rule 45 at 389. The Advisory Committee expressly adopted the Ninth Circuit's holding in *United States v. Columbia Broadcasting System, Inc.,* 666 F.2d 364, 371-72 (9th Cir.1982). *Id.* at 389.

In *Columbia Broadcasting* the court stated:

Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties. Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party. Although we decline to curtail district courts' discretion over the discovery process by adopting the formal guidelines favoring nonparty reimbursement advocated by the studios, we nevertheless emphasize that a witness's nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or the producing party.

*In re Letters Rogatory,* 144 F.R.D. 272 (E.D.Pa.1992).

The Court further stated in *In re Letters Rogatory:*

The plain language of Rule 45(c)(3)(B)(iii) supports this Court's conclusion:

If a subpoena requires a person who is not a party ... or if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be *reasonably compensated,* the court may order appearance or production only upon specified conditions.

Fed.R.Civ.P. 45(c)(3)(B)(iii). The Advisory Committee further provided: The court is not required to fix the costs in advance of production, although this will often be the most satisfactory accommodation to protect the party seeking discovery from excessive costs. In some instances, it may be preferable to leave uncertain costs to be determined after the materials have been produced, provided

that the risk of uncertainty is fully disclosed to the discovering party. *Advisory Notes,* (cited in 28 U.S.C.A., Fed.R. 45 at 403);

*In re Rogatory,* 144 F.R.D. 272 (E.D.Pa.1992).

As stated in *Mycogen Plant Science, Inc. v. Monsanto* non-parties cannot control the scope of litigation and discovery and need protection:

> Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on non-parties. Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party.

*Mycogen Plant Science, Inc. v. Monsanto Co.,* 164 F.R.D. 623 (E.D.Pa.1996). (Citing *United States v. Columbia Broadcasting Sys.,* 666 F.2d 364, 371 (9th Cir.))

### b.   Non-Parties are entitled to reimbursement of legal fees.

Rule 45 (c) of the Federal Rules of Civil Procedure specifically allows for attorneys fees as a sanction for a parties failure to alleviate the undue burden on a subpoenaed non-party.  Additional cases have also found that non-parties are entitled to reimbursement of their expenses including attorney's fees in complying with a subpoena:

> Pursuant to Rule 45 and the order of July 12, 1995, the court finds that Mr. Smith's reasonable attorney's fees are recoverable. In complying with the subpoena, it is understandable that Mr. Smith would seek the assistance of counsel to locate and review responsive documents. Further, to disallow reimbursement would frustrate the policy of Rule 45protecting non-parties, who have no control over the scope of discovery, from having to subsidize litigation in which they are not a party.  *See United States v. Columbia Broadcasting System, Inc.,* 666 F.2d 364, 371-72 (9th

Cir.), *cert. denied,* 457 U.S. 1118 (1982). Therefore, Defendants shall reimburse Mr. Smith for his reasonable attorney's fees incurred in searching for responsive documents.   *See Cantaline v. Raymark Indus.,* 103 F.R.D. 447, 453 (S.D.Fl.1984).

*Kisser v. Coalition for Religious Freedom,* 1995 WL 590169 (E.D.Pa.1995).

### c. The costs of complying with the subpoena are significant to OLSON.

The whole point as evidenced in the changes to the text of Rule 45 was to protect a non-party from bearing the majority of the cost in responding to a subpoena.  As stated in Linder:

> Under the revised Rule 45, the questions before the district court are whether the subpoena imposes expenses on the non-party, and whether those expenses are "significant."  <u>If they are, the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder "non-significant."</u> The rule is susceptible of no other interpretation. (emphasis added)

$10,000 to $12,000 in costs are a significant drain on the resources of OLSON. Additionally it is estimated that it will take OLSON over 100 hours and two to three weeks to complete the task being sought by Experian, time that takes OLSON employees away from other tasks furthering the core purpose of its business.  Because OLSON is a non-party, the party seeking discovery must "bear at least enough of the expense to render the remainder 'non-significant.'"  That, according to Linder, and the above cited cases, is Experian's liability—and must include more than just token copy/printing costs, including attorneys fees. *See also In re Digital Resource, LLC,* 246 B.R. 357 (8th Cir.

B.App Minn. 2000)(awarding attorneys fees to a non-party attorney for compliance with a subpoena.)

## CONCLUSION

OLSON is entitled to an order of this court quashing the subpoena or in the alternative a protective order awarding it is costs, including the hourly rate charge for OLSON employees performing the task, expenses and attorneys fees in responding to the subpoena. .

Dated:  November 21, 2008            By:    s/ Matthew H. Jones
                                                         Thomas B. Olson (#82314)
                                                         Matthew H. Jones (#286412)
                                                         Olson & Lucas, P.A.
                                                         Financial Plaza
                                                         7401 Metro Blvd. #575
                                                         Minneapolis, MN 55439
                                                         Telephone:  952-224-3644
                                                         *ATTORNEYS FOR NON-PARTY OLSON + CO.*