IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Fair Isaac Corporation; and myFICO
Consumer Services, Inc.,

        Plaintiff,

v.

Equifax Inc.; Equifax Information Services, LLC; Experian Information Solutions, Inc; Trans Union, LLC; and VantageScore Solutions, LLC, and Does I thorough X,

        Defendants.

Civil Action No. 06-CV-4112 ADM-JSM

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO DEFENDANTS' SUBPOENA *DUCES TECUM***

## INTRODUCTION

Non-Party OLSON + Co ("OLSON") submits this Memorandum in Opposition to Defendant's Motion to Compel Documents responsive to Defendants' Subpoena *Duces Tecum*. OLSON has not objected to providing the documents sought by Defendants, but has simply objected from the outset that Defendants should bear the substantial cost burden in producing the information sought in the subpoena and that OLSON as a non-party should not subsidize Defendants discovery expenses as required by Fed. R. Civ. P. 45.

### A. INACCURACY IN DEFENDANTS FACTS

The facts as alleged in Non-Party OLSON's Memorandum in Support of a Protective Order and Defendants' Memorandum in Support of its Motion to Compel are in general agreement, except that there are three inaccuracies in Defendants moving papers.

1

First, OLSON estimated that the cost of complying with the subpoena would take approximately 100 hours and cost between $10,000 and $12,000. (Affidavit of David Plamann, Ex. A). OLSON then offered, as a compromise, to subsidize and absorb 25% of the cost of complying with the subpoena and charge Defendants 75% of the costs of complying with the Subpoena. (Jones Affidavit, Ex. C & F). The then estimated compromised estimated charge would be between $7500 and $9375. (Jones Affidavit, Ex. C & F) Defendants now cite this compromise offer as the maximum estimated total cost of complying with the subpoena which is incorrect and inaccurate. The correct amount is $12,000.00

Second, Defendant also asserts that OLSON has not provided a breakdown of total printing and copying costs associated with making its production. Currently it is impossible to know what the total exact copying charges will be, because OLSON does not yet know how many pages of documents would have to be copied, as OLSON has not yet undertaken the substantial work of combing its files to find the requested documents. OLSON did provide a detailed breakdown of the hours that would most likely be needed to comply with the subpoena and provided those numbers to Defendant. (Affidavit of David Plamann, Ex. A.)

Finally Defendants assert that OLSON has never complained that a response to the Subpoena would be too burdensome, and that OLSON's only complaint was that it wanted to be compensated for complying with the subpoena. This is also inaccurate, OLSON's counsel in its written objection to the Subpoena on June 3, 2008, stated that the documents sought appear to require an <u>extensive</u>

time commitment by OLSON personnel. (Jones Affidavit, Exhibit A)(emphasis added).

### A     OLSON WILL INCUR SUBSTANTIAL COSTS IN COMPLYING WITH THE SUBPOENA.

OLSON will incur substantial costs in complying with the subpoena. Olson estimates that it will incur at least $10,000 in employee hours in complying with the subpoena, let alone the copying and printing expenses of complying with the subpoena. (Affidavit of David Plamann, Ex. A). This is a significant expense to OLSON. OLSON should not have to subsidize Defendants litigation expenses.

Fed. R. Civ. P. 45(c)(2)(B)(ii) and 45(c)(3)(iv) requires the Court to modify or quash a subpoena when complying with the subpoena will subject the non-party to a significant expense or an undue burden. OLSON who is not a party to this litigation has simply asked that the Defendant Experian, a corporation with over 5,500 employees in North America and over $2,000,000,000.00 (Two Billion Dollars) a year in North American revenue defray the costs of complying with its own subpoena. (Jones Affidavit, Ex. D) The Federal Rules clearly compel the subpoenaing party to make sure that non-parties, who have no stake in the litigation, escape the often acrimonious discovery process unscathed and not be forced to subsidize the litigation. Defendants have not met this duty imposed upon them in the Federal Rules

