# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Fair Isaac Corporation and
myFICO Consumer Services, Inc.,

        Plaintiffs,

    v.                                **MEMORANDUM OPINION AND ORDER**
                                      Civil No. 06-4112 ADM/JSM

Experian Information Solutions Inc.;
Trans Union, LLC; VantageScore
Solutions, LLC; and Does I through X,

        Defendants.

___

Ronald J. Schutz, Esq., Randall Tietjen, Esq., Michael A. Collyard, Esq., Laura E. Nelson, Esq., Robins, Kaplan, Miller & Ciresi, LLP, Minneapolis, MN, on behalf of Plaintiffs.

Mark A. Jacobson, Esq., Mark H. Zitzewitz, Esq., Christopher R. Sullivan, Esq., Lindquist & Vennum PLLP, Minneapolis, MN, and M. Elaine Johnston, Esq., Robert A. Milne, Esq., Christopher J. Glancy, Esq., Jack E. Pace, III, Esq., White & Case LLP, New York, NY, on behalf of Experian Information Solutions Inc.

Lewis A. Remele, Jr., Esq., Christopher R. Morris, Esq., Bassford Remele, Minneapolis, MN, and James K. Gardner, Esq., Ralph T. Russell, Esq., Neal, Gerber, & Eisenberg LLP, Chicago, IL, on behalf of Trans Union, LLC.

Barbara Podlucky Berens, Esq., Justin Rae Miller, Esq., Kelly & Berens, PA, Minneapolis, MN, on behalf of VantageScore Solutions, LLC.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Defendants' Experian Information Solutions Inc. ("Experian"); Trans Union, LLC ("Trans Union"); and VantageScore Solutions, LLC ("VantageScore") (collectively "Defendants") Objections [Docket No. 437] to Magistrate Judge Janie S. Mayeron's November 3, 2008 Order [Docket No. 431] ("November 3 Order") denying Defendants' Motion to Compel [Docket No. 402]. For the reasons stated below, Defendants' Objections are overruled.

## II. BACKGROUND

The facts and procedural history relevant to this discovery dispute are set forth in Judge Mayeron's November 3, 2008 Order. Therefore, only a brief version of the relevant facts and procedural history is presented here.

Plaintiffs Fair Isaac and myFico Consumer Services, Inc. (collectively "Fair Isaac") commenced this action in October 2006 against Defendants and Equifax, Inc. and Equifax Information Services LLC (collectively "Equifax"), asserting claims for violations of antitrust laws. Compl. [Docket No. 1] at 56-63. On June 6, 2008, Fair Isaac and Equifax entered into a "Technology Development, Distribution and License Agreement" and a "Data License Agreement" (collectively the "Business Agreements"). November 3 Order at 2. Fair Isaac's action against Equifax was subsequently dismissed with prejudice. Id. To assist Fair Isaac in deciding whether to settle with Equifax and enter into the Business Agreements, two Fair Isaac employees, Lisa Nelson ("Nelson") and Keri Kramers-Dove ("Kramers-Dove"), prepared analyses and projections comparing what Fair Isaac's scoring business would look like depending on whether or not the company entered into the Business Agreements. Id. at 3. In

addition, Fair Isaac prepared joint estimates with Equifax concerning the projected revenue opportunities that the proposed Business Agreements would create. Id. at 4. When Fair Isaac employees familiar with the analyses and projections by Nelson and Kramers-Dove were deposed, they testified about the general nature of the analyses and projections but refused to answer questions regarding the precise details, claiming attorney-client privilege and work product. Id. Similarly, when Defendants served a discovery request on Fair Isaac for the production of the analyses and projections by Nelson and Kramers-Dove, Fair Isaac refused to disclose the requested materials on the basis of attorney-client privilege and work product. Id. at 6-7. Defendants filed a Motion to Compel, which Judge Mayeron denied, and these Objections followed.

### III. DISCUSSION

**A.     Standard of Review**

The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential. Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). The district court must affirm an order by a magistrate judge unless it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir.1996).

**B.     Defendants' Objections**

Defendants argue that Judge Mayeron's November 3 Order was clearly erroneous and contrary to the law in the following three respects: (1) the conclusion that Defendants failed to

3

show a substantial need for, and an inability to obtain through other means, the analyses and projections by Nelson and Kramers-Dove of the impact of entering into the Business Agreements in connection with the settlement with Equifax; (2) the denial of Defendants' request for the production of business estimates prepared jointly by Fair Issac and Equifax on the ground that the parties failed to adequately argue this issue; and (3) the denial of Defendants' request to re-depose certain Fair Isaac employees concerning the analyses and projections and the joint estimates regarding impact of the Business Agreements on Fair Isaac.  Objections at 2.

1.      **Projections as Work-Product**

Ordinary work product is not discoverable unless the party requesting such information "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 23(b)(3)(A)(ii); see also In re Murphy, 560 F.2d 326, 334 (8th Cir. 1977).  Judge Mayeron found that Defendants failed to meet this burden regarding the analyses and projections by Nelson and Kramers-Dove.  November 3 Order at 18.  Judge Mayeron reasoned that Defendants' own experts have access to the Business Agreements and Fair Isaac's business data, and, therefore, they are capable of developing, without undue hardship, their own analyses and projections.  Id.

