# EXHIBIT 2

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

**MICHAEL A. COLLYARD**
612-349-0975

March 20, 2007

Teresa T. Bonder
Peter Kontio
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Jack E. Pace III
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036-2787

Ralph T. Russell, Jr.
Dao Lee Boyle
Neal, Gerber & Eisenberg LLP
Two North LaSalle Street, Suite 2200
Chicago, IL 60602

Barbara Podlucky Berens
John D. Bessler
Kelly & Berens, P.A.
3720 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Re: *Fair Isaac v. Equifax, et al.*
Our File No. 123369-0003

Dear Counsel:

This letter addresses the defendants' objections to Fair Isaac's document requests. Although defendants required us to go through every single Fair Isaac document request during our multiple-day meet-and-confers, many of their objections were based only on time period, type of scores, and algorithm related issues. We addressed the first two issues in our March 14th letter and made proposals to resolve those issues, but you haven't responded to our proposals yet. We understand you are in the process of doing so. Defendants' remaining objections are discussed below. (For convenience purposes, we have also attached a chart identifying defendants' objections to Fair Isaac's document requests.)

In any instances in which Fair Isaac has reached or offers a compromise with defendants on their objections to Fair Isaac's requests, or when Fair Isaac agrees to a proposed clarification or modification to a particular request, Fair Isaac does not waive its right to seek more information or additional documents in the future. For those instances in which the parties agree that defendants should produce documents based on a modification or clarification to the original request, Fair Isaac will raise any further issues after it has reviewed defendants' productions.

If we ask you in this letter to provide us with certain information relating to a particular request, we ask that you do so by March 23, 2007. If that is a problem for any particular request,

Defendants' Counsel
March 20, 2007
Page 2

please let us know.

Some Points Regarding Defendants' General Objections

- Sales force files: The bureau defendants object to searching the files of their sales forces in response to Fair Isaac's document requests. But it is very likely that responsive information will exist in the sales-force files of the bureau defendants, and the defendants have never denied that. Please confirm that your clients will conduct a search of sales-force files as required by the rules and produce any information responsive to Fair Isaac's requests. Recently, the defendants proposed to talk about this issue further but then said that they wanted to wait and review Fair Isaac's proposal on time period and types of scores. Although we are willing to talk with you about these issues further, you cannot continue to put off your search.

- Lender definition: The bureau defendants objected to Fair Isaac's definition of the word "lender" in its document requests because the definition includes resellers. The bureau defendants also represented that they might not produce documents regarding resellers in response to certain requests. They claimed that this case is only about lenders and not about resellers. Fair Isaac maintains that this case is, in fact, about resellers as much as it is about traditional lenders. In fact, Fair Isaac has made specific allegations in its complaint about resellers. Despite the defendants' objections, no defendant identified any specific document request where it refused to produce information based on Fair Isaac's definition of lender so we expect that the defendants will be producing documents based on Fair Isaac's definition.

- Objections to other definitions: On paper, the defendants objected to many of Fair Isaac's other definitions in its document requests. But during our meet-and-confer, as we went through the defendants' responses to each of Fair Isaac's requests and asked the defendants which objections they were not willing to put aside for the purposes of production, the defendants never once invoked those many general objections. Thus we expect the defendants to make a full production based on Fair Isaac's defintions.

- Relevant geographic scope: Defendants objected to the geographic scope of Fair Isaac's requests. Fair Isaac agrees, for the time being at least (and to speed up the defendants' production), to generally limit its requests to the United States and to Canada (Canada is limited to information related to Trans Union's efforts to enter the credit-data market in Canada in the 1990s). Fair Isaac reserves the right to seek information beyond these limitations to the extent it believes that it needs such information in the future.

    On this subject, one further note about Trans Union: Despite Fair Isaac's allegations in the amended complaint about Trans Union's activities in Canada, Trans Union represented to us that it is not willing to produce information involving its actions in Canada. We understand that Trans Union is reconsidering its position. Fair Isaac asks

MP3 20217284.1

Defendants' Counsel
March 20, 2007
Page 3

that Trans Union tell us as soon as possible whether it will produce all information responsive to Fair Isaac's requests about Trans Union's activities in Canada.

