# EXHIBIT 3

# NEAL ▪ GERBER ▪ EISENBERG

Dao L. Boyle
Attorney at Law

Tel 312.269.5390
Fax 312.269.1747
dboyle@ngelaw.com

April 3, 2007

**VIA E-MAIL & U.S. MAIL**

Michael A. Collyard, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402

> Re:   Fair Isaac Corp. v. Equifax Inc., et al.
>       06 CV 4112 (ADM/JSM)

Dear Mike:

We appreciate your efforts to find agreements between the parties on Plaintiff's document requests. This letter is written on behalf of all the defendants in that same spirit of compromise and should not be interpreted as a waiver of any of our objections. While we disagree with any suggestion that Defendants' objections to your requests were the cause of the "marathon" meet-and-confer, we have attempted to reduce the burden of reassessing each of your 166 broad requests by narrowing or simplifying some objections and otherwise making them more consistent among the defendants. This may also eliminate the need for maintaining the chart attached to your letter.

As an initial matter, we await your response on the issue of the time period relevant to the parties' outstanding discovery requests. As reflected in the March 22 letter from counsel for Equifax, Defendants' have proposed a reasonable compromise that would provide for discovery reaching back more than five years before the filing of Plaintiff's original complaint – dating back to before Plaintiff's first commercial use of its purportedly trademarked scoring ranges and earlier than Plaintiff's antitrust claims statutorily would allow. We hope that the parties can agree on parameters for discovery on this basis. In light of the need to resolve this preliminary issue as soon as possible, we must ask that you provide Defendants with your response by the end of this week. If we do not hear back from you by that time, we will be forced to present the issue to the Court.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 2

With respect to the remaining issues raised in your letter, we have attempted to respond to each of your points by quoting your letter below.

### Some Points Regarding Defendants' General Objections

**1. Plaintiff wrote:** Sales force files: The bureau defendants object to searching the files of their sales forces in response to Fair Isaac's document requests. But it is very likely that responsive information will exist in the sales-force files of the bureau defendants, and the defendants have never denied that. Please confirm that your clients will conduct a search of sales-force files as required by the rules and produce any information responsive to Fair Isaac's requests. Recently, the defendants proposed to talk about this issue further but then said that they wanted to wait and review Fair Isaac's proposal on time period and types of scores. Although we are willing to talk with you about these issues further, you cannot continue to put off your search.

**Defendants' Response:** Defendants have never considered foregoing or postponing the search of our sales forces. We do, however, seek to avoid the claim that our search was inadequate because we did not search the documents of every single salesperson. As in every case involving such broad document requests, there is always the possibility that a responsive document will turn up in any given employee's files. As you noted in our first meet and confer session, the law does not require a party to search the files of every employee who might possibly have relevant documents. Because of Plaintiff's broad requests in this case and the fact that each bureau defendant has hundreds of sales people, the burden of such a search would clearly not be justified. We will do a reasonable search of the files of likely custodians for relevant documents and will produce responsive, non-privileged documents identified as a result of that search.

**2. Plaintiff wrote:** Lender definition: The bureau defendants objected to Fair Isaac's definition of the word "lender" in its document requests because the definition includes resellers. The bureau defendants also represented that they might not produce documents regarding resellers in response to certain requests. They claimed that this case is only about lenders and not about resellers. Fair Isaac maintains that this case is, in fact, about resellers as much as it is about traditional lenders. In fact, Fair Isaac has made specific allegations in its complaint about resellers. Despite the defendants' objections, no defendant identified any specific document request where it refused to produce

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 3

> information based on Fair Isaac's definition of lender so we expect that the defendants
> will be producing documents based on Fair Isaac's definition.

**Defendants' Response:**  All of Plaintiffs' requests are overly broad to the extent that they seek documents related to resellers.  As we discussed during our meet and confer sessions, that is due in part to the overbroad and confusing way in which Plaintiff has defined the term "lender," which includes not only financial institutions but also all parties to this litigation and other entities.  Many of Plaintiff's Requests refer to the term "lender," but it appears from the language of all the requests that when reseller information is sought, the word "resellers" is also used in the request.  Based on our reading of the requests, Plaintiff seeks reseller information in requests nos. 26, 28, and 108.  With respect to resellers, the bureau defendants will agree to search for pricing tables for their sales to resellers, with the hope that such information will satisfy Plaintiff's request for documents in this area.  VantageScore does not sell any scores but will agree to search for such documentation and provide any documentation found.  *See also* Point No. 25 below.

> **3.  Plaintiff wrote:**  Objections to other definitions: On paper, the defendants objected to
> many of Fair Isaac's other definitions in its document requests. But during our meet-and-
> confer, as we went through the defendants' responses to each of Fair Isaac's requests and
> asked the defendants which objections they were not willing to put aside for the purposes
> of production, the defendants never once invoked those many general objections. Thus
> we expect the defendants to make a full production based on Fair Isaac's definitions.

**Defendants' Response:**  As you know, Defendants have objected to some of Plaintiff's requests on the basis that they are overly broad, vague, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  As discussed during the meet and confer conferences between the parties, Defendants would not have made these objections to some of the requests if Plaintiff's definitions had been more narrowly crafted.

> **4.  Plaintiff wrote:**  Relevant geographic scope: Defendants objected to the geographic
> scope of Fair Isaac's requests. Fair Isaac agrees, for the time being at least (and to speed

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 4

up the defendants' production), to generally limit its requests to the United States and to
Canada (Canada is limited to information related to Trans Union's efforts to enter the
credit-data market in Canada in the 1990s). Fair Isaac reserves the right to seek
information beyond these limitations to the extent it believes that it needs such
information in the future.

On this subject, one further note about Trans Union: Despite Fair Isaac's allegations in
the amended complaint about Trans Union's activities in Canada, Trans Union
represented to us that it is not willing to produce information involving its actions in
Canada. We understand that Trans Union is reconsidering its position. Fair Isaac asks that
Trans Union tell us as soon as possible whether it will produce all information responsive
to Fair Isaac's requests about Trans Union's activities in Canada.

