IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Fair Isaac Corporation and myFICO Consumer Services, Inc.; | Case No. 06-cv-4112 (ADM-JSM ) |
| Plaintiffs, | |
| v. | **Fair Isaac's Objections to the Magistrate Judge's Discovery Order on July 10, 2009** |
| Experian Information Solutions Inc.; Trans Union, LLC; VantageScore Solutions, LLC; and Does I through X; | |
| Defendants. | |

**Introduction**

Fair Isaac has not appealed any decision by the Magistrate Judge in this case—until now. The Magistrate Judge's decision to deny leave to file a motion to compel documents that show consumers are actually or potentially confused between Fair Isaac and Experian's products should be reversed.

The Magistrate Judge's Order is clearly erroneous and should be reversed for one fundamental reason: lawyers should not be allowed to mislead each other about what documents are being searched for and then break their word about what documents will be produced. Here, Magistrate Judge Mayeron found that "Experian clearly had broken its end of the bargain," Order at 28, yet she denied Fair Isaac's motion. The Magistrate Judge's denial is apparently premised on the view that a party should not trust its opponent's agreements in discovery but should file motions with the court anticipating in advance that the lawyers won't keep their promises. That view is not

only judicially inefficient but would encourage a needless deluge of premature motions on the courts. The Magistrate Judge's holding is based on several clearly erroneous factual findings and sets poor precedent for litigants in discovery disputes. The documents at issue are highly relevant to Fair Isaac's trademark-infringement and unfair-competition claims—a fact highlighted by this Court's recent ruling on summary judgment. The Magistrate Judge's Order should be reversed and Fair Isaac's motion to compel should be granted.

## Background

In April 2007, at the outset of discovery, Experian agreed, in response to Fair Isaac's document requests, to produce "[a]ll documents that relate to any instances of actual or possible confusion or mistake regarding a possible relationship between the credit scoring products and services of Fair Isaac and the products or services of any Defendant" ("Confusion Documents") Dkt 616, Ex. 3 at 24-25. In August 2007, Experian further confirmed that it would search for and produce all Confusion Documents from people involved with Experian's "customer information lines" and websites. *Id.* ¶ 7; Dkt 616, Ex. 4. Following many other representations to the same effect and after combing through millions of pages of documents produced by the defendants, Fair Isaac learned, on July 31, 2008, during its last deposition of Experian, that Experian might have searchable databases that contain Confusion Documents. Within several weeks, Experian agreed to search those databases for Confusion Documents if Fair Isaac didn't file a motion to compel. Dkt 604 at Ex. 23.

By November 18, 2008, after weeks of continued discussions, Experian represented to Fair Isaac that Experian had begun the "collection/review process" and that it believed it could complete its production of *all* Customer-Care emails (back to July 2004) and certain call logs and recordings by December 15, 2008. *See e.g.,* Dkt 604, Exs. 21-31. Following many continuing efforts by Fair Isaac, Experian finally produced a mere 39 pages of documents on January 20, 2009. Within three days after hearing from Experian that it would not be producing any more (the deadline for non-dispositive motions had by then passed), Fair Isaac, on January 29, filed a motion to compel. At the hearing on the motion, under questioning from the Magistrate Judge, Fair Isaac learned for the first time that Experian had not actually conducted the search for documents that it had promised to conduct. Dkt 618 at 52-53; 55; 89-90. On July 10, 2009, the Magistrate Judge denied Fair Isaac's motion as untimely.

**Argument**

This Court should reverse or modify an order by a magistrate judge if the order is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The clearly-erroneous standard applies to factual findings made by the magistrate judge. "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir.1996). Here, the Magistrate Judge misunderstood both the *scope* of what the parties had agreed

Experian would try to locate and produce and *when* Fair Isaac knew that Experian (as the Magistrate Judge herself put it) "clearly had broken its end of the bargain." Order at 28.

I. **A review of the entire record shows that the Magistrate Judge made a clearly erroneous mistake in finding no good cause for Fair Isaac's motion**

The Magistrate Judge's finding that there was no good cause for Fair Isaac's motion is premised on a series of mistaken factual findings. The facts and record as a whole show good cause for Fair Isaac's motion, and they do not support the Magistrate Judge's conclusion. The Magistrate Judge's erroneous findings cover a broad spectrum:

- The Magistrate Judge concluded that Fair Isaac knew as of August 2, 2007, that Experian was not going to search emails in databases that were not searchable electronically and that Experian was not going to do a company-wide search for emails. *See* Order at 24-25. Fair Isaac never claimed that Experian was supposed to search for emails in databases that are not searchable electronically or that Experian was supposed to do a company-wide search of emails. It is undisputed that Experian agreed on August 2, 2007, to search for and produce Confusion Documents from the people involved with Experian's "*customer information lines*" and its various *websites*. Dkt 616, ¶7. Nothing said that this included emails in databases that are not searchable electronically — and Fair Isaac has never claimed it did. *Id.* Fair Isaac didn't even demand that Experian produce such emails after Fair Isaac discovered one year later that Experian had electronically searchable databases for its *customer information lines* that it had never searched. What the Magistrate Judge should have recognized is the undisputed fact that the parties agreed on November 18, 2008, that Experian would search *all* of the emails that Experian represented were routed through its Customer Care center and *are* stored in electronically

searchable databases going back to July 2004. Dkt 604, Exs. 20, 24, & 27. Fair Isaac's motion made clear that it was only seeking these emails and it confirmed that at the hearing. Dkt 603 at 37; 618 at 15:12-17.

- The Magistrate Judge found that Fair Isaac knew by July 22, 2008, that Experian had *not* searched its Customer-Care emails for Confusion Documents. But Experian didn't acknowledge its failure to search its Customer-Care emails until September 18, 2008—nearly *two* months after fact discovery closed. Dkt 604, Ex. 22. In fact, for nearly *two* years, Experian did nothing but lead Fair Isaac to believe that it had searched its databases for Confusion Documents and that it had produced all responsive and non-privileged documents. Dkt 603 at 16-17; 604, Exs. 15 & 17. It was not until the 30(b)(6) deposition of Experian on July 31, 2008, that Fair Isaac happened to discover—*on its own*—that Experian might have searchable databases that had not searched. Dkt 603 at 19-21. And even then, it wasn't until September 18, 2008, that Experian finally admitted that it had not searched those databases. Dkt 604, Ex. 22.

- The Magistrate Judge found that Fair Isaac knew by September 18, 2008, that Experian wasn't going to produce the emails Fair Isaac sought in its motion. According to the Magistrate Judge, "Experian stated [by that date] that it had not searched for and was not going to be producing emails from the NCAC." Order at 28. This is not accurate. Experian's counsel told Fair Isaac in early September 2008 that it had not searched Experian's Customer-Care emails because those emails were routed through Experian's NCAC center and that Experian had not searched for Confusion Documents at NCAC because Experian believed that the NCAC only handled issues regarding consumer credit *reports* and not credit *scores*. Dkt 604, Ex. 17. Then, on September 18, 2008, Experian's

- 5 -

counsel later told Fair Isaac that Experian was "*mistaken*" in saying that the emails were routed through NCAC because Experian's counsel had learned that all emails pertaining to Experian's *websites* and *customer information lines* were routed through Customer Care. Dkt 604, Ex. 22. And far from claiming that it was not going to search those emails, Experian *confirmed* that it was in the process of collecting those emails for review. *Id.* Experian later clarified that although "consumer inquiries received via e-mail are routed to Experian's Customer Care centers," the "NCAC does not receive e-mails from consumers" so those emails would not be included in the Customer-Care emails. Dkt 604, Ex. 24. Experian never said that it had responsive NCAC emails and it was not going to search for or produce those emails. But that is the conclusion the Magistrate Judge appears to have reached.

- The Magistrate Judge found that although Fair Isaac wanted Experian to produce its entire database of Customer-Care emails, the parties agreed that Experian would only need to produce a limited sample of those emails, and from that Fair Isaac knew Experian was not going to search the emails sought by its motion. Order at 26-27. This finding is also clearly erroneous. Experian did not limit its agreement on Customer-Care emails to a mere sample of them. The record is clear that Experian agreed that it would search *all* emails routed through Customer Care (going back to July 2004) and produce any that relate to consumer confusion. Dkt 603 at 36-37; 604, Exs. 20, 24 & 27. Fair Isaac did request at one time that Experian produce its entire database of emails for Fair Isaac to review, so that it could take on Experian's burden of reviewing them. Dkt 604, Ex. 31 (email Oct. 21, 2008). But Experian wouldn't agree to do that. *Id.* So the parties agreed that because they already limited Experian's call log and call-

recording productions, Experian needed to search *all* emails routed through Customer Care back to July 2004. *Id.* (emails Nov. 14, 2007).

## II. The Magistrate Judge's conclusion that Fair Isaac did not have *good cause* overlooked two key facts

### A. First, the Magistrate Judge failed to note that Experian did not search where Experian promised on November 18, 2008, to search

Experian did not actually search *all* Customer-Care emails like it promised to do, and for the emails, call logs, and call recordings for which Experian claims it did search, Experian took an unreasonably narrow view of consumer confusion that was contrary to basic law. Fair Isaac did not find this out until the hearing on this motion, when Experian was forced to tell the Magistrate Judge, under her questioning, where Experian had searched.

On November 18, 2008, Experian agreed to search *all* of its searchable Customer-Care emails going back to July 2004. But Experian *never* conducted that search. Instead—without ever telling Fair Isaac—Experian independently chose to search only *three* categories of emails from a drop-down menu in its Customer-Care databases. Dkt 618 at 52:16-53:3. The Magistrate Judge acknowledged—and Fair Isaac confirmed—that Experian didn't disclose this until the hearing on this motion:

- The Court: "Now Plaintiff says—finds it hard to believe that there were only 19. Didn't understand, I'm sure, until you said right now that we're only reviewing the three drop-down menus." *Id.* at 55:1-6.

- The Court: "But what was critical to me is Mr. Pace represented that he informed you that they were not going to review every e-mail from the call centers to see if they were responsive to your document requests. And you're telling me that's exactly what they agreed to."

- Fair Isaac's Counsel: "Mr. Pace never told me that they were not going to review all of these e-mails. In fact, he told me directly the opposite." *Id.* at 91:7-14.

- Fair Isaac's Counsel: "The first time that I ever heard about them searching anything on drop-down menus for e-mails was as I was sitting right here 20 minutes ago, Judge." *Id.* at 89:22-24.

At the hearing, Fair Isaac also learned for the first time that for the communications Experian did search, its interpretation of confusion was much narrower than what the parties had previously agreed to and was also contrary to law. Dkt 618 at 63-64; 85-87. For example, Experian told the Court that it would *not* have included the following two hypothetical scenarios in its production:

- a consumer saying "I thought I was getting a FICO score and I'm confused and I got an Experian Score" or

- "is my Plus Score the same as my FICO score?" *Id.* at 96:11-15; 74:14-16.

This would be clear evidence of consumer confusion under the law, and, as Fair Isaac explained to the Magistrate Judge, these hypothetical instances fall squarely within the scope of confusion that Experian promised *two* years ago to search for and produce (i.e., on April 3, 2007 Experian promised to produce "all documents that relate to any instances of actual or possible confusion or mistake regarding a possible relationship between the credit scoring products or services of Fair Isaac and the products or services of any Defendant"). *Id.* at 88:3-17; Dkt 616, Ex. 3 at 24-25.

Because Experian didn't disclose the limited nature of its searches until after the non-dispositive motion deadline, this gave Fair Isaac *good cause* to bring its motion to compel after that deadline. If Experian would have disclosed the limited nature of its

searches before that deadline, Fair Isaac could have brought its motion then, because it would have known that Experian was not living up to the agreement and the dispute would have been ripe at that time. It was reversible error for the Magistrate Judge to overlook these key facts.

### B. Second, the Magistrate Judge also overlooked that the parties agreed to reserve all of Fair Isaac's rights to bring its motion later

The Magistrate Judge concluded that Fair Isaac did not reserve its right to seek additional call logs or recordings after the non-dispositive-motion deadline, and it did not say anything about Fair Isaac's reservation of rights regarding Customer-Care emails. Not only did Fair Isaac reserve its right (with Experian's agreement) to bring its motion later, Experian also expressly agreed that Fair Isaac was reserving *any* right it had based on its review of the information that Experian was going to produce. Dkt 604, Ex. 27 (Oct. 5, Nov. 5, Nov. 14 emails). For example, on November 5, 2008, Experian stated to Fair Isaac: "[P]lease let us know if Experian should conduct the review and production proposed in my email (subject of course to *any* reservation of rights based on your review of the information that is produced)." Dkt 604, Ex. 27 (emphasis added). And then again on November 14, 2008, Experian represented: "[N]ow that you've agreed, subject to your reservation of rights, to our proceeding this way, we're putting the plan into action and will be able to report back with a timeline shortly." *Id.* Even though Fair Isaac reminded the Court of this at the hearing, Dkt 618 at 34:9-16; 35:8-18; 89:9-19, the Magistrate Judge overlooked these crucial acknowledgements in its Order.

All of this is important because the parties' agreement to reserve Fair Isaac's rights also gave Fair Isaac *good cause* to bring its motion to compel when it did. The parties agreed that Experian would produce the documents it was agreeing to produce, and Fair Isaac would review them to determine if they were sufficient before it brought any motion to compel. Because Fair Isaac followed this agreed protocol, and Experian agreed all along to reserve Fair Isaac's rights to bring a motion later, Experian had no basis to claim that Fair Isaac did not have good cause to bring its motion when it did. It was clearly erroneous and contrary to law for the Magistrate Judge to conclude otherwise.

### III. Fair Isaac was diligent in bringing its motion to compel and the Magistrate Judge's conclusion is against good judicial-economy principles

This dispute comes down to the simple fact that the parties had an agreement that Fair Isaac *lived* up to and that Experian did *not*. Fair Isaac waited for these issues to be ripe before it moved to compel because it took seriously the Court's previous admonition that the parties were not working together to resolve their disputes before bringing motions. Fair Isaac's efforts were consistent with the Magistrate Judge's instructions during a March 10, 2008 hearing on a separate motion, in which the Court criticized the parties' efforts in working out an agreement on burden, stating:

> I am not satisfied that the parties have had an adequate dialogue and meet and confer to come up with solutions on how to address the burden and, to be honest, I am at a loss. I am the least qualified person here in this room to devise a solution to the burden issue. I will tell you, though, . . . I think it is up to the parties to come up with a manageable solution to address the burdens to plaintiffs. Dkt 317 at 126:11-23.

Consistent with the Magistrate Judge's earlier instructions, Fair Isaac tried to resolve the burden issue before it sought the Court's assistance.

On November 18, 2008, the parties agreed exactly what Experian was going to search for and produce. There was no dispute about that. The only possible controversy that Fair Isaac thought might arise was whether Experian was searching a large enough volume of documents. The parties resolved that potential issue by agreeing that Fair Isaac would first review Experian's production and then, if Fair Isaac needed more, it could bring a motion later. Also on November 18, 2008, Experian told Fair Isaac that it believed it would be able to produce the agreed-on information by December 15, 2008 (Experian though didn't actually produce documents until January 20, 2009). Dkt 603 at 24.

Based on the parties' agreement and these undisputed facts, Fair Isaac couldn't have brought its motion until it reviewed the documents that Experian produced. And because Experian didn't produce those documents until January 20, Fair Isaac's motion was not ripe until then. Fair Isaac diligently filed its motion within three days after Experian confirmed that it was not going to produce more documents. Dkt 613, Ex. 4; Dkt 604, Ex. 32. *See Industrial Risk Insurers v. D.C. Taylor Co.,* 2008 WL 2219932 at*2 (N.D. Iowa 2008) (finding good cause for a sixty-two-day delay in filing a motion to compel because the non-movant had delayed in responding to document requests and delayed in its document production).

Fair Isaac relied on the representations of Experian's counsel, as officers of the court, that they were going to search for and produce documents as they agreed to do

on November 18. Fair Isaac had no reason to believe or know that counsel wouldn't actually follow-through with its promises. Certainly, Fair Isaac couldn't have predicted that Experian would only search three categories of drop-down menus for its Customer-Care emails when its counsel agreed to search *all* Customer-Care emails going back to July 2004. Nor could Fair Isaac have anticipated that Experian would take an unreasonably narrow view of what relates to confusion. Fair Isaac's reliance on Experian's representations was neither unreasonable nor proof now of a lack of diligence on Fair Isaac's part.

The discovery and the meet-and-confer process are premised on the idea that counsel for adverse parties need to trust one another and that they will work together to resolve disputes. If counsel was not able to rely on explicit representations regarding document searches and productions, but instead was required to seek the assurance of a court order every time an issue came up, the requirements of Local Rule 37.1 would be meaningless and the burdens of discovery would quickly become unwieldy. The Magistrate Judge's conclusion that Fair Isaac should not have relied on Experian's representations under these particular facts is contrary to the rules of this Court and the logic of civil discovery practice in general.

The Magistrate Judge's Order rewards Experian for misleading Fair Isaac up to and after that agreement and punishes Fair Isaac for doing exactly what the parties agreed to do. The Order also sets the new standard that opposing counsel's representations are *not* good enough and that lawyers should *not* trust one another. In other words, even when parties have an agreement on how to resolve an issue, they

should immediately run to the courthouse to file motions in anticipation that the other side will not live up to its end of the bargain. This is against good principles of judicial economy, which encourages parties to resolve disputes by themselves and to approach the court only when those discussions have broken down. That is exactly what Fair Isaac did, and Fair Isaac *was* diligent in doing so.

## Conclusion

The Magistrate Judge's July 10 Order should be deemed clearly erroneous and contrary to law. Fair Isaac respectfully requests that the Order be reversed and that Fair Isaac's motion to compel be granted.  Fair Isaac believes Experian's production will have no affect on the trial date in this matter.


Date: July 27, 2009              **Robins, Kaplan, Miller & Ciresi, L.L.P.**

                                 **By:** /s Michael A. Collyard            .
                                        Ronald J. Schutz (MN Bar #130849)
                                        Randall Tietjen (MN Bar #214474)
                                        Michael A. Collyard (MN Bar #302569)
                                        Laura E. Nelson (MN Bar #0342798)
                                        2800 LaSalle Plaza
                                        800 LaSalle Avenue
                                        Minneapolis, MN 55402
                                        Tel: (612) 349-8500
                                        Fax: (612) 339-4181

                                 **Attorneys for Plaintiffs**