## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Fair Isaac Corporation; and myFICO )
Consumer Services, Inc.; )
 )
  Plaintiffs, )
 )
v. ) Civil Action No:
 ) 0:06-cv-04112 (ADM/JSM)
Experian Information Solutions Inc.; )
TransUnion, LLC; VantageScore )
Solutions LLC; and Does I through X )
 )
  Defendants. )
_____)

## MEMORANDUM OF LAW IN OPPOSITION TO FAIR ISAAC'S OBJECTIONS TO THE MAGISTRATE JUDGE'S DISCOVERY ORDER ON JULY 10, 2009

### INTRODUCTION

Plaintiffs ask the Court to reverse Magistrate Judge Mayeron's order enforcing her own discovery deadline, and to grant them leave to pursue a discovery motion over a year after discovery has closed and on the eve of trial.  Order filed July 10, 2009 (Document 692) ("Order").  Plaintiffs also ask this Court to grant their underlying motion to compel, but leave was never granted to bring that motion and therefore the Magistrate Judge did not address its substance.

As discussed at length in the briefing and hearing on Plaintiffs' motions, this long and tortured discovery dispute turns on a few early requests as to which compromises were reached, followed by ever-expanding interpretations of the requests and games of "gotcha" apparently designed to expand the discovery further yet.  Experian stands by its objections and responses throughout that long process, but the bottom line is that Magistrate Judge Mayeron reviewed that history in detail, and ruled that the twenty-two months period between Defendants' initial responses and the non-dispositive motion deadline was sufficient to allow Plaintiffs to pursue this discovery and seek enforcement of their requests if they had a basis to do so (they did not).  However one interprets the "he said, she said" negotiation history underlying this dispute, no one disagrees that Plaintiffs did not even file their motion to compel until five weeks after the deadline for hearing non-dispositive motions.

Magistrate Judge Mayeron was correct, and certainly acted within her discretion,

in denying that motion.[1]

Plaintiffs cannot show that the Magistrate Judge's Order is "contrary to law," so they are forced instead to characterize its factual findings as "clearly erroneous." However, Magistrate Judge Mayeron thoroughly considered and correctly interpreted the record, and the denial of Plaintiffs' motions is not the result of any clear error.  Moreover, no new facts or arguments appear in Plaintiffs' Objections, which instead simply reargue the same points and advance the same interpretation of the facts considered and rejected below.

As the deadline for non-dispositive motions approached, all parties were forced to make decisions about which issues to pursue in light of their priorities and available resources.  The Magistrate Judge's Order makes clear that although parties certainly must work together to resolve disputes, trust one another, and avoid premature motions (as Plaintiffs argue, and Defendants agree), none of this vitiates counsel's responsibility to work within the Court's schedule.  When deadlines are not enforced, courts are forced to deal with disputes such as this one, involving conflicting interpretations of discovery records long after discovery is over – and even after dispositive motions have been filed, argued, and ruled upon.

---

[1] As also discussed in the briefing and hearing on Plaintiffs' motions, the search and review efforts demanded by Plaintiffs would take tens of thousands of hours (and millions of dollars) to complete.  *See* Mem. in Opposition to Plaintiffs' Mots. for Leave and to Compel (Document 609) ("Experian's Opposition") at 29-39.  Such efforts are unwarranted, particularly in light of Plaintiffs' delay in pursuing relief.

Doc# 3054264\1

The Magistrate Judge acted within her jurisdiction in enforcing her deadline, and the July 10 Order was not contrary to law or clearly erroneous.  This Court should overrule Plaintiffs' Objections.

## FACTS

The facts are detailed in the Magistrate Judge's Order.  *See* Order at 3-22.  The requests at issue were served in January and June, 2007.  By August 2, 2007 the parties had met and conferred several times, and Experian had made clear that it would not conduct the broad searches Plaintiffs now request.  *See* August 2, 2007 Letter from Michael Collyard ("Collyard") to Jack Pace ("Pace"), Declaration of Michael Collyard (Document 604) ("Collyard Decl.") Ex. 2.

For over nine months thereafter, Plaintiffs took no action.  On May 21, 2008, Plaintiffs wrote Experian seeking additional documents regarding alleged customer confusion, citing the January and June 2007 requests.  May 21, 2008 Letter from Julia Klein ("Klein") to Bryan Gant ("Gant"), Collyard Decl. Ex. 14.  Experian reiterated its position.  *See* May 30, 2008 Letter from Megan DePasquale ("DePasquale") to Klein, Collyard Decl. Ex. 15.

After fact discovery closed on July 22, 2008, Plaintiffs requested additional material beyond what Experian had agreed to produce.  As a compromise, Experian proposed an additional search of 500 call recordings from its National Consumer Assistance Center ("NCAC"), which addresses inquiries regarding credit reports, and 500 call recordings from its Consumer Care Center, as well as a search of Consumer Care emails – a process agreed to by Plaintiffs.  October 29, 2008 Email from DePasquale to

Collyard, Collyard Decl. Ex. 21; November 5, 2008 Email from DePasquale to Collyard, Collyard Decl. Ex. 29; November 14, 2008 Email from Collyard to Pace, Collyard Decl. Ex. 24.  Experian expected to begin production by December 1 and produce all documents by December 15.  November 18, 2008 Email from DePasquale to Collyard, Collyard Decl. Ex. 27.

On December 1, 2008, Experian informed Plaintiffs that it had completed its review of the NCAC calls and found no responsive documents.  December 1, 2008 Letter from DePasquale to Collyard, Declaration of Megan DePasquale (Document 613) ("DePasquale Decl.") Ex. 2.  Its search of the Customer Care calls similarly revealed nothing responsive.  January 26, 2008 Letter from Depasquale to Collyard, Depasquale Decl. Ex. 3.

By December 15, 2008, Experian's promised production date for Customer Care emails had passed, but Experian had not yet completed production.  That is what the Magistrate Judge referred to as Experian having "broken its end of the bargain" – not completing production by the date promised – thereby making the discovery dispute ripe for a motion to compel.[2]  Order at 28.  Nonetheless, Plaintiffs took no action.

In January 2009, Experian produced the remaining documents.  Order at 20-21.  Plaintiffs then decided to press for a larger production, threatening a motion to compel.  *See* January 26, 2009 Letter from DePasquale to Collyard, DePasquale Decl. Ex. 3

---

[2] Plaintiffs attempt to distort the Magistrate Judge's language regarding the timing of Experian's production into a condemnation of the *scope* of Experian's production.  *See* Fair Isaac's Objections ("Objections") at 1.  However, the Magistrate Judge's point is clear and simple: that Experian had not completed production on December 15 made these issues ripe for a motion on that date, yet Plaintiffs failed to act.

Doc# 3054264\1

(responding to Plaintiffs' threat).  Experian refused, Plaintiffs brought their motions for leave and to compel, and the Court heard the parties' arguments in a two-and-a-half hour hearing on February 23, 2009.  The Magistrate Judge denied Plaintiffs' motion for leave and, as a result, the motion to compel as well.

## DISCUSSION

**I.**    **Plaintiffs Cannot Show Good Cause to Modify the Scheduling Order After Failing to Meet the Magistrate Judge's Deadline for Non-Dispositive Motions**

### A.    Standard of Review

"The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential."  *Fair Isaac Corp. v. Equifax et al.*, Sept. 25, 2007 Order (Document 210) (D. Minn. 2007) (citing *Reko v. Creative Promotions, Inc.*, 70 F.Supp.2d 1005, 1007 (D. Minn. 1999)).  The district court must affirm a magistrate judge's order unless it is "clearly erroneous or contrary to law."  FED. R. CIV. P. 72(a).  "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996).

Pursuant to Federal Rule 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent."  Courts have broad discretion to deny discovery motions filed outside of the schedule.  *See, e.g.*, *Bredemus v. Int'l Paper Co.*, 252 F.R.D. 529, 534 (D. Minn. 2008).  The standard for good cause to act outside of the court's schedule is an "exacting one."  *Boston Scientific Scimed, Inc. v. EV3, Inc.*, Civ.

6

No. 05-651 (JNE/JSM), 2007 WL 2493117, at *8 (D. Minn. Aug. 29, 2007).  This is because of the critical role played by scheduling orders in efficiently managing the courts' heavy caseloads.  *Shovein v. SGM Group USA, Inc.*, Civ. No. 06-1553 (RLE), 2008 WL 5459185, at *3 (D. Minn. May 13, 2008).  The Eighth Circuit has ruled that there is no good cause to modify a court's schedule if a party's delay in seeking leave to amend is "unwarranted," such as when the party does not file the motion for months after learning of the basis for the motion.  *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008).

Courts routinely have concluded that motions to compel discovery filed after the close of discovery are "untimely" and should not be granted.  *See, e.g.*, *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646-47 (7th Cir. 2001) (motion to compel filed one month after discovery closed); *Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.*, 146 F.3d 983, 992 (D.C. Cir. 1998) (motion to compel filed after discovery closed and deadline for motions passed); *see also Bredemus*, 252 F.R.D. at 534 (motion filed after close of discovery).

### B.    Plaintiffs Failed to Act Diligently and Cannot Now Demonstrate Good Cause by Accusing Experian of Delay

This dispute relates to discovery requests served in January and June, 2007.  Order at 3, 6.  The deadline for non-dispositive motions was December 22, 2008 (though the parties agreed to file any final motions by December 15).  *See* Order at 27.  However involved the parties' negotiations might have been, approximately twenty-two months is sufficient time to identify and move on any disagreements.  Yet Plaintiffs did not bring a

7

motion, or even inform the Court that a dispute existed, until after the non-dispositive motion deadline.  *See* Order at 33-34.  Nor did Plaintiffs move, before the deadline, to extend the deadline to allow its motion to compel to be brought once Plaintiffs considered it ripe.  Order at 34.  As Magistrate Judge Mayeron noted, Fair Isaac "apparently believ[ed] it could bring its motion to compel anytime it was ready."[3]  Order at 34.

The Magistrate Judge was right to find no good cause to reopen the discovery schedule because nothing prevented Plaintiffs from complying with it.  As described in the briefing below, Plaintiffs' argument that they were unaware of the documents at issue until after the deadline was simply false, and was properly rejected.  *See* Experian's Opposition at 9-10.  Plaintiffs did not learn of the existence of any new source of relevant documents after the close of fact discovery or the Court's non-dispositive motion deadline.  Rather, the very documents Plaintiffs presented to the Magistrate Judge in support of their motions make clear that Plaintiffs were well aware of the information sources at issue and of Experian's refusal to conduct the massive searches Plaintiffs requested.  *Id.*[4]

---

[3] Plaintiffs claim that they reserved the right to do so in correspondence with Experian. Objections at 9.  As an initial matter, Experian never agreed that Plaintiffs could file motions out of time, and Experian lacked the power to agree that the Magistrate would extend her schedule to allow Plaintiffs to bring such motions.  In any event, Plaintiffs' claim that the Magistrate Judge "overlooked" their assertion of rights is simply wrong. The Magistrate Judge considered and rejected it.  *See* Order at 32.

[4] All Plaintiffs claim to have learned late was the manner in which Experian searched for certain emails (*i.e.*, reviewing emails coded in three drop-down menu categories: Credit Score Info, General, and Other – the only categories likely to contain responsive information).  Objections at 7-8.  Plaintiffs make no suggestion that this was not a reasonable method designed to identify responsive documents.

Nonetheless, Plaintiffs seek to excuse their failure to bring a timely motion by claiming deception or delay by Experian.  Objections at 2-3.  In denying motions for leave to amend scheduling orders, courts consistently reject the argument that the moving party's delay is excused by allegedly dilatory conduct by the opposing party.  *See, e.g., Klugel v. Clough*, 252 F.R.D. 53 (D.D.C. 2008) (rejecting argument that delay was excused by movants' efforts to resolve discovery dispute); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 559 F. Supp. 2d 947, 975 (W.D. Wis. 2008) (rejecting argument that delay was excused because opposing party "stonewalled"); Experian's Opposition at 13-14 (citing additional cases); Order at 29 (same).

Plaintiffs cite only one case to the contrary.  However, that case, *Industrial Risk Insurers v. D.C. Taylor Co.*, involved a failure to even provide *responses* to discovery requests before the deadline.  2008 WL 2219932, at *2-3 (N.D. Iowa, May 28, 2008). Here, Plaintiffs received Experian's responses well over a year *before* the deadline, yet allowed it to pass.  As *Industrial Risk* itself noted, leave should not be granted in such a situation.  *See id.* at *3.

## C.  Experian's Search Was Proper and Complete

Even if the Court were to consider Plaintiffs' allegations, Plaintiffs have no legitimate complaint about Experian's diligence, truthfulness, or compliance with the parties' agreements.

As an initial matter and as discussed in the briefing below, Experian's productions prior to the fact discovery deadline included all materials that Experian agreed to produce

in response to Plaintiffs' requests.  Nonetheless, when Plaintiffs sought additional

materials, Experian agreed in good faith to limited additional searches.

Plaintiffs challenge the Order on the basis that the Magistrate Judge "failed to

note" that Experian did not conduct or complete a promised search.  Objections at 7-9.

But Plaintiffs' argument was presented explicitly to the Magistrate Judge in the briefing

and hearing on Plaintiffs' motions, and rejected.  Transcript of February 23, 2009

Hearing (Document 618) at 52-53.  Plaintiffs' complaint, therefore, appears to be not that

the Magistrate Judge was unaware of key facts, but rather that she did not write her

opinion as Plaintiffs would have liked.  That is no basis to reverse.

Plaintiffs also complain that Experian produced only documents showing

*trademark* confusion, of which there were very few if any.  However, that is both what

Experian promised *and* the only material relevant here.  Experian objected to Plaintiffs'

"confusion" requests on relevance and burden grounds, among others, because they

called for all documents relating to any type of "confusion" (and not just confusion as

defined in section 43(a) of the Lanham Act) and therefore were overbroad.  Experian

agreed only to produce documents reflecting actionable trademark confusion.  *See, e.g.*,

May 30, 2008 Letter from DePasquale to Klein, Collyard Decl. Ex. 15.

Evidence of general, non-trademark "confusion" is not relevant to Plaintiffs'

trademark claims.[5]  *See, e.g., Everest Capital Ltd. v. Everest Funds Management, LLC*,

393 F.3d 755 (8th Cir. 2005) ("The ultimate inquiry always is whether, considering all

---

[5] Indeed, the examples Plaintiffs cite in their Objections are *not* examples of source
confusion arising from the use of any trademark, but rather of general confusion
regarding the existence of multiple scores in the marketplace.  *See* Objections at 8.

10

the circumstances, a likelihood exists that consumers will be confused about the <u>source</u> of the allegedly infringing product." ) (emphasis added); *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 195 (1st Cir. 1980).  This is particularly so in a marketplace such as that for credit scoring, which is full of non-actionable "noise" in the form of general, non-trademark confusion about credit scores.  *See Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 768 (E.D. Mich. 2003) (experts must control for "noise" in confusion surveys); *Procter & Gamble Pharmaceuticals, Inc. v. Hoffman-La Roche Inc.*, No. 06-cv-0034(PAC), 2006 WL 2588002, at *24 (S.D.N.Y. Sept. 6, 2006) (same).

## II.      The Magistrate's Findings of Fact Were Not Clearly Erroneous

Plaintiffs also claim that the Magistrate misunderstood certain facts.  Objections at 4-7.  But Plaintiffs are simply re-arguing issues presented below.  Plaintiffs disagree with what the Magistrate Judge found, but these quibbles are not clear error.  *See Chakales*, 79 F.3d at 728 (defining "clearly erroneous" standard).  Importantly, Plaintiffs cannot dispute the Magistrate Judge's key finding: that as of the deadline Plaintiffs were aware of this dispute, yet failed to bring it to the Court's attention.

Nonetheless, Plaintiffs cite four allegedly erroneous findings by the Magistrate:

- First, that Plaintiffs knew by August 2, 2007 that Experian would not search non-searchable email databases or conduct a company-wide search for emails. Objections at 4-5.

Plaintiffs admit that "Fair Isaac never claimed that Experian was supposed to search for emails in databases that are not searchable electronically or that Experian was supposed to do a company-wide search of emails," but nonetheless cite the Magistrate

Doc# 3054264\1

Judge's accurate finding to claim that she must have ignored the parties' later negotiations regarding searchable "Customer Care" emails. Objections at 4-5. This is a *non sequitur.* The Court addressed those negotiations – and found that Plaintiffs had failed to diligently pursue them. *See* Order at 26-27.

- Second, that Plaintiffs knew by July 22, 2008 that Experian had not searched its Customer Care emails. Objections at 5.

Plaintiffs claim that Experian did not "acknowledge" that it had not searched its Customer Care emails until September 18, 2008. However, Experian had specified as early as August 2007 that it would search only certain, defined sources (not including Customer Care emails), and at the fact discovery deadline had accordingly not produced any such emails. The Magistrate Judge committed no clear error in finding that Plaintiffs knew Experian's position by July 22, 2008.

Moreover, that Experian had not searched these databases was further discussed in a deposition on July 31, 2008, and emails on August 28 and September 18. *See* Deposition of David Williams, Collyard Decl. Ex. 6, at 513-19; August 28, 2008 Email from Collyard to DePasquale, DePasquale Decl. Ex. 5; September 18, 2008 Email from DePasquale to Collyard, Collyard Decl. Ex. 22. Whether the date is July 22, July 31, or Sept. 18, Plaintiffs knew Experian's position months in advance of the non-dispositive motion deadline.

- Third, that on September 18, 2008 Experian made clear that it would not search for consumer emails within its NCAC division. Objections at 5-6.

12

Plaintiffs claim the Magistrate's statement was clear error, because she found that Experian *would not* search NCAC for consumer emails, when in fact Experian *could not*.[6] *See* Objections at 5-6.  From this, Plaintiffs make another *non sequitur* assertion: that the Court therefore must have found that Plaintiffs were on notice as of September 18 of a possible dispute with respect to *Customer Care* emails.  This is not the case – NCAC and Customer Care are rightfully addressed separately in the Magistrate's Order.  *See* Order at 28 (finding that any dispute as to NCAC emails was ripe no later than September 18, and that any dispute as to Customer Care emails was ripe no later than December 15).

- Fourth, that the parties only agreed to a sampling of Customer Care emails. Objections at 6-7.

Contrary to Plaintiffs' objections, the Magistrate was very clear on the facts and negotiation history.  As she discussed, and as Plaintiffs concede elsewhere in their Objections, Experian had objected to performing a company-wide search of emails, and after the parties were unable to reach an agreement on a keyword searching technique, Experian conducted its review by relying on emails coded in any of three relevant categories.  *See supra* at 8, n.4.  While Plaintiffs may now want Experian to go back and do additional searches, the fact is that Plaintiffs knew that there was a dispute, knew that there was a deadline, and yet did nothing.

---

[6] NCAC does not receive such emails, which are instead routed to Customer Care. September 18, 2008 Email from DePasquale to Collyard, Collyard Decl. Ex. 22.

13

### III.      Judicial Efficiency Is NOT Promoted by Ignoring Scheduling Orders

Finally, Plaintiffs claim that granting leave to conduct additional discovery would promote judicial efficiency.  This claim fails for three reasons.

First, Plaintiffs were not, as they claim, forced to choose between waiting for the matter to become ripe or following the Court's scheduling order.  As the Magistrate Judge noted, had Plaintiffs brought their motion prior to the deadline, the Court would have addressed it.  *See* Order at 32.  Moreover, even if Plaintiffs *had* believed that they could not bring a motion by December 22, 2008, they could have asked the Magistrate Judge for more time.  *See* Order at 32-33.  Instead, Fair Isaac allowed the deadline to expire.

Second, it does not promote judicial efficiency to allow a party to ignore a court's schedule.  The inefficiencies of Plaintiffs' chosen path are evident.  Fact discovery has been closed for a year, non-dispositive motions *and* dispositive motions all have been filed and decided, and trial is approaching – yet now Plaintiffs propose returning to fact discovery.

Third, Experian's production was both reasonable and in accordance with the parties' agreements.  Plaintiffs are represented by experienced counsel; if they considered Experian's responses insufficient or the discovery sought sufficiently important, they were perfectly capable of bringing the matter before the Court pursuant to the schedule that the Court and all the parties lived by.  They chose not to.

14

## CONCLUSION

Plaintiffs fail to justify the extraordinary relief they seek, and their Objections to the Magistrate Judge's Order should be overruled.

Respectfully submitted this 13th day of August, 2009.

**Lindquist & Vennum PLLP**

By:  s/ Mark A. Jacobson
        Mark A. Jacobson (MN Bar #188943)
        Mark H. Zitzewitz (MN Bar #0289073)

4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 371-3211
Fax: (612) 371-3207
mjacobson@lindquist.com
mzitzewitz@lindquist.com

– and –

**White & Case LLP**
M. Elaine Johnston
Robert A. Milne
Christopher J. Glancy
Jack E. Pace III
1155 Avenue of the Americas
New York, NY 10036-2787
Tel: (212) 819-8200
Fax: (212) 354-8113
mejohnston@whitecase.com
rmilne@whitecase.com
cglancy@whitecase.com
jpace@whitecase.com

*Attorneys for Defendant Experian Information Solutions, Inc.*

Doc# 3054264\1