Defendants argue that non-party OLSON's costs of $12,000[1] in complying with the subpoena are insubstantial and thus Defendants are obviated from its Fed. R. Civ. P 45(c) duty to protect non-parties subject to subpoenas. In *Williams v. City of Dallas* 178 F.R.D. 103 (N.D.Tex., 1998.) the court found that $8,000.00 in anticipated attorney's fees were a significant expense to a non-party in complying with a subpoena and must be born buy the party requesting the documents. In *Williams* the court weighed in imposing discretionary relief to non-parties burdened by a subpoenas: "such non-exclusive factors as the scope of the discovery, the depth of the invasion involved in the request, the extent to which the producing party must separate responsive information from privileged or even irrelevant material, and the reasonableness of the expenses involved in making the production." 178 F.R.D. 103 (N.D.Tex., 1998.) All of these factors exist in this case, OLSON estimates that it will take 100 hours of time comply with the subpoena. OLSON even provided a breakdown to Defendants :

- 20 Search for and restore electronic files from archived e-mail and other servers
- 15 Search for Fair-Isaac-related e-mails from team members
- 10 Print, collate and label electronic documents

    Hard Files:
- 10 Search for Fair-Isaac-related files
- 15 Extract Fair-Isaac-related files
- 10 Copy, collate and label documents

---

[1] Defendant in its Memorandum of Law cites the figure of $9,375.00 as the maximum estimated fee. As stated earlier in this Memorandum, OLSON's maximum estimated fee was $12,000.00. OLSON proposed a compromised maximum estimated fee in the amount of $9,375.00 in an effort to reach an agreement with Defendant. OLSON proposed bearing 25% of the costs of complying with the subpoena in order to reach this compromise. Not only did Defendant reject the offer out of hand, it is now using the compromised number as the maximum fee.

20   Redact non-Fair-Isaac-related information from electronic and hard copy files

100   Total Hours

It is simply unreasonable to force non-party OLSON to bear all of these costs and subsidize the litigation.

### B. OLSON IS ENTITLED TO BE REIMBURSED FOR ITS HOURLY EXPENSES IN COMPLYING WITH THE SUBPOENA

OLSON is entitled to reimbursement of its hourly expenses in complying with the subpoena. OLSON is a non-party in this litigation and has no stake in its outcome. The subpoena rules clearly contemplate that non-parties should have their reasonable expenses, including lost earnings, reimbursed when responding to a subpoena. Fed. R. Civ. P 45(c)(1) requires that parties whom use subpoena power, but fail to alleviate the burden on subpoenaed non-parties should as a sanction pay the expenses of the subpoenaed party including the payment of lost earnings and attorney's fees. In *Williams v. City of Dallas* the court found that it was appropriate to pay the hourly rates of paralegals and younger attorneys in responding to a subpoena. 178 F.R.D. 103 (N.D.Tex., 1998.).

In addition three Magistrate Judges in the District of Minnesota have allowed for reimbursement of expenses and costs to non-parties in responding to subpoenas. On August 28, 2001, Chief Magistrate Noel order reimbursement to the law firm of Leonard, Street and Deinard of $87,110.48, which included $19,272.50 for costs incurred in the actual negotiation and correspondence

between opposing counsel regarding narrowing the scope of document production. (Declaration of Matthew H. Jones, Ex. C, August 28, 2001 Order). Further in the same litigation Magistrate Judge Boylan ordered reimbursement of $46,635.09 to a non-party as a condition for production of documents pursuant to a subpoena duces tecum. (Jones Declaration, Ex. B, January 16, 2001 Order).

Finally in an extensive order Magistrate Erickson held that the Florida State Board of Administration should pay the costs of non-party KPMG in responding to a subpoena. (Declaration of Matthew H. Jones, Ex. A) In the KPMG case, as in the current case, the Florida State Board of Administration would not reimburse KPMG for any of the time of its employees in responding to the subpoena and only offered to pay copying charges. Magistrate Erickson relied on *Linder v. Calero-Portocarrero*, 251 F.3d 178 (C.A.D.C 2001)[2] and found that the Florida State Board of Administration must pay all of KPMG's costs of production in response to the Subpoena. (Jones Declaration, Ex. A). Magistrate Erickson specifically found that "We do not believe that the Plaintiffs, here, had a legitimately arguable position."

OLSON has cooperated with Defendants from the initial receipt of the subpoena, provided estimates of the costs of producing the requested documents and actually proposed a compromise on the labor costs of obtaining the documents. Defendants have simply refused to comply with its duty under Fed. R. Civ. P 45(c) to alleviate the undue burden and significant expense to OLSON in

---

[2] As OLSON asserts in its Memorandum in Support of its Protective Order.

responding to the subpoena. OLSON only asks that this Court order Defendants to reimburse it for the costs, including the hourly rate charge for OLSON employees performing the task, expenses and attorneys fees in responding to the subpoena.

### C. OLSON IS ENTITLED TO ITS ATTORNEYS FEES IN RESPONDING TO DEFENDANTS SUBPOENA, BRINGING ITS MOTION FOR PROTECTIVE ORDER AND RESPONDING TO THIS MOTION TO COMPEL

OLSON also requests that the court grant its attorneys fees in negotiating the terms of the subpoena, in bringing its Motion for a Protective Order and responding to the Motion to Compel. OLSON has expended $2,369.50 in negotiations with Defendant for its expenses and has expended and will expend, approximately, $4,500.00 in responding to the Motions. (Declaration of Matthew H. Jones, ¶ 6). And it is anticipated that OLSON will incur an additional $500 in fees to attend the hearing on the Motions. (Declaration of Matthew H. Jones, ¶6). These attorneys' fees are awardable under Fed. R. Civ. P. 45(c).

Judge Erickson's footnote #2 in his order is instructive as to attorneys' fees:

> So as to remove any doubt, we construe the phrase "expense resulting from the inspection and copying commanded," as including any necessary and reasonable attorneys' fees required in that process. See, In re First American Corp., 184 F.R.D. 234, 241 (S.D.NY. 1998)("A nonparty's legal fees, especially where the work benefits the requesting party, have been considered a cost of compliance reimbursable under Rule 45 (c)(2)(B).") citing Kahn v. Rezulin Products Liability Litigation, 2002 WL 24475 at *2 (S.D.N.Y. January 20, 2002); Williams v. City of Dallas, 178 F.R.D. 103, 112 (N.D. Tex. 1998); Compaq Computer Corp v. Packard Bell Electronics, Inc., 163 F.R.D. 329, 339 (N.D. Calif. 1995). …..
>
> By "necessary" attorneys' fees, we mean to include those tasks that uniquely require the expertise of an attorney, or a paralegal, and by "reasonable," we mean to denote that the time expended for the task is

7

> consistent with the work involved, and the hourly fee for the work is compatible with generally applicable community standards.
>
> We further find that, as a part of those expenses, KPMG should include the costs and expenses incurred in responding to the Plaintiffs' Motion to Compel, but only the extent of addressing the issue of cost-shifting. We do not believe that the Plaintiffs, here had a legitimately arguable position that KPMG should pay for all the inspection costs and expenses, which were commanded by their Subpoena, and their adamance in maintaining that posture, notwithstanding the case law to the contrary, warrants the inclusion of the costs and expenses of KPMG's response, in those that are reimbursable by the Plaintiffs, whether as a sanction under Rule 45 (c)(1), or 45(C)(2(B)

(Jones Declaration, Ex. A, Pg. 13, footnote. 2).

The situation presented in this current dispute is almost identical to the dispute ruled on by Magistrate Erickson. In this case Defendants have flatly refused to reimburse OLSON for any of its legitimate business expenses in complying with the subpoena. Defendants have refused any attempt at compromise and have forced OLSON both to bring a Motion for a Protective Order and respond to this Motion to Compel. Because of Defendants intransigence, OLSON should be awarded its attorneys fees and costs.

## CONCLUSION

OLSON is entitled to its reimbursement for its costs, including the hourly rate charge for OLSON employees performing the task, expenses and attorneys' fees in responding to the subpoena.

Dated: November 26, 2008            By:   s/ Matthew H. Jones
                                                         Thomas B. Olson (#82314)
                                                         Matthew H. Jones (#286412)
                                                         Olson & Lucas, P.A.
                                                         Financial Plaza
                                                         7401 Metro Blvd. #575
                                                         Minneapolis, MN 55439
                                                         Telephone: 952-224-3644
                                                         *ATTORNEYS FOR NON-PARTY OLSON + CO.*