Defendants contend that the analyses and projections "must be based on judgments and assumptions as to how Fair Isaac will operate in the future and how it will react to developments in the marketplace."  Objections at 8.  Defendants explain that to enable their experts (who will prepare their own analyses and projections) to challenge the credibility of the analyses and projections by Nelson and Kramers-Dove, they must be allowed access to the analyses and projections themselves, including the "unique internal assumptions" on which Nelson and

Kramers-Dove relied.  Id. at 8-9.  In addition, Defendants allege that Fair Isaac's CEO has described the Business Agreements positively, while Fair Isaac's COO has said that he was "absolutely not" satisfied with the Business Agreements, "in spite of the fact that both sets of statements are based upon the [analyses and projections by Nelson and Kramer-Dove]."  Id. at 3-4, 10.  Defendants claim that given this inconsistency, there is a substantial need for the analyses and projections themselves "because the contradictory statements ensure that the [analyses and projections] will be useful in impeaching the credibility of Fair Isaac witnesses."  Id. at 10.

     Courts have recognized that requesting work product for the purpose of using it to impeach a witness can constitute a substantial need but that "[m]ere speculation" that the work product will reveal impeachment material is not sufficient to warrant disclosure under Rule 26(b)(3).  See Banks v. Wilson, 151 F.R.D. 109, 114 (D. Minn. 1993).  Or as one court has explained:  "[S]ubstantial need . . . can be established by showing the document is necessary for impeachment purposes" but "a party must present more than speculative or conclusory statements that the reports will contain *invaluable* impeachment material" and "the impeachment value must be *substantial* because every prior statement has some impeachment value and otherwise the exception would swallow the rule."  Duck v. Warren, 160 F.R.D. 80, 83 (E.D. Va. 1995) (quotation omitted) (emphasis added); Solomon v. Scientific Am., Inc., 125 F.R.D. 34, 38 (S.D.N.Y. 1988) (same).  Here, Defendants have not demonstrated that the value of any impeaching material found in the analyses and projections by Nelson and Kramer-Dove would be substantial.  Notably, Defendants do not assert that the analyses and projections contain any material that would be useful in impeaching Nelson and Kramer-Dove.  Rather, their position is that the analyses and projections will reveal material useful to impeaching the CEO and the

COO, who issued statements regarding the impact of the Business Agreements on Fair Isaac's position in the credit scoring industry contrary to each other. Defendants ultimately seek to prove that as a result of the Business Agreements between Fair Isaac and Equifax, certain of Fair Isaac's claims will fail. The argument is that the agreements have vitiated the probability that Fair Isaac will be driven from the credit scoring industry as a result of Defendants' alleged collusive agreements to deny Fair Isaac access to credit data and distribution. See Defs.' Mem. in Supp. of Mot. to Compel [Docket No. 404] at 22. But the simple fact that the CEO and the COO issued contradictory statements regarding the impact of the Business Agreements is impeaching in and of itself. Therefore, the Court is of the view that even if additional impeaching material were found in the analyses and projections, it would not add substantial value to Defendants' impeachment argument. For all these reasons, the Court concludes that Judge Mayeron did not clearly err in declining to compel Fair Isaac to produce the analyses and projections by Nelson and Kramers-Dove.

### 2. Joint Estimates

Judge Mayeron declined to compel Fair Isaac to produce business estimates that had been prepared jointly by Fair Isaac and Equifax regarding future revenue opportunities that might be realized under the Business Agreements because the parties failed to adequately address the issue. November 3 Order at 20-21. Defendants assert that they referred to the joint estimates on three separate occasions in their brief on the Motion to Compel and that the arguments in their brief applied not just to the analyses and projections but to the joint estimates as well. Objections at 11-12. Thus, they claim, Judge Mayeron clearly erred in finding that the issue of the discoverability of the joint estimates had not been adequately addressed by the parties. Id.

Defendants' reference to the joint estimates is not the same as having advanced an argument regarding their discoverability. Defendants spent considerable effort advancing arguments explaining why, in their view, the analyses and projections by Nelson and Kramers-Dove did not constitute work product and were not subject to the attorney-client privilege. And although the joint estimates were *mentioned* in the brief, no arguments specifically discussing the discoverability of the joint estimates were articulated aside from a conclusory statement that the joint estimates did not constitute work product or material protected by the attorney-client privilege. Therefore, Judge Mayeron did not clearly err in declining to compel Fair Isaac to produce the joint estimates.[1]

### 3. Re-Depose

In their Motion to Compel, Defendants also requested to re-depose Fair Isaac's CEO and COO, as well as Nelson, regarding the analyses and projections by Nelson and Kramers-Dove and the joint estimates. See November 3 Order at 7. Because Judge Mayeron declined to compel production of the analyses and projections and the joint estimates, Judge Mayeron likewise declined the request to re-depose the witnesses regarding those materials. Id. at 20. Defendants challenge to this aspect of Judge Mayeron's decision depends on the success of their challenge to the discoverability of the analyses and projections and the joint estimates. See Objections at 13-14. Because Judge Mayeron did not clearly err in declining to compel Fair Isaac to produce those materials, the Court concludes that Judge Mayeron also did not clearly err with respect to the request to re-depose.

---

[1] In addition, it appears that Fair Isaac no longer intends to refuse to produce the joint estimates in light of its representation to the Court that it does not assert work-product protection or attorney-client privilege regarding the communications between Fair Isaac and Equifax relating to the settlement. Pls.' Resp. to Defs.' Objections [Docket No. 470] at 13.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Objections [Docket No. 437] are **OVERRULED**.

BY THE COURT:


          s/Ann D. Montgomery          
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 22, 2009.