- Third party agreements: The bureau defendants objected to producing certain documents because they may have agreements with third parties that require them to give notice to the third parties or take other steps before producing what might be confidential information. The defendants agreed to identify any such agreements, identify any documents that are being withheld on such grounds, and describe the particular steps that the defendants are taking to be able to produce the documents. Please provide us with this information.

    Additionally, the bureau defendants indicated that they might have agreements with some customers that require them to not disclose the identity of a customer and the defendants refused to produce any documents regarding those customers. Please confirm that you are not withholding any responsive documents on this basis. If you are withholding documents on this basis, please describe the types of documents that you are withholding and the particular actions that you are taking to resolve the issue so the documents can be produced.

- Proper parties: Although Equifax Inc. objected that it is not a proper party to this suit, Equifax's counsel represented that neither Equifax Inc. nor Equifax Information Services LLC is withholding any responsive documents based on this objection.

- Sales to consumers: Equifax initially objected to producing documents related to its sales to consumers, claiming that it only sells FICO scores to consumers. Equifax's counsel explained during our meet-and-confer that Equifax would identify any particular document requests for which they were withholding responsive documents on this objection. Because Equifax's counsel did not identify a particular request for which information is being withheld, we are expecting a full production from Equifax.

- Inadvertent disclosure: Trans Union and VantageScore initially made general objections to producing documents without an agreement that inadvertent disclosure of documents would not constitute a waiver of any privilege. All parties agreed, however, that the provision of the draft protective order that covers this is in place and they are not withholding documents based on this objection.

- Confidential information: Defendants initially objected to producing any confidential information until after the protective order is entered. The defendants confirmed that they are not withholding documents based on their objection because the pretrial scheduling order requires that all documents produced before the protective order is entered must be treated as if designated Attorneys' Eyes Only.

MP3 20217284.1

Defendants' Counsel
March 20, 2007
Page 4

- Community-of-interest privilege: Defendants objected to producing any agreements or other documents that establish the purported community-of-interest privilege invoked by certain defendants. While we believe this information is relevant and necessary for us to understand whether those defendants have a valid defense to waiver here, we will wait to review your privilege log before we determine if further action is needed. Please let us know when we can expect your privilege logs.

- Refusal to produce documents for the time period after which document requests were served: Some defendants (e.g., Equifax and VantageScore) initially stated that they would produce documents up to the time Fair Isaac's document request were served. We explained to you that defendants have a continuing obligation to produce documents even after they were served with Fair Isaac's document requests. We understand from our discussions with you that no defendant is now refusing to produce documents after the date for which document requests were served on them and all defendants will meet their continuing duty to produce under the Rules.

- Refusal to produce documents after the date of this suit: VantageScore initially objected to producing documents generated after the commencement of this lawsuit. Counsel for VantageScore, however, confirmed that VantageScore is not withholding any documents based on this objection and will meet its continuing duty discussed above.

- Refusal to produce documents from other entities: VantageScore initially objected to producing documents from other entities in response to Fair Isaac's requests. But it confirmed that it was not withholding any documents based on this objection and will produce all responsive information in its possession, custody, and control.

- Purpose of VantageScore: VantageScore initially objected to producing documents to the extent Fair Isaac's requests seek information relating to an "alleged sale of any credit score or credit scoring service." But VantageScore's counsel confirmed that VantageScore is not withholding any documents based on this objection.

- VatnageScore explained many times in its responses that it is unaware of any documents in its possession. Counsel for VantageScore confirmed that despite this statement, VantageScore will produce responsive documents in its possession, custody, and control.

<u>Defendants' Objections and Responses to Fair Isaac's Individual Document Requests</u>

Defendants made general objections to request nos. 1, 2, 3, 4, 5, 6, 15, 18, 20, 27, 30, 39, 44, 52, 54, 56, 59, 73, 104, 105, 106, 140, 144, 155, 157, 159, 160 and 162 based on privilege and algorithm-type issues but represented that they are not withholding any responsive information based on other objections. As we have explained to defendants many times, defendants' scoring algorithms and other algorithm type documents are relevant and likely to lead to the discovery of admissible information in this case. We understand that your clients take

MP3 20217284.1

Defendants' Counsel
March 20, 2007
Page 5

a different view. But we also understand from our discussions with you that the majority of documents responsive to these requests do not include algorithm-type documents, so we expect a full production in that respect. And while defendants made a specific algorithm objection to request nos. 62, 63, 113, 130, 132, 133, 134, 135, 136, 137, 138, 139, 141, 142, 143, 145, 146, 147, 148, 150, 151, 152 and 153, they all agreed to produce any responsive documents that do not call for algorithm-type documents.[1]

Subject to their objections on time period and type of scores, the bureau defendants agreed to produce all documents responsive to request numbers 14, 16, 17, 19, 21, 22, 23, 31, 48, 49, 50, 51, 57, 58, 69, 74, 75, 76, 77, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 96, 97, 98, 101, 102, 103, 109, 110, 114, 115, 116, 118, 119, 120, 121, 123, 124, 125, 129, and 154.[2] And for request numbers 24, 40, 46, 47, 164 and 166 the bureau defendants agreed to produce all responsive information subject to their time-period objection. Likewise, the bureau defendants agreed to produce all documents responsive to requests 53 and 55, subject to their type of score objection.

Because VantageScore did not assert a type-of-score objection, it is our understanding that VantageScore is not withholding any documents based on this type of objection. And we understand that VantageScore is not withholding documents based on a time-period objection.

Defendants' Other Objections and Responses to Specific Document Requests:

Request Nos. 7 and 8: Defendants agreed that, in response to document request Nos. 7 and 8, they would produce all documents that "reflect or refer to the concept of market share," subject to their time-period objection.

Request No. 9: Defendants objected to the phrase "all documents relating to," but they agreed to produce all responsive strategic plan or policy type documents, subject to their time-period objection.

Request Nos. 10 and 13: Defendants objected to these requests on vagueness grounds. As we explained, these requests seek information related to the barriers to enter the Aggregated Credit Data Market. Among other things, they seek information about the costs to develop credit data and costs to maintain database systems for the data. Fair Isaac alleged in its amended complaint that it is prohibitively expensive to enter this market. Specifically, paragraph 98 of the amended complaint alleges that Experian's FileOne database cost more than $100 million and

---

[1] For request nos. 130 and 150-153, the bureau defendants explained that some of their production may be delayed because of third-party confidentiality agreements discussed above. But the bureau defendants agreed to notify Fair Isaac in writing if any such issues were affecting production in regard to these requests or others. To date, defendants have not provided us with any information to explain that their production is being held up.

[2] Request nos. 77, 102 and 129 are similar to request nos. 130 and 150-153 for the reasons explained in footnote 1. But once again, the bureau defendants have not provided us with any information to explain that their production is being held up.

MP3 20217284.1

Defendants' Counsel
March 20, 2007
Page 6

took more than four years to develop, despite Experian already having much of the underlying data. Information related to these types of costs is an example of the type of information these requests are seeking. Fair Isaac believes these requests are specific and defendants are able to respond to them as written. Please tell us if you are withholding documents on the basis of any specific objection to these requests.

Request No. 11: Defendants objected that the use of the phrase "all documents relating to" but they agreed to produce all documents "referring to competition in the Aggregated Credit Data Market and any barriers to enter that market," subject to their time-period objection.

Request No. 12: Defendants objected to the phrase "all documents relating to," but they agreed to produce all documents that "refer to attempts by Innovis Data Solutions Inc. or CBC Innovis (or others) to sell consumer credit information for purposes of generic credit risk evaluation," subject to their time-period objections.

Request No 25: Defendants objected to the phrase "all documents relating to," but they agreed to produce all documents "referring to or discussing the ability to use non-traditional consumer data in connection with credit scores or credit scoring models." Defendants also asked Fair Isaac to provide examples of what was meant by "non-traditional" data. Some examples of non-traditional consumer data are application data, payment history from rental activity, utility and phone-bill payments, membership payment obligations, retail purchases, and checking and debit account activity. Without waiving its right to seek further information in the future, Fair Isaac will agree to your limitation to "all documents referring to or discussing the ability to use non-traditional consumer data in connection with credit scores or credit scoring models." With these clarifications, please tell us if you are withholding any information responsive to this request.

Request Nos. 26, 28 and 29: These requests seek documents sufficient to show the amounts you charged or offered to charge others for Fair Isaac scores and bureau scores, as well as documents relating to the amount you charged or offered to charge to sell or process any credit score. Defendants only agreed to produce documents "sufficient to show the amounts charged to lenders, resellers and consumers."

As we explained during our meet-and-confer, documents responsive to these requests would show not only the prices charged but also the prices for which defendants offered to sell scores and explanations or reasons for why such prices were offered or charged. Without waiving its rights to seek further information in the future, Fair Isaac is willing to limit the production as follows: 1) with respect to Fair Isaac scores, documents sufficient to show any offer made and any amount charged for the scores; and 2) with respect to bureau scores and VantageScore scores, all offers made to sell the scores but which were not accepted and all prices actually charged for the scores. Please tell us if you agree to this proposal.

MP3 20217284.1

Defendants' Counsel
March 20, 2007
Page 7

Request No. 32: Defendants agreed to produce only marketing and advertising materials, subject to their time-period and type-of-score objections. You asked us to give you some examples of documents that might be responsive to this request. Some examples are marketing and advertising materials (such as marketing materials given to resellers and lenders), copies of web pages where scores are sold, materials given to sales force people and internal strategic planning documents regarding the marketing and advertising of Fair Isaac scores. With this clarification, please confirm that you are producing all documents responsive to this request.

Request No. 33: In response to defendants' objection to the phrase "documents relating to," Fair Isaac agreed to remove these words from the request so that the request reads: "All communications with lenders or consumers about the price of Fair Isaac's scores in relation to a bundle of products, information, or services to the customer." Defendants agreed to produce all documents in response to this request subject to their time-period and type-of-score objections.

Request Nos. 34-37: All of these requests relate to 3-in-1 credit reports. Request no. 34 relates to the pricing of them; request no. 35 relates to any connection the reports have to Fair Isaac; request no. 36 relates to benefits of the reports; and request no. 37 relates to any bureau defendant's decision to not allow Fair Isaac to sell 3-in-1 reports.

All bureau defendants objected to producing documents in response to request nos. 34, 35 and 36 on relevance grounds, but agreed to produce all documents responsive to request no. 37. In paragraph 112 of the amended complaint, Fair Isaac alleged that the bureaus charge Fair Isaac a significantly higher price for use of their Aggregated Credit Data than they charge each other or other third parties for use of this data. Fair Isaac also alleged that at least one of the bureaus has flatly denied Fair Isaac access to its credit data to the extent Fair Isaac wants to use the data to sell 3-in-1 reports.

During our meet-and-confer you suggested that you were unfamiliar with 3-in-1 reports and asked whether Fair Isaac is seeking information about "tri-merged" reports. We see no distinction between tri-merged reports or 3-in-1 reports. Fair Isaac's requests seek information about any reports (regardless of whether the defendants call them "3-in-1" or "tri-merged") where the bureaus share their credit data or are allowed to sell credit data from other bureaus in one report. And your clients know what 3-in-1 reports are because all bureau defendants currently offer 3-in-1 credit reports to consumers. *See, e.g.,* privacymatters.com, freecreditreport.com, www.econsumer.equifax.com. With this clarification, please confirm that you are producing all documents responsive to request nos. 34, 35 and 36.

Request No. 38: This request asks for all documents relating to your actual or potential price increases to any lender or consumer for Fair Isaac scores. The bureau defendants agreed to produce all documents showing the actual prices charged to all lenders and consumers as well as internal documents regarding pricing plans or strategies, subject to their time-period and type-of-score objections. We request that you also produce all responsive information about the potential prices you may charge for Fair Isaac's scores. Please tell us if you will do so.

MP3 20217284.1

Defendants' Counsel
March 20, 2007
Page 8

      Request Nos. 41 and 42: These requests ask for information about the amounts you charge for credit reports and access to a bureau's credit data. The bureau defendants objected to these requests as being potentially too burdensome. All bureau defendants agreed to see if their clients can generate a table that provides the requested information, subject to their time period objection. We explained that there should be two tables—one in response to no. 41 and one in response to no. 42, or one table should indicate which lenders or organizations supply data to a bureau and which do not. Please tell us if you will provide us with the requested information. If you can give us this information, we will consider your proposed limitation after reviewing the information you provide.

      Request No. 43: In response to defendants' objection to the phrase "documents relating to," Fair Isaac agreed to remove these words from the request so it reads: "All communications among any of the Bureaus that refer or relate to VantageScore or that refer or relate to Fair Isaac." Defendants agreed to produce all responsive information to this request, subject to their time-period objection.

      Request No. 45: This request asks for all documents relating to your internal communications or communications among any defendants regarding anticipated litigation with Fair Isaac. Defendants agreed to respond to this request if Fair Isaac restated it to read: "All documents relating to your internal communications or communications among any Defendants regarding anticipated litigation with Fair Isaac regarding a joint venture related to generic credit risk scores." Defendants' proposed limitation is too restrictive. Fair Isaac's claims are broader than the creation of a "joint venture related to generic credit risk scores." For instance, Fair Isaac's antitrust claims cover the bureau defendants' anticompetitive behavior related to the pricing of scores and credit reports; Fair Isaac's trademark claims cover a range of defendants' products and services that infringe on Fair Isaac's marks; and Fair Isaac's false-advertising claims cover statements made about the creation, quality, and features of VantageScore's models. With the exception of this current litigation, Fair Isaac would be willing to agree, however, that defendants could exclude from production, documents relating to actual litigation or arbitration that has ensued, for the time period after such litigation or arbitration began. Please let us know if this limitation is acceptable and if defendants will produce responsive documents.

      Request No. 60: In response to defendants' objection to the phrase "documents relating to," Fair Isaac agreed to modify the request to read: "All communications with Lenders or consumers regarding updated or more current versions of Fair Isaac's scores or models." Defendants agreed to produce all documents responsive to this request, subject to their time-period and type-of-score objections.

      Request No. 61: Defendants objected to this requests on the basis that permission to disclose responsive information may be needed from a third party, but no defendant could identify any agreement requiring such permission. Defendants agreed to check with their clients

MP3 20217284.1

Defendants' Counsel
March 20, 2007
Page 9

and tell us whether this request truly implicates confidentiality concerns. Please tell us if you are withholding documents responsive to this request based on your objection, and if so, identify the agreements, their terms and conditions, and the steps you are taking to be able to produce the requested information.

Request No. 64: This request seeks all documents relating to complaints, comments, or concerns from lenders or consumers or others regarding the accuracy of any defendant's consumer credit data. Defendants objected to the breadth of this request. Defendants claimed that comments from consumers are irrelevant to the extent this request gets at the issue of whether there was a demand in the marketplace for the creation of VantageScore—because they claim there was no demand from consumers, only lenders. Defendants said they would potentially be willing to stipulate to the fact that in advertising where defendants have referred to demand for VantageScore, they were referring to demand from lenders, and there was no demand from consumers. But because your potential stipulation doesn't resolve Fair Isaac's need for this information, we can't accept your proposal. Instead, Fair Isaac proposes that defendants produce summaries sufficient to show the number of complaints and the types of complaints from lenders, consumers or others made about the accuracy of defendants' consumer credit data. Please let us know if you agree to this proposed limitation.

Request No. 65: Defendants objected to Fair Isaac's use of "pre-score" rather than "pre-screen" as an industry term. Fair Isaac agreed to restate the request to read: "All documents relating to VantageScore's scores for any service that pre-screens consumers (e.g., pre-screening consumers for credit cards)." Fair Isaac also agreed that this request was not seeking routine transactional documents. You also asked us to identify some examples of documents sought by this request. Some examples are documents discussing or showing that VantageScore scores will be used for pre-screening type services, the prices offered/charged for those scores, and the scoring ranges that will be used for those scores. With these modifications and clarifications, please confirm that you are not withholding documents responsive to this request.

Request No. 66: This request asks for all documents relating to consumer credit data differences between the credit bureaus. You asked us to more specifically state the request or provide examples of what types of documents Fair Isaac is seeking with this request. Defendants have stated that any differences in a consumer's VantageScore score is only attributable to the data differences between the credit bureaus. This request asks for, among other things, the documents that show those differences. Some examples may include statements one bureau has made about another bureau's data, documents that show one bureau has better data than the other bureaus, documents showing a bureau's promotion of the advantages of its data, documents that discuss or refer to the benefits or disadvantages of "leveled" scores, documents discussing or referring to the advantages of using a certain type of credit data that the bureaus collect in assessing an individual's credit risk, any documents that ask Fair Isaac or someone else to account for all the data the bureaus collect in creating a credit scoring algorithm and any document promoting the benefits of such a score, documents showing the process or procedures the bureaus follow in implementing new or different data sets into the VantageScore model, and

MP3 20217284.1

Defendants' Counsel
March 20, 2007
Page 10

documents showing the obligations the bureaus have to determine or disclose data sets to the other bureaus or VantageScore.

With this clarification, please tell us if you are withholding any information responsive to this request.

Request No. 67: This request seeks all documents relating to the bureaus' plans, abilities, desires, agreements, or considerations to compete or to not compete with each other with respect to consumer credit data or consumer credit reports. Defendants objected to this request as overly broad. But defendants agreed to produce, at a minimum, documents concerning strategies or plans for competing, subject to the bureau defendants' time-period and type-of-score objections. Fair Isaac does not believe this request is overly broad as stated. In addition to the types of information that the defendants already agreed to produce, responsive information may show, for example, whether the bureaus plan to not compete with each other with respect to credit data and their in house consumer credit scores. It also might show, for example, any agreements the bureaus have in place to do so, or to not do so. And responsive information would also include discussions the bureaus and VantageScore had about the bureaus' ability to do so. As well as documents showing or discussing how the defendants will compete or not compete with each other with respect to VantageScore scores. Please tell us if you are withholding any information responsive to this request based on your objection.

Request No. 68: This request asks for all documents reflecting communications between a bureau or VantageScore and a lender regarding Fair Isaac and credit scores. Defendants objected to this request as overly broad. But because Fair Isaac agreed that this request is not seeking routine transactional documents, we understand that, based on this clarification, defendants are producing all documents responsive to this request, subject to their time period and type of score objections.

Request No. 70: You agreed to see if your clients have any patents or patent applications concerning credit scores, credit scoring models or other scoring products, and tell us if they would produce these documents. Please tell us if you are withholding any documents responsive to this request.

Request No. 71: Defendants objected to the breadth of this request. We clarified that this request seeks studies, searches, investigations, or legal opinions concerning a numerical range or a credit score number within a certain range for credit scores and credit scoring models. We explained that some examples of responsive documents might include studies about the ability to protect a number range as a trademark or studies regarding using a particular score (e.g., "678" or "720") in advertising. Another example would be any assessments a defendant made to respond to a request by a lender to use a particular number range or studies or analyses about lenders' preferences for defendants to use particular scoring ranges.

Defendants' Counsel
March 20, 2007
Page 11

     Counsel for Experian and Equifax said that these clarifications were helpful and they would produce all documents responsive to this request, subject to their time-period objection. Counsel for TransUnion and VantageScore said that they would consider whether Fair Isaac's clarifications satisfied their over-breadth concerns, and would tell us whether they will produce documents in response to this request. With respect to TransUnion and VantageScore, please tell us if you are withholding any documents responsive to this request.

     Request No. 72: Experian and Equifax agreed to produce responsive documents, subject to their time-period and type-of-score objections. TransUnion represented that even with its time-period and type-of-score objections, it still might stand on a vagueness or over breadth objection. With respect to TransUnion, please tell us if you are withholding any documents responsive to this request, subject to your time period and type of score objections.

     Request No. 78: We explained to you that this request is not seeking defendants' algorithms. It is seeking, among other things, memoranda, communications, or analyses about making a bureau's model or VantageScore's model perform better. Responsive information also may include modifications to the actual scoring ranges. We understand from our discussions that defendants are not withholding any information responsive to this request, subject to their time-period and type-of-score objections.

     Request Nos. 94 and 95: Defendants agreed to produce all responsive documents subject to their time-period and type-of-score objections. In addition, counsel for defendants indicated that they thought the term "vendor reports" was unclear and vague but would check with their clients regarding whether this was a term understood in the industry. Vendor reports refers to publications like trade publications. Please tell us if you are withholding any documents responsive to these requests.

     Request No. 99: In response to defendants' objection to the phrase "documents relating to," Fair Isaac confirmed that this request is only seeking substantive type documents. With this limitation, defendants agreed to produce all responsive documents, subject to their time period and type of score objections.

     Request No. 100: In response to defendants' objection to the phrase "documents that relate to," Fair Isaac agreed that this request could be read as being limited to documents containing substantive analysis or decisions/reasoning regarding the advertising and promotional channels through which products or services under a bureau mark or VantageScore's mark are marketed, advertised, or promoted. Responsive information also might include, among other things, a listing of the publications or other media where defendants advertise. With this limitation, defendants agreed to produce all documents responsive to this request, subject to their time-period and type-of-score objections.

     Request No. 107: This request seeks documents sufficient to identify all current and former customers for bureau scores or models and VantageScore scores and models, including

Defendants' Counsel
March 20, 2007
Page 12

but not limited to, customer mailing lists and any roster of internet customers. As we explained to you during our meet and confers, a lot of this information is probably stored electronically in databases and would be very easy for you to locate and produce. From our discussions with you, we understand that defendants are producing all information responsive to this request, subject to their time period and type of score objections.

Request No. 108: This request seeks documents sufficient to show the prices that you have charged for bureau scores or models and VantageScore scores and models. This includes the prices charged for licenses for these scores or models. Defendants agreed to produce charts sufficient to show the prices charged for these scores and models, subject to their time period and type of score objections—we understand that these charts will include the prices for licenses as well.

Request Nos. 111 and 112: Defendants agreed to produce documents sufficient to show revenue and profitability on a monthly, quarterly, and annual basis, subject to their time-period and type-of-score objections. They will also produce documents sufficient to show sales volume, operating profit, gross profit, and net profit, to the extent they exist.

Request No. 113: In response to defendants' objection to the phrase "all documents relating to," Fair Isaac agreed that this request calls for only substantive type documents. With this limitation, defendants agreed to produce all responsive documents, subject to their time-period and type-of-score objections.

Request No. 117: In response to defendants' vagueness objections, Fair Isaac agreed to restate the request to read: "All documents that relate to any instances of actual or possible confusion or mistake regarding a possible relationship between the credit scoring products or services of Fair Isaac and the products or services of any Defendant." With this change, defendants agreed to produce all documents responsive to this request, subject to their time-period and type-of-score objections.

Request No. 122: We explained to you that some documents responsive to this request might include, among other things, representative copies of all advertisements or other promotional material, along with documents sufficient to show the time and places of use of those materials. With that understanding, defendants agreed to produce the documents responsive to this request but will notify Fair Isaac if they think locating responsive documents poses an undue burden or if they are limiting their production in any other way.

Request No. 126: Defendants objected to producing internal communications in response to this request and said they would consider the request further if Fair Isaac identified some topics that the responsive documents might cover. Some topics might include, among other things, VantageScore's business objectives, profitability, scoring ranges, advantages or disadvantages of its model, or even customer confusion. With respect to documents that relate to internal communications, Fair Isaac can agree for now to limit your search to internal

MP3 20217284.1

Defendants' Counsel
March 20, 2007
Page 13

communications regarding concerns from consumers, lenders, media or others. With these clarifications, please tell us if you are withholding any documents responsive to this request.

Request No. 127: VantageScore, Equifax, and Experian agreed to produce all documents responsive to this request. TransUnion objected to this request, however, on the basis that there might be an undue burden associated with searching through communications from consumers who have bought a VantageScore score from TransUnion. TransUnion was going to reconsider its position on this matter. While we believe this request is clear on its face, we wanted to clarify—based on TransUnion's response—that it does not just call for communications from consumers, but all documents referring to or discussing how consumers' VantageScore scores can vary across bureaus. With respect to TransUnion, please tell us if you are withholding any documents responsive to this request.

Request No. 128: This request asks for all documents that relate to fair-lending or disparate-impact studies concerning VantageScore's scores or models. Defendants objected to this request on relevancy grounds—although they asked Fair Isaac to produce similar documents. At a minimum, these studies are relevant to the claims defendants made that VantageScore was created to take into account "thin file" consumers who, according to defendants, had not been adequately captured with other credit models. Please tell us if you are withholding any documents responsive to this request.

Request No. 131: Defendants agreed to produce documents sufficient to identify persons "with principal responsibility for" creating, designing, implementing, testing, using, or licensing VantageScore's scores and models. We understand this to mean that defendants are producing the requested information for people who had more than a ministerial role in these tasks.

Request No. 132: Equifax agreed to produce all documents responsive to this request, subject to its time-period and type-of-score objections. And VantageScore agreed to produce all responsive information. Counsel for TransUnion and Experian, on the other hand, said they would discuss this request with their clients and tell us if they are standing on their relevancy objections. As we explained, the identify of the people who saw Fair Isaac's specifications relates to Fair Isaac's false advertising and antitrust claims. With respect to TransUnion and Experian, please tell us if you are withholding any information responsive to this request.

Request No. 149: In response to defendants' objection, Fair Isaac agreed to change the language from "all documents that tend to refute or that serve as support for or relate to ..." to "all documents that tend to refute, support, or address ...." Defendants agreed to produce all documents responsive to this request as restated.

Request No. 156: Equifax and Experian agreed to produce all documents responsive to this request, but TransUnion and VantageScore refused to produce documents in response to this request other than documents produced in response to request no. 155. TransUnion and VantageScore suggested that they are reading request no. 155 broadly enough to cover request

Defendants' Counsel
March 20, 2007
Page 14

156 in that—as requested in no. 156—every document that identifies a person whom a defendant believes is a leading expert in the areas of credit scoring and analytics would either—as requested in 155—tend to refute or serve as support for the assertion that VantageScore's score or model leverages the collective expertise of the leading experts. If TransUnion and VantageScore are reading request no. 155 that broadly, then their objection is just a matter of schematics and we have no reason to dispute it—since you will be producing the same documents you would produce under no. 156. Please tell us if you are not reading request no. 155 as broadly as we have explained.

Request No. 158: Defendants refused to produce any documents regarding their joint defense agreement. If you are withholding any information responsive to Fair Isaac's request on the basis of a joint defense agreement, then we need to review your agreement to know if you have a valid basis to withhold documents. You agreed to let us know if you were withholding documents on this basis. Please do so.

Request Nos. 161 and 165: Defendants will produce all documents responsive to these requests as required under the scheduling order and the rules of civil procedure.

Request No. 163: Fair Isaac explained that this request is seeking policies or guidelines that defendants must follow before releasing new products or services into the marketplace. You agreed to tell us if you would produce such documents. Please tell us if you are withholding any documents responsive to this request.

Sincerely,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Michael A. Collyard

MAC/ld

cc:   Mark A. Jacobson, Esq.
      Jeffrey J. Keyes, Esq.
      Lewis A. Remele, Jr., Esq.

MP3 20217284.1