**Defendants' Response:**  Plaintiff's Amended Complaint specifically alleges that the relevant
geographic market is the United States (Amended Complaint ¶¶ 11(a),11(b)), and Defendants
object to producing documents relating to other geographic markets.  In an effort to eliminate
any further disputes over this issue, however, Defendants will agree to search for documents that
relate to the allegations contained in paragraph 123 of Plaintiff's Amended Complaint, so long as
it is understood that Defendants do not concede their relevance.

**5.  Plaintiff wrote:**  Third party agreements: The bureau defendants objected to
producing certain documents because they may have agreements with third parties that
require them to give notice to the third parties or take other steps before producing what
might be confidential information. The defendants agreed to identify any such
agreements, identify any documents that are being withheld on such grounds, and
describe the particular steps that the defendants are taking to be able to produce the
documents. Please provide us with this information.

Additionally, the bureau defendants indicated that they might have agreements with some
customers that require them to not disclose the identity of a customer and the defendants
refused to produce any documents regarding those customers. Please confirm that you are
not withholding any responsive documents on this basis. If you are withholding
documents on this basis, please describe the types of documents that you are withholding
and the particular actions that you are taking to resolve the issue so the documents can be
produced.

**Defendants' Response:**   The bureau defendants' identification of the relevant third-party
confidentiality agreements depends greatly upon the relevant time period and relevant scoring

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 5

services. The bureau defendants do have confidentiality agreements with the majority, if not all, of the customers that purchase certain scoring services. After agreement is reached on the relevant time period and the relevant scoring services, the bureau defendants will identify those relevant customer documents that are subject to the confidentiality protections and will determine what steps are necessary to comply with those obligations. The bureau defendants will advise you of their progress in this regard. VantageScore is currently unaware of any third-party agreements that would restrict the release of documents. If such agreements are found in relation to relevant documents in this matter, VantageScore will address this with Plaintiffs by letter at that time.

**6. Plaintiff wrote:** Proper parties: Although Equifax Inc. objected that it is not a proper party to this suit, Equifax's counsel represented that neither Equifax Inc. nor Equifax Information Services LLC is withholding any responsive documents based on this objection.

**Defendants' Response:** Correct.

**7. Plaintiff wrote:** Sales to consumers: Equifax initially objected to producing documents related to its sales to consumers, claiming that it only sells FICO scores to consumers. Equifax's counsel explained during our meet-and-confer that Equifax would identify any particular document requests for which they were withholding responsive documents on this objection. Because Equifax's counsel did not identify a particular request for which information is being withheld, we are expecting a full production from Equifax.

**Defendants' Response:** Equifax agrees to produce documents sufficient to show prices charged to consumers for FICO scores (e.g., No. 26), but the Requests that seek all communications with Equifax's thousands of consumer-customers are overly broad and unduly burdensome (e.g., No. 154).

**8. Plaintiff wrote:** Inadvertent disclosure: Trans Union and VantageScore initially made general objections to producing documents without an agreement that inadvertent

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 6

disclosure of documents would not constitute a waiver of any privilege. All parties agreed, however, that the provision of the draft protective order that covers this is in place and they are not withholding documents based on this objection.

**Defendants' Response:**  Correct.

**9. Plaintiff wrote:**  Confidential information: Defendants initially objected to producing any confidential information until after the protective order is entered. The defendants confirmed that they are not withholding documents based on their objection because the pretrial scheduling order requires that all documents produced before the protective order is entered must be treated as if designated Attorneys' Eyes Only.

**Defendants' Response:**  Correct.

**10. Plaintiff wrote:**  Community-of-interest privilege: Defendants objected to producing any agreements or other documents that establish the purported community-of-interest privilege invoked by certain defendants. While we believe this information is relevant and necessary for us to understand whether those defendants have a valid defense to waiver here, we will wait to review your privilege log before we determine if further action is needed. Please let us know when we can expect your privilege logs.

**Defendants' Response:**  Any Joint Defense Agreement(s) is/are irrelevant and protected by the attorney-client privilege, the work product doctrine, and the common interest doctrine. All of the parties have agreed to produce their privilege logs on a rolling basis over the course of their document productions.

**11. Plaintiff wrote:**  Refusal to produce documents for the time period after which document requests were served: Some defendants (e.g., Equifax and VantageScore) initially stated that they would produce documents up to the time Fair Isaac's document request were served. We explained to you that defendants have a continuing obligation to produce documents even after they were served with Fair Isaac's document requests. We understand from our discussions with you that no defendant is now refusing to produce documents after the date for which document requests were served on them and all defendants will meet their continuing duty to produce under the Rules.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 7

**Defendants' Response:** Defendants will comply with their obligations to supplement discovery under Rule 26(e) of the Federal Rules of Civil Procedure. It is impractical and overly burdensome, however, to supplement their production day-by-day or to return to certain custodians who may have new responsive documents that have no impact on Plaintiff's case. Defendants proposed January 12, 2007, as the preliminary end cutoff date for the parties' document productions and invite plaintiff to explore a potential agreement between the parties as to the scope and timing of supplemental document productions.

    **12. Plaintiff wrote:** Refusal to produce documents after the date of this suit: VantageScore initially objected to producing documents generated after the commencement of this lawsuit. Counsel for VantageScore, however, confirmed that VantageScore is not withholding any documents based on this objection and will meet its continuing duty discussed above.

**Defendants' Response:** Correct.

    **13. Plaintiff wrote:** Refusal to produce documents from other entities: VantageScore initially objected to producing documents from other entities in response to Fair Isaac's requests. But it confirmed that it was not withholding any documents based on this objection and will produce all responsive information in its possession, custody, and control.

**Defendants' Response:** Correct.

    **14. Plaintiff wrote:** Purpose of VantageScore: VantageScore initially objected to producing documents to the extent Fair Isaac's requests seek information relating to an "alleged sale of any credit score or credit scoring service." But VantageScore's counsel confirmed that VantageScore is not withholding any documents based on this objection.

**Defendants' Response:** Correct.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 8

**15. Plaintiff wrote:** VantageScore explained many times in its responses that it is unaware of any documents in its possession. Counsel for VantageScore confirmed that despite this statement, VantageScore will produce responsive documents in its possession, custody, and control.

**Defendants' Response:** Correct.

**Defendants' Objections and Responses to Fair Isaac's Individual Document Requests**

**16. Plaintiff wrote:** Defendants made general objections to request nos. 1, 2, 3, 4, 5, 6, 15, 18, 20, 27, 30, 39, 44, 52, 54, 56, 59, 73, 104, 105, 106, 140, 144, 155, 157, 159, 160 and 162 based on privilege and algorithm-type issues but represented that they are not withholding any responsive information based on other objections. As we have explained to defendants many times, defendants' scoring algorithms and other algorithm type documents are relevant and likely to lead to the discovery of admissible information in this case. We understand that your clients take a different view. But we also understand from our discussions with you that the majority of documents responsive to these requests do not include algorithm-type documents, so we expect a full production in that respect. And while defendants made a specific algorithm objection to request nos. 62, 63, 113, 130, 132, 133, 134, 135, 136, 137, 138, 139, 141, 142, 143, 145, 146, 147, 148, 150, 151, 152 and 153, they all agreed to produce any responsive documents that do not call for algorithm-type documents.

**Defendants' Response:** As specifically agreed at our meet and confer session, Defendants' objections concerning privileged and the algorithm-related documents remain standing objections to ALL of Plaintiff's document requests. Defendants' position on the algorithm-related documents was articulated in our March 8, 2007 letter from Jim Gardner to Randy Tietjen. Defendants continue to await your response on this issue.

Your statements in the above paragraph are otherwise correct with the following exceptions:

- In response to Request No. 159, Defendants agreed to determine whether there were any indemnity agreements made in connection with the VantageScore project. Any indemnity provisions discovered by Defendants that relate to VantageScore will be produced.

- Defendants also objected to Request No. 113 based on time period and type of score.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 9

- Defendants also objected to Request No. 132 on the basis that it was not reasonably calculated to lead to the discovery of admissible evidence. Defendants are willing to search for documents sufficient to show the requested information notwithstanding the objection. *See* Point No. 57 below. VantageScore is not aware of anyone who saw, received or reviewed specifications for Fair Isaac's scores or models, but will provide documents if found.

- (As indicated in Plaintiff's footnote 1, Defendants objected to Request Nos. 130 and 150-153 on the basis of third-party confidentiality agreements, which are discussed above.)

**17. Plaintiff wrote:** Subject to their objections on time period and type of scores, the bureau defendants agreed to produce all documents responsive to request numbers 14, 16, 17, 19, 21, 22, 23, 31, 48, 49, 50, 51, 57, 58, 69, 74, 75, 76, 77, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 96, 97, 98, 101, 102, 103, 109, 110, 114, 115, 116, 118, 119, 120, 121, 123, 124, 125, 129, and 154. And for request numbers 24, 40, 46, 47, 164 and 166 the bureau defendants agreed to produce all responsive information subject to their time-period objection. Likewise, the bureau defendants agreed to produce all documents responsive to requests 53 and 55, subject to their type of score objection.

**Defendants' Response:** The statements in the above paragraph are correct with the following exceptions:

- With regard to Request No. 21, Defendants objected to this request as overly broad because of the use of the term "all documents relating to," and agreed to produce responsive plans and strategies.

- With regard to Request No. 69, Defendants agreed to check on what potentially responsive documents are available to help them determine the burdens associated with identifying such documents, which we are in the process of doing.

- With regard to Request No. 74, Defendants objected to the term "other scoring product" as vague.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 10

- With regard to Request No. 79, Defendants objected to this request as overly broad because of the use of the term "all documents relating to," and agreed to produce all documents reflecting the requested information.

- With regard to Request No. 80, Defendants objected to this request as overly broad because of the use of the term "all documents relating to," and agreed to produce studies, analyses, or reports regarding feedback from lenders or consumers regarding Bureau or VantageScore scoring services.

- With regard to Request No. 81, Defendants objected to this request as overly broad because of the use of the term "all documents relating to." Plaintiff agreed that it was not seeking documents related to the adoption or sale of the referenced scoring services. Accordingly, Defendants agreed to produce marketing materials related to the identified scoring services.

- With regard to Request Nos. 82 and 101, Defendants objected to those requests as overly broad. With respect to these requests, among others in Plaintiff's first set of document requests, Plaintiff agreed to limit the requests to substantive materials, at least for the time being, and Defendants are in the process of looking for documents based on this reformulation of the requests.

- With regard to Request No. 89, Defendants objected to this request as overly broad because of the use of the term "all documents relating to," and agreed to produce projections and plans regarding market size and business potential.

- With regard to Request No. 92, Defendants objected to this request as overly broad because of the use of the term "all documents relating to," and agreed to produce the requested press releases, articles, news stories or news clippings.

- With regard to Request No. 93 and 100, Defendants objected to this request as overly broad because of the use of the term "all documents relating to," and agreed to produce substantive materials.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 11

- (As indicated in Plaintiff's footnote 2, Defendants objected to Request Nos. 77, 102 and 129 on the basis of third-party confidentiality agreements, which are discussed above.)

**18. Plaintiff wrote:** Because VantageScore did not assert a type-of-score objection, it is our understanding that VantageScore is not withholding any documents based on this type of objection. And we understand that VantageScore is not withholding documents based on a time-period objection.

**Defendants' Response:** Correct.

### Defendants' Other Objections and Responses to Specific Document Requests

**19. Plaintiff wrote:** Request Nos. 7 and 8: Defendants agreed that, in response to document request Nos. 7 and 8, they would produce all documents that "reflect or refer to the concept of market share," subject to their time-period objection.

**Defendants' Response:** Correct.

**20. Plaintiff wrote:** Request No. 9: Defendants objected to the phrase "all documents relating to," but they agreed to produce all responsive strategic plan or policy type documents, subject to their time-period objection.

**Defendants' Response:** Correct.

**21. Plaintiff wrote:** Request Nos. 10 and 13: Defendants objected to these requests on vagueness grounds. As we explained, these requests seek information related to the barriers to enter the Aggregated Credit Data Market. Among other things, they seek information about the costs to develop credit data and costs to maintain database systems for the data. Fair Isaac alleged in its amended complaint that it is prohibitively expensive to enter this market. Specifically, paragraph 98 of the amended complaint alleges that Experian's FileOne database cost more than $100 million and took more than four years to develop, despite Experian already having much of the underlying data. Information related to these types of costs is an example of the type of information these requests are seeking. Fair Isaac believes these requests are specific and defendants are able to respond

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 12

to them as written. Please tell us if you are withholding documents on the basis of any
specific objection to these requests.

**Defendants' Response:**  Defendants also objected to Requests No. 10 and 13 based on time
period and type of score. Defendants further objected to Requests Nos. 10 and 13 on the basis
that they are vague and Defendants do not believe Plaintiff has cured that problem.  Defendants
request that Plaintiff review the financial statements produced by Trans Union and determine
whether these kind of documents would satisfy Plaintiff.

> **22.  Plaintiff wrote:**  Request No. 11: Defendants objected that the use of the phrase "all
> documents relating to" but they agreed to produce all documents "referring to
> competition in the Aggregated Credit Data Market and any barriers to enter that market,"
> subject to their time-period objection.

**Defendants' Response:**  Correct.

> **23.  Plaintiff wrote:**  Request No. 12: Defendants objected to the phrase "all documents
> relating to," but they agreed to produce all documents that "refer to attempts by Innovis
> Data Solutions Inc. or CBC Innovis (or others) to sell consumer credit information for
> purposes of generic credit risk evaluation," subject to their time-period objections.

**Defendants' Response:**  Correct.

> **24.  Plaintiff wrote:**  Request No 25: Defendants objected to the phrase "all documents
> relating to," but they agreed to produce all documents "referring to or discussing the
> ability to use non-traditional consumer data in connection with credit scores or credit
> scoring models." Defendants also asked Fair Isaac to provide examples of what was
> meant by "non-traditional" data. Some examples of non-traditional consumer data are
> application data, payment history from rental activity, utility and phone-bill payments,
> membership payment obligations, retail purchases, and checking and debit account
> activity. Without waiving its right to seek further information in the future, Fair Isaac will
> agree to your limitation to "all documents referring to or discussing the ability to use non-
> traditional consumer data in connection with credit scores or credit scoring models."
> With these clarifications, please tell us if you are withholding any information responsive
> to this request.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 13

**Defendants' Response:** Subject to our standing objection based on the type of scoring services at issue, Defendants will agree to search for documents responsive to Request No. 25 with the limitations described above.

**25. Plaintiff wrote:** Request Nos. 26, 28 and 29: These requests seek documents sufficient to show the amounts you charged or offered to charge others for Fair Isaac scores and bureau scores, as well as documents relating to the amount you charged or offered to charge to sell or process any credit score. Defendants only agreed to produce documents "sufficient to show the amounts charged to lenders, resellers and consumers."

As we explained during our meet-and-confer, documents responsive to these requests would show not only the prices charged but also the prices for which defendants offered to sell scores and explanations or reasons for why such prices were offered or charged. Without waiving its rights to seek further information in the future, Fair Isaac is willing to limit the production as follows: 1) with respect to Fair Isaac scores, documents sufficient to show any offer made and any amount charged for the scores; and 2) with respect to bureau scores and VantageScore scores, all offers made to sell the scores but which were not accepted and all prices actually charged for the scores. Please tell us if you agree to this proposal.

**Defendants' Response:** Defendants agree with this paragraph with the following exceptions:

- Defendants continue to object to Requests Nos. 26, 28, and 29 on the grounds of time period and type of score. Additionally, as stated above (¶2), Requests Nos. 26 and 28 seek documents related to resellers that are objectionable because they are overly broad.

- Defendants will agree to search for any pricing tables they have concerning the amounts they offer to charge others for relevant scoring services, in addition to transactional data sufficient to show the amount charged to lenders and consumers for those services.

- VantageScore does not believe that it has information regarding pricing, but will produce any such documents it finds.

**26. Plaintiff wrote:** Request No. 32: Defendants agreed to produce only marketing and advertising materials, subject to their time-period and type-of-score objections. You

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 14

asked us to give you some examples of documents that might be responsive to this request. Some examples are marketing and advertising materials (such as marketing materials given to resellers and lenders), copies of web pages where scores are sold, materials given to sales force people and internal strategic planning documents regarding the marketing and advertising of Fair Isaac scores. With this clarification, please confirm that you are producing all documents responsive to this request.

**Defendants' Response:** In response to Request No. 32, Defendants will agree to search for responsive marketing and advertising materials subject to agreement on the relevant time period and type of score. Defendants will also agree to search for all of their business/marketing strategy documents that involve relevant scoring services that are in the files of the Defendants' employees likely to have created such documents or to have supervised the execution of such business or marketing strategy. VantageScore does not market, advertise or sell Fair Isaac's scores, but will provide any such documents found.

**27. Plaintiff wrote:** Request No. 33: In response to defendants' objection to the phrase "documents relating to," Fair Isaac agreed to remove these words from the request so that the request reads: "All communications with lenders or consumers about the price of Fair Isaac's scores in relation to a bundle of products, information, or services to the customer." Defendants agreed to produce all documents in response to this request subject to their time-period and type-of-score objections.

**Defendants' Response:** Correct.

**28. Plaintiff wrote:** Request Nos. 34-37: All of these requests relate to 3-in-1 credit reports. Request no. 34 relates to the pricing of them; request no. 35 relates to any connection the reports have to Fair Isaac; request no. 36 relates to benefits of the reports; and request no. 37 relates to any bureau defendant's decision to not allow Fair Isaac to sell 3-in-1 reports.

All bureau defendants objected to producing documents in response to request nos. 34, 35 and 36 on relevance grounds, but agreed to produce all documents responsive to request no. 37. In paragraph 112 of the amended complaint, Fair Isaac alleged that the bureaus charge Fair Isaac a significantly higher price for use of their Aggregated Credit Data than they charge each other or other third parties for use of this data. Fair Isaac also alleged

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 15

that at least one of the bureaus has flatly denied Fair Isaac access to its credit data to the extent Fair Isaac wants to use the data to sell 3-in-1 reports.

During our meet-and-confer you suggested that you were unfamiliar with 3-in-1 reports and asked whether Fair Isaac is seeking information about "tri-merged" reports. We see no distinction between tri-merged reports or 3-in-1 reports. Fair Isaac's requests seek information about any reports (regardless of whether the defendants call them "3-in-1" or "tri-merged") where the bureaus share their credit data or are allowed to sell credit data from other bureaus in one report. And your clients know what 3-in-1 reports are because all bureau defendants currently offer 3-in-1 credit reports to consumers. See, e.g., privacymatters.com, freecreditreport.com, www.econsumer.equifax.com. With this clarification, please confirm that you are producing all documents responsive to request nos. 34, 35 and 36.

**Defendants' Response:** Defendants continue to object to Requests Nos. 34 through 36 on the basis that they are overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Defendants agree to search for any instances of Plaintiff requesting to become a reseller of three-in-one reports or tri-merge reports and will produce responsive documents, if any, located as a result of that search. Defendants also agree to search for price lists and documents sufficient to show their pricing policies with respect to the sale of credit data, including sales to resellers. VantageScore does not believe that it has any documents responsive to these requests, but will provide any such documents found.

**29. Plaintiff wrote:** Request No. 38: This request asks for all documents relating to your actual or potential price increases to any lender or consumer for Fair Isaac scores. The bureau defendants agreed to produce all documents showing the actual prices charged to all lenders and consumers as well as internal documents regarding pricing plans or strategies, subject to their time-period and type-of score objections. We request that you also produce all responsive information about the potential prices you may charge for Fair Isaac's scores. Please tell us if you will do so.

**Defendants' Response:** Defendants continue to object to Request No. 38 on the grounds of time period, type of score, and over breadth. To the extent this request seeks information regarding resellers, Defendants will agree to search for any pricing schedules that it has for resellers within a reasonable time frame and for relevant scoring services. Defendants will search for the same

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 16

information for consumers.  Defendants will agree to search for transactional data sufficient to show the prices charged to lenders and consumers for FICO scores.  Defendants will also produce all internal documents regarding pricing plans or strategies for FICO scores, subject to the time period and types of scoring services objections.

> **30. Plaintiff wrote:**  Request Nos. 41 and 42: These requests ask for information about the amounts you charge for credit reports and access to a bureau's credit data. The bureau defendants objected to these requests as being potentially too burdensome. All bureau defendants agreed to see if their clients can generate a table that provides the requested information, subject to their time period objection. We explained that there should be two tables-one in response to no. 41 and one in response to no. 42, or one table should indicate which lenders or organizations supply data to a bureau and which do not. Please tell us if you will provide us with the requested information. If you can give us this information, we will consider your proposed limitation after reviewing the information you provide.

**Defendants' Response:**  Defendants agree to search for price lists and documents sufficient to show their pricing policies with respect to the sale of credit data to lenders.  VantageScore does not believe that it has any documents responsive to these requests, but will provide any such documents found.

> **31. Plaintiff wrote:**  Request No. 43: In response to defendants' objection to the phrase "documents relating to," Fair Isaac agreed to remove these words from the request so it reads: "All communications among any of the Bureaus that refer or relate to VantageScore or that refer or relate to Fair Isaac." Defendants agreed to produce all responsive information to this request, subject to their time-period objection.

**Defendants' Response:**  Correct.

> **32. Plaintiff wrote:**  Request No. 45: This request asks for all documents relating to your internal communications or communications among any defendants regarding anticipated litigation with Fair Isaac. Defendants agreed to respond to this request if Fair Isaac restated it to read: "All documents relating to your internal communications or communications among any Defendants regarding anticipated litigation with Fair Isaac

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 17

regarding a joint venture related to generic credit risk scores." Defendants' proposed
limitation is too restrictive. Fair Isaac's claims are broader than the creation of a "joint
venture related to generic credit risk scores." For instance, Fair Isaac's antitrust claims
cover the bureau defendants' anticompetitive behavior related to the pricing of scores and
credit reports; Fair Isaac's trademark claims cover a range of defendants' products and
services that infringe on Fair Isaac's marks; and Fair Isaac's false-advertising claims
cover statements made about the creation, quality, and features of VantageScore's
models. With the exception of this current litigation, Fair Isaac would be willing to agree,
however, that defendants could exclude from production, documents relating to actual
litigation or arbitration that has ensued, for the time period after such litigation or
arbitration began. Please let us know if this limitation is acceptable and if defendants will
produce responsive documents.

**Defendants' Response:**   This overly expansive interpretation of Request No. 45 is not
acceptable to Defendants.

**33. Plaintiff wrote:**  Request No. 60: In response to defendants' objection to the phrase
"documents relating to," Fair Isaac agreed to modify the request to read: "All
communications with Lenders or consumers regarding updated or more current versions
of Fair Isaac's scores or models." Defendants agreed to produce all documents responsive
to this request, subject to their time-period and type-of-score objections.

**Defendants' Response:**  Correct.

**34. Plaintiff wrote:**  Request No. 61: Defendants objected to this requests on the basis
that permission to disclose responsive information may be needed from a third party, but
no defendant could identify any agreement requiring such permission. Defendants agreed
to check with their clients and tell us whether this request truly implicates confidentiality
concerns. Please tell us if you are withholding documents responsive to this request based
on your objection, and if so, identify the agreements, their terms and conditions, and the
steps you are taking to be able to produce the requested information.

**Defendants' Response:**  Defendants' identification of the relevant third-party confidentiality
agreements depends greatly upon the relevant time period and relevant scoring services. The
bureau defendants have confidentiality agreements with the majority, if not all, of the customers
that purchase certain scoring services. The bureau defendants is in the process of identifying
those customers and determining what steps will be necessary to comply with the confidentiality

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 18

agreements. VantageScore does not believe that it has any documents responsive to this request, but will provide any such documents found.

**35. Plaintiff wrote:** Request No. 64: This request seeks all documents relating to complaints, comments, or concerns from lenders or consumers or others regarding the accuracy of any defendant's consumer credit data. Defendants objected to the breadth of this request. Defendants claimed that comments from consumers are irrelevant to the extent this request gets at the issue of whether there was a demand in the marketplace for the creation of VantageScore-because they claim there was no demand from consumers, only lenders. Defendants said they would potentially be willing to stipulate to the fact that in advertising where defendants have referred to demand for VantageScore, they were referring to demand from lenders, and there was no demand from consumers. But because your potential stipulation doesn't resolve Fair Isaac's need for this information, we can't accept your proposal. Instead, Fair Isaac proposes that defendants produce summaries sufficient to show the number of complaints and the types of complaints from lenders, consumers or others made about the accuracy of defendants' consumer credit data. Please let us know if you agree to this proposed limitation.

**Defendants' Response:** With regard to Request No. 64, Defendants did not indicate or suggest that there was no consumer demand for services like VantageScore, but only that the primary customers for VantageScore are lenders. Defendants will agree to search for any logs or other regularly kept records of complaints, comments, or concerns from lenders or consumers regarding the accuracy of the Defendants' consumer credit data that it has, subject to agreement upon a reasonable time period. Defendants will also agree to search for any documents related to complaints, comments, or concerns from lenders or consumers or others regarding the accuracy of any Defendants' consumer credit data contained within the files of employees (1) who have policy-setting and/or supervisory responsibilities related to scoring services and (2) who are likely to have documents responsive to Plaintiff's other requests.

**36. Plaintiff wrote:** Request No. 65: Defendants objected to Fair Isaac's use of "pre-score" rather than "pre-screen" as an industry term. Fair Isaac agreed to restate the request to read: "All documents relating to VantageScore's scores for any service that pre-screens consumers (e.g., pre-screening consumers for credit cards)." Fair Isaac also agreed that this request was not seeking routine transactional documents. You also asked

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 19

us to identify some examples of documents sought by this request. Some examples are documents discussing or showing that VantageScore scores will be used for pre-screening type services, the prices offered/charged for those scores, and the scoring ranges that will be used for those scores. With these modifications and clarifications, please confirm that you are not withholding documents responsive to this request.

**Defendants' Response:** Defendants will agree to search for documents responsive to this request with those modifications. VantageScore does not believe that it has any documents responsive to this request, but will provide any such documents responsive to the request with those modifications.

37. **Plaintiff wrote:** Request No. 66: This request asks for all documents relating to consumer credit data differences between the credit bureaus. You asked us to more specifically state the request or provide examples of what types of documents Fair Isaac is seeking with this request. Defendants have stated that any differences in a consumer's VantageScore score is only attributable to the data differences between the credit bureaus. This request asks for, among other things, the documents that show those differences. Some examples may include statements one bureau has made about another bureau's data, documents that show one bureau has better data than the other bureaus, documents showing a bureau's promotion of the advantages of its data, documents that discuss or refer to the benefits or disadvantages of "leveled" scores, documents discussing or referring to the advantages of using a certain type of credit data that the bureaus collect in assessing an individual's credit risk, any documents that ask Fair Isaac or someone else to account for all the data the bureaus collect in creating a credit scoring algorithm and any document promoting the benefits of such a score, documents showing the process or procedures the bureaus follow in implementing new or different data sets into the VantageScore model, and documents showing the obligations the bureaus have to determine or disclose data sets to the other bureaus or VantageScore. With this clarification, please tell us if you are withholding any information responsive to this request.

**Defendants' Response:** Defendants will agree to search for responsive documents analyzing, describing, or referring to consumer credit data differences between the credit bureaus. VantageScore does not believe that it has any documents responsive to this request, but will provide any such documents found.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 20

**38. Plaintiff wrote:** Request No. 67: This request seeks all documents relating to the bureaus' plans, abilities, desires, agreements, or considerations to compete or to not compete with each other with respect to consumer credit data or consumer credit reports. Defendants objected to this request as overly broad. But defendants agreed to produce, at a minimum, documents concerning strategies or plans for competing, subject to the bureau defendants' time-period and type-of-score objections. Fair Isaac does not believe this request is overly broad as stated. In addition to the types of information that the defendants already agreed to produce, responsive information may show, for example, whether the bureaus plan to not compete with each other with respect to credit data and their in house consumer credit scores. It also might show, for example, any agreements the bureaus have in place to do so, or to not do so. And responsive information would also include discussions the bureaus and VantageScore had about the bureaus' ability to do so. As well as documents showing or discussing how the defendants will compete or not compete with each other with respect to VantageScore scores. Please tell us if you are withholding any information responsive to this request based on your objection.

**Defendants' Response:** Request No. 67 remains overly broad. Nevertheless, Defendants will agree to search for all business/marketing strategy and/or policy documents concerning relevant scoring services and/or consumer credit data within a reasonable time frame.

**39. Plaintiff wrote:** Request No. 68: This request asks for all documents reflecting communications between a bureau or VantageScore and a lender regarding Fair Isaac and credit scores. Defendants objected to this request as overly broad. But because Fair Isaac agreed that this request is not seeking routine transactional documents, we understand that, based on this clarification, defendants are producing all documents responsive to this request, subject to their time period and type of score objections.

**Defendants' Response:** With regard to Request No. 68, Defendants will make reasonable searches for all materials reasonably identified, but this request remains overly broad, even with the elimination of routine transactional documents. It is also not limited to a reasonable time period or to the relevant scoring services. Defendants object to having to search through every lender communication. Nevertheless, Defendants will agree to search for any documents reflecting communications between a bureau or VantageScore and a lender regarding Fair Isaac and credit scoring services that are contained within the files of employees (1) who have policy-setting and/or supervisory responsibilities related to scoring services and (2) who are likely to have documents responsive to Plaintiff's other requests, subject to Defendants' objections to the

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 21

time frame and the type of score. VantageScore does not believe that it has any documents responsive to this request, but will provide any such documents found.

**40. Plaintiff wrote:** Request No. 70: You agreed to see if your clients have any patents or patent applications concerning credit scores, credit scoring models or other scoring products, and tell us if they would produce these documents. Please tell us if you are withholding any documents responsive to this request.

**Defendants' Response:** Defendants are in the process of checking for any such patents or patent applications concerning credit scoring services, credit scoring models or other scoring products.

**41. Plaintiff wrote:** Request No. 71: Defendants objected to the breadth of this request. We clarified that this request seeks studies, searches, investigations, or legal opinions concerning a numerical range or a credit score number within a certain range for credit scores and credit scoring models. We explained that some examples of responsive documents might include studies about the ability to protect a number range as a trademark or studies regarding using a particular score (e.g., "678" or "720") in advertising. Another example would be any assessments a defendant made to respond to a request by a lender to use a particular number range or studies or analyses about lenders' preferences for defendants to use particular scoring ranges.

Counsel for Experian and Equifax said that these clarifications were helpful and they would produce all documents responsive to this request, subject to their time-period objection. Counsel for TransUnion and VantageScore said that they would consider whether Fair Isaac's clarifications satisfied their over-breadth concerns, and would tell us whether they will produce documents in response to this request. With respect to TransUnion and VantageScore, please tell us if you are withholding any documents responsive to this request.

**Defendants' Response:** With regard to Request No. 71, Defendants continue to object on the grounds that it lacks a reasonable time period and scoring service limitation. At the meet and confer, Plaintiff agreed to exclude any communications with individual consumers or customers. Defendants will agree to search for documents responsive to this request subject to these limitations.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 22

**42. Plaintiff wrote:** Request No. 72: Experian and Equifax agreed to produce responsive documents, subject to their time-period and type-of-score objections. TransUnion represented that even with its time-period and type-of-score objections, it still might stand on a vagueness or over breadth objection. With respect to TransUnion, please tell us if you are withholding any documents responsive to this request, subject to your time period and type of score objections.

**Defendants' Response:** With regard to Request No. 72, Defendants, including Trans Union, will produce documents responsive to this request limited to a reasonable time period and the relevant scoring services.

**43. Plaintiff wrote:** Request No. 78: We explained to you that this request is not seeking defendants' algorithms. It is seeking, among other things, memoranda, communications, or analyses about making a bureau's model or VantageScore's model perform better. Responsive information also may include modifications to the actual scoring ranges. We understand from our discussions that defendants are not withholding any information responsive to this request, subject to their time-period and type-of-score objections.

**Defendants' Response:** Defendants will agree to search for documents sufficient to show the information sought in this request with those limitations.

**44. Plaintiff wrote:** Request Nos. 94 and 95: Defendants agreed to produce all responsive documents subject to their time-period and type-of-score objections. In addition, counsel for defendants indicated that they thought the term "vendor reports" was unclear and vague but would check with their clients regarding whether this was a term understood in the industry. Vendor reports refers to publications like trade publications. Please tell us if you are withholding any documents responsive to these requests.

**Defendants' Response:** Defendants will agree to search for documents responsive to these requests with those limitations.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 23

**45. Plaintiff wrote:** Request No. 99: In response to defendants' objection to the phrase "documents relating to," Fair Isaac confirmed that this request is only seeking substantive type documents. With this limitation, defendants agreed to produce all responsive documents, subject to their time period and type of score objections.

**Defendants' Response:** Correct.

**46. Plaintiff wrote:** Request No. 100: In response to defendants' objection to the phrase "documents that relate to," Fair Isaac agreed that this request could be read as being limited to documents containing substantive analysis or decisions/reasoning regarding the advertising and promotional channels through which products or services under a bureau mark or VantageScore's mark are marketed, advertised, or promoted. Responsive information also might include, among other things, a listing of the publications or other media where defendants advertise. With this limitation, defendants agreed to produce all documents responsive to this request, subject to their time-period and type-of-score objections.

**Defendants' Response:** Correct.

**47. Plaintiff wrote:** Request No. 107: This request seeks documents sufficient to identify all current and former customers for bureau scores or models and VantageScore scores and models, including but not limited to, customer mailing lists and any roster of internet customers. As we explained to you during our meet and confers, a lot of this information is probably stored electronically in databases and would be very easy for you to locate and produce. From our discussions with you, we understand that defendants are producing all information responsive to this request, subject to their time period and type of score objections.

**Defendants' Response:** Correct, the bureau defendants agree to produce responsive information identified following a search of their electronic databases. Since VantageScore does not have customers, it does not believe that it has any documents sufficient to identify all current and former customers. However, VantageScore will agree to search for documents sufficient to show lenders and regulators with whom it has had discussions or presentations.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 24

**48. Plaintiff wrote:** Request No. 108: This request seeks documents sufficient to show the prices that you have charged for bureau scores or models and VantageScore scores and models. This includes the prices charged for licenses for these scores or models. Defendants agreed to produce charts sufficient to show the prices charged for these scores and models, subject to their time period and type of score objections-we understand that these charts will include the prices for licenses as well.

**Defendants' Response:** Correct (subject to Defendants' response in paragraph 2 above.) VantageScore does not believe that it has documents sufficient to show prices charged for scores, as it does not sell scores. However, VantageScore will agree to search for documents sufficient to show the licensing fee the Bureaus pay for the algorithm.

**49. Plaintiff wrote:** Request Nos. 111 and 112: Defendants agreed to produce documents sufficient to show revenue and profitability on a monthly, quarterly, and annual basis, subject to their time-period and type-of-score objections. They will also produce documents sufficient to show sales volume, operating profit, gross profit, and net profit, to the extent they exist.

**Defendants' Response:** Correct. However, regarding Request No. 111, since it is directed at revenue and profitability of Bureau scores and models, VantageScore does not believe that it has any documents responsive to this request, but will provide any such documents found.

**50. Plaintiff wrote:** Request No. 113: In response to defendants' objection to the phrase "all documents relating to," Fair Isaac agreed that this request calls for only substantive type documents. With this limitation, defendants agreed to produce all responsive documents, subject to their time-period and type-of-score objections.

**Defendants' Response:** As indicated in our meet and confer session, Defendants will agree to produce documents that refer to their strategies and/or plans.

**51. Plaintiff wrote:** Request No. 117: In response to defendants' vagueness objections, Fair Isaac agreed to restate the request to read: "All documents that relate to any instances of actual or possible confusion or mistake regarding a possible relationship between the credit scoring products or services of Fair Isaac and the products or services

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 25

of any Defendant." With this change, defendants agreed to produce all documents
responsive to this request, subject to their time-period and type-of-score objections.

**Defendants' Response:** Correct.

**52. Plaintiff wrote:** Request No. 122: We explained to you that some documents
responsive to this request might include, among other things, representative copies of all
advertisements or other promotional material, along with documents sufficient to show
the time and places of use of those materials. With that understanding, defendants agreed
to produce the documents responsive to this request but will notify Fair Isaac if they think
locating responsive documents poses an undue burden or if they are limiting their
production in any other way.

**Defendants' Response:** Correct.

**53. Plaintiff wrote:** Request No. 126: Defendants objected to producing internal
communications in response to this request and said they would consider the request
further if Fair Isaac identified some topics that the responsive documents might cover.
Some topics might include, among other things, VantageScore's business objectives,
profitability, scoring ranges, advantages or disadvantages of its model, or even customer
confusion. With respect to documents that relate to internal communications, Fair Isaac
can agree for now to limit your search to internal communications regarding concerns
from consumers, lenders, media or others. With these clarifications, please tell us if you
are withholding any documents responsive to this request.

**Defendants' Response:** Defendants continue to object to Request No. 126 because it is overly
broad in its use of the terms "relating to" and "others". Nevertheless, Defendants will agree to
search for any logs or other regularly kept records of complaints, comments, or concerns from
lenders or consumers regarding VantageScore. Defendants will also search for any documents
related to complaints, comments, or concerns from lenders or consumers or others regarding
VantageScore that are contained within the files of employees (1) who have policy-setting and/or
supervisory responsibilities related to scoring services and (2) who are likely to have documents
responsive to Plaintiff's other requests.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 26

**54. Plaintiff wrote:** Request No. 127: VantageScore, Equifax, and Experian agreed to produce all documents responsive to this request. TransUnion objected to this request, however, on the basis that there might be an undue burden associated with searching through communications from consumers who have bought a VantageScore score from TransUnion. TransUnion was going to reconsider its position on this matter. While we believe this request is clear on its face, we wanted to clarify-based on TransUnion's response-that it does not just call for communications from consumers, but all documents referring to or discussing how consumers' VantageScore scores can vary across bureaus. With respect to TransUnion, please tell us if you are withholding any documents responsive to this request.

**Defendants' Response:** Defendants will agree to search for documents responsive to this request.

**55. Plaintiff wrote:** Request No. 128: This request asks for all documents that relate to fair-lending or disparate-impact studies concerning VantageScore's scores or models. Defendants objected to this request on relevancy grounds-although they asked Fair Isaac to produce similar documents. At a minimum, these studies are relevant to the claims defendants made that VantageScore was created to take into account "thin file" consumers who, according to defendants, had not been adequately captured with other credit models. Please tell us if you are withholding any documents responsive to this request.

**Defendants' Response:** Defendants never refused to produce documents in response to this request; it is Plaintiff that has refused to respond to Defendants' comparable request. Defendants will agree to search for documents responsive to this request, with the expectation that Plaintiff will do the same.

**56. Plaintiff wrote:** Request No. 131: Defendants agreed to produce documents sufficient to identify persons "with principal responsibility for" creating, designing, implementing, testing, using, or licensing VantageScore's scores and models. We understand this to mean that defendants are producing the requested information for people who had more than a ministerial role in these tasks.

**Defendants' Response:** Correct.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 27

**57. Plaintiff wrote:** Request No. 132: Equifax agreed to produce all documents responsive to this request, subject to its time-period and type-of-score objections. And VantageScore agreed to produce all responsive information. Counsel for TransUnion and Experian, on the other hand, said they would discuss this request with their clients and tell us if they are standing on their relevancy objections. As we explained, the identify of the people who saw Fair Isaac's specifications relates to Fair Isaac's false advertising and antitrust claims. With respect to TransUnion and Experian, please tell us if you are withholding any information responsive to this request.

**Defendants' Response:** Defendants objected to Request No. 132 on the basis that it was not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, Defendants will agree to search for documents sufficient to show responsive information, subject to its time-period objections.

**58. Plaintiff wrote:** Request No. 149: In response to defendants' objection, Fair Isaac agreed to change the language from "all documents that tend to refute or that serve as support for or relate to ..." to "all documents that tend to refute, support, or address ...." Defendants agreed to produce all documents responsive to this request as restated.

**Defendants' Response:** Correct.

**59. Plaintiff wrote:** Request No. 156: Equifax and Experian agreed to produce all documents responsive to this request, but TransUnion and VantageScore refused to produce documents in response to this request other than documents produced in response to request no. 155. TransUnion and VantageScore suggested that they are reading request no. 155 broadly enough to cover request 156 in that-as requested in no. 156-every document that identifies a person whom a defendant believes is a leading expert in the areas of credit scoring and analytics would either-as requested in 155-tend to refute or serve as support for the assertion that VantageScore's score or model leverages the collective expertise of the leading experts. If TransUnion and VantageScore are reading request no. 155 that broadly, then their objection is just a matter of schematics [sic] and we have no reason to dispute it-since you will be producing the same documents you would produce under no. 156. Please tell us if you are not reading request no. 155 as broadly as we have explained.

**Defendants' Response:** Defendants will agree to search for all documents that tend to refute or that serve as support for the assertion that VantageScore's score or model leverages the

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 28

collective expertise of the leading experts on credit data, scoring, and analytics. Defendants continue to object to Request No. 156 in that it is not an appropriate subject for a document request because it is vague and unduly burdensome. To the extent that Plaintiff is seeking an opinion on who the leading experts are in the areas of credit scoring and analytics, this request is premature and more appropriate for an expert deposition.

**60. Plaintiff wrote:** Request No. 158: Defendants refused to produce any documents regarding their joint defense agreement. If you are withholding any information responsive to Fair Isaac's request on the basis of a joint defense agreement, then we need to review your agreement to know if you have a valid basis to withhold documents. You agreed to let us know if you were withholding documents on this basis. Please do so.

**Defendants' Response:** Any Joint Defense Agreement(s) is/are irrelevant and protected by the attorney-client privilege, the work product doctrine, and the common interest doctrine.

**61. Plaintiff wrote:** Request Nos. 161 and 165: Defendants will produce all documents responsive to these requests as required under the scheduling order and the rules of civil procedure.

**Defendants' Response:** Correct.

**62. Plaintiff wrote:** Request No. 163: Fair Isaac explained that this request is seeking policies or guidelines that defendants must follow before releasing new products or services into the marketplace. You agreed to tell us if you would produce such documents. Please tell us if you are withholding any documents responsive to this request.

NEAL, GERBER & EISENBERG LLP

Michael A. Collyard
April 3, 2007
Page 29

**Defendants' Response:**   Defendants agree to search   for responsive information and produce any documents identified following a reasonable search.

Sincerely,

NEAL, GERBER & EISENBERG LLP

Dao L. Boyle

cc:  Counsel of Record

NGEDOCS: 010409.0618:1404392.2