UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Fair Isaac Corporation and
myFICO Consumer Services, Inc.,

        Plaintiffs,

  v.                              **MEMORANDUM OPINION AND ORDER**
                                     Civil No. 06-4112 ADM/JSM

Experian Information Solutions Inc.;
Trans Union, LLC; VantageScore
Solutions, LLC; and Does I through X,

        Defendants.

_____

Ronald J. Schutz, Esq., Randall Tietjen, Esq., Michael A. Collyard, Esq., Laura E. Nelson, Esq., Robins, Kaplan, Miller & Ciresi, LLP, Minneapolis, MN, on behalf of Plaintiffs.

Mark A. Jacobson, Esq., Mark H. Zitzewitz, Esq., Lindquist & Vennum PLLP, Minneapolis, MN, and M. Elaine Johnston, Esq., Robert A. Milne, Esq., Christopher J. Glancy, Esq., Jack E. Pace, III, Esq., White & Case LLP, New York, NY, on behalf of Experian Information Solutions Inc.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Plaintiffs Fair Isaac and myFico Consumer Services, Inc.'s (collectively "Fair Isaac") Objections [Docket No. 695] to Magistrate Judge Janie S. Mayeron's July 10, 2009 Order [Docket No. 692], which denied Fair Isaac's Motion to Seek Leave to File Motion to Compel and Motion to Compel [Docket No. 569]. Fair Isaac's Motion sought to compel Defendant Experian Information Solutions Inc. ("Experian") to produce consumer confusion documents responsive to Fair Isaac's discovery requests. For the reasons stated below, Fair Isaac's Objections are overruled.

## II. BACKGROUND

The facts and procedural history relevant to this discovery dispute are set forth thoroughly in Judge Mayeron's July 10, 2009 Order and are incorporated by reference. Accordingly, only a brief version of the relevant facts and procedural history is presented here.

Fair Isaac commenced this action in October 2006, asserting, among several other types of claims, claims of trademark infringement and unfair competition under federal and state law. In pursuit of these claims, Fair Isaac sought discovery beginning in January 2007 of documents relevant to "consumer confusion." See July 10, 2009 Order at 3; Pls.' Mot. to Seek Leave to File Mot. to Compel and Mot. to Compel at 1. Over the next two years, Fair Isaac and Experian had many disagreements on the proper scope of Fair Isaac's requests for consumer confusion documents, the adequacy of Experian's responses, and what exactly the parties had agreed to regarding the discovery requests in their discussions. See July 10, 2009 Order at 4-18. Although the parties repeatedly attempted to resolve their discovery disputes, they were unsuccessful, and Fair Isaac ultimately filed the current Motion on January 29, 2009—the memorandum and supporting declaration were not filed until February 9, 2009—asking for leave to file a motion to compel Experian to produce consumer confusion documents.[1] Specifically, Fair Isaac seeks an order compelling Experian to produce all email communications that Experian and its agents have had with consumers, all call logs and call recordings from Experian's Customer Care Center, and all call logs and call recordings from Experian's National Consumer Assistance Center.

---

[1] Because the Motion was filed after the non-dispositive motions deadline of January 5, 2009, it is styled as a motion to seek leave to file a motion to compel. See 7th Am. Pretrial Scheduling Order [Docket No. 518].

## III. DISCUSSION

A.  **Standard of Review**

The standard of review applicable to an appeal of a magistrate judge's order on a non-dispositive issue is extremely deferential. Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). The district court must affirm an order by a magistrate judge unless it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir.1996). "A decision is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law or rules of procedure." Knutson v. Blue Cross & Blue Shield of Minn., 254 F.R.D. 553, 556 (D. Minn. 2008) (quoting Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co., 592 F. Supp. 2d 1087, 1093 (N.D. Iowa 2008)).

B.  **Fair Isaac's Objections**

The scheduling order provides that "[a]ll non-dispositive motions and supporting pleadings (affidavits, memorandum of law, and proposed order), including those which relate to discovery and any request for extension of this Pretrial Scheduling Order, shall be served, filed[,] and HEARD by [January 5, 2009]." 7th Am. Pretrial Scheduling Order at 4. Judge Mayeron denied Fair Isaac's Motion, finding that Fair Isaac failed to show, as required by Rule 16(b)(4) of the Federal Rules of Civil Procedure, that good cause existed to warrant modifying the scheduling order to consider a motion to compel filed after that deadline had passed. Fair Isaac

argues the finding that good cause was lacking is clearly erroneous because Judge Mayeron "overlooked two key facts."

First, Fair Isaac argues that Judge Mayeron failed to recognize that although the parties agreed as recently as November 18, 2008, that Experian would "search all of its Customer-Care emails going back to July 2004[,] . . . Experian never conducted that search.  Instead—without ever telling Fair Isaac—Experian independently chose to search only three categories of emails from a drop-down menu in its Customer-Care databases."  Objections at 7.  Fair Isaac contends that Judge Mayeron "should have recognized . . . the undisputed fact that the parties agreed on November 18, 2008, that Experian would search all of the emails that Experian represented were routed through its Customer Care center and are stored in electronically searchable databases."  Id. at 3.  In addition, Fair Isaac argues, Experian did not disclose that "its interpretation of confusion was much narrower than what the parties had previously agreed to and was also contrary to the law."  Id. at 8.  Fair Isaac concludes that "[b]ecause Experian [did not] disclose the limited nature of its searches until after the non-dispositive motion deadline, this gave Fair Isaac good cause to bring its motion to compel after that deadline."  Id.

Contrary to Fair Isaac's assertions, Judge Mayeron considered this information, including the related negotiations and communications, in evaluating this lengthy discovery dispute:

> The long-and-short of [the parties' numerous communications in the last half of 2008] was that Fair Isaac wanted Experian to produce its entire database of Customer Care emails," whereas Experian "would only agree to a sampling process of emails which it promised to start on December 1 and complete by December 15, 2008; and even as to that, Experian did not produce any Customer Care emails by December 15, 2008, as it had promised.

4

> These facts demonstrate that Fair Isaac was well aware of Experian's position on the extent of its search for customer confusion emails . . . before the non-dispositive motion deadline.

July 10, 2009 Order at 26. Judge Mayeron thoroughly considered and rejected Fair Isaac's contention that the communications between the parties demonstrates the parties reached an understanding whereby Experian agreed without qualification to search *all* emails that were routed through its Customer Care center.

The critical portions of email exchanges between the parties regarding this issue are found in three emails: one from Fair Isaac's attorney, Michael Collyard, dated November 14, 2008; a reply from Experian's attorney, Jack Pace, dated November 14, 2008; and a reply from another Experian attorney, Megan DePasquale, dated November 18, 2008. See Collyard Decl. [Docket No. 604], Ex. 31. In the Collyard email, Fair Isaac states:

> With respect to Customer Care E-mails, you agreed before to search the entire universe of emails and produce all responsive documents. . . . I understand that by today[,] you were going to try and [sic] make a production of emails from October and November of 2006 and 2007, but we haven't received those documents. We would like you to produce that universe of documents today if you can and the remainder of the responsive documents on a rolling basis beginning immediately, with the full production completed by the end of the month.

Id. at 2. Experian responded in the Pace email: "The rest of the comments in your last two paragraphs are fine too, except for the deadlines. . . . Megan is back on Monday, and we'll send you some dates." Id. at 1-2. Experian responded further in Megan DePasquale's email:

> We have discussed possible review scenarios with our client within the parameters we have discussed with you (as you indicate below, we were unable to reach an agreement on a focused review based on term searches), and we have determined that email collection processes will take longer than previously anticipated based on our earlier assumptions about a more narrow review. However, we

5

>believe we can begin this production during the week of December 1st, and can complete it the week of December 15.

Id. at 1.

While the Pace email could imply that Experian agreed to, in the words of the Collyard email, "search the entire universe of emails and produce all responsive documents," there is no clear indication that the parties reached a definitive understanding on either (1) what would constitute evidence that is "responsive" to the consumer confusion issue or (2) how Experian would go about conducting its search of emails to identify those that were responsive. The record is unclear on whether the parties waffled on their positions, reneged on previous agreements, or, more likely, simply misunderstood each other. See Mot. to Compel Hr'g Tr. [Docket No. 618] 91:19-20 ("COLLYARD: . . . . So we seem to be two ships passing in the night as to what [the] protocol was."). Given this lack of clarity, Judge Mayeron's decision cannot be found to be clearly erroneous.

Fair Isaac's next argument is that Judge Mayeron "overlooked that the parties agreed to reserve all of Fair Isaac's rights to bring its motion later." Objections at 9. At the February 23, 2009 hearing, Fair Isaac explained:

>[T]he whole reason why we didn't move [to compel sooner] is because we agreed, we understand [Experian is] going to make burden arguments. Give me what you . . . will actually agree to. I'll take that as a minimum. I'll look at it and see if it's enough. If it's not, then we're probably going to have to go back to the Court.

Mot. to Compel Hr'g Tr. 91:22-92:3. Judge Mayeron did not, as Fair Isaac contends, "overlook" this so-called reservation of rights agreement. Rather, Judge Mayeron properly rejected the purported reservation of rights as an adequate basis for a finding of good cause, concluding that "while [the alleged agreement] may have preserved Fair Isaac's right to seek down the road

[certain materials], it did not and could not reserve its right to seek these materials after the . . . deadline [for] non-dispositive motions had passed." July 10, 2009 Order at 32.

The scheduling order is explicit that "[t]he schedule may be modified only upon formal motion and a showing of good cause." 7th Am. Pretrial Scheduling Order at 1.  If an agreement between litigants (with no court approval) to reserve their rights necessarily established good cause, the deadlines imposed by a court's scheduling order would become meaningless as the reservation of rights would itself be a sufficient basis for an extension.  Simply put, "stipulations between the parties do not provide a basis for amending a scheduling order. . . .  To allow an amendment of a scheduling order on such a basis would render the good cause standard useless." Ebel v. Eli Lilly & Co., 248 F.R.D. 208, 209 (S.D. Tex. 2007); see also Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc., No. 1 03CV537, 2005 WL 6043267, at *3 (M.D.N.C. July 7, 2005) (rejecting a plaintiff's argument that an agreement between the parties to extend the deadline for disclosure of expert reports, together with the allegation that the defendant "deliberately planned . . . to sandbag" the plaintiff and renege on that agreement by objecting to the plaintiff's motion for an extension, furnished the plaintiff with good cause for seeking the extension); Chiropractic Alliance of New Jersey v. Parisi, 164 F.R.D. 618, 619 (D.N.J. 1996) (concluding that the deadline for filing of dispositive motions is established by the scheduling order and cannot be extended by stipulation of the parties without court approval).

Ultimately, though, the more significant detractor to Fair Isaac's assertion of good cause to bring its Motion after the non-dispositive motions deadline is the lack of diligence.  The Court agrees with Judge Mayeron that regardless of Experian's alleged bad faith, Fair Isaac had

received no discovery of Customer Care emails by the agreed-upon date of December 15, 2008, which alerted Fair Isaac that seeking judicial intervention might be necessary:

> [Fair Isaac] knew by November 18, 2008 that Experian was not even going to start the production of its Customer Care emails until December 1, 2008, and that this limited production would not be completed until December 15, 2008, one week before non-dispositive motions could be filed (assuming they were heard on January 5, 2009, the deadline for such motions). But again, Fair Isaac took no action to seek relief from this Court by timely filing a motion to compel *or a request that the deadline for non-dispositive motions be extended* to give it additional time to file a motion to compel this discovery.

July 10, 2009 Order at 27 (emphasis added) (footnotes omitted). Fair Isaac counters that it could not have known whether the promised production would prove to be satisfactory until it actually received that production, which did not happen until January 20, 2009, and, thus, a motion to compel would not have been "ripe" before that time. Objections at 11. But Fair Isaac simply ignores the agreed-upon deadline of December 15, 2008. That date passed, as did the January 5, 2009 deadline for non-dispositive motions, and Fair Isaac still had not received the promised production. Yet Fair Isaac did not request an extension for the non-dispositive motions deadline in the event that the production, when it ultimately came, might prove to be insufficient in Fair Isaac's view. In light of the long and tortured history of discovery disputes between the parties, it was close to inevitable that Fair Isaac and Experian would disagree on whether the production was adequate. While Fair Isaac's apparent optimism that the parties would have an ability to reconcile their disagreements without the Court's assistance is admirable, scheduling orders serve a purpose and counsel are expected to adhere to the established deadlines. As Judge Mayeron recognized:

> "[I]f the conduct of a respondent to discovery necessitates a motion to compel, the requester of the discovery must protect himself by timely proceeding with the motion to compel. If he fails to do so, he acts at his own peril. He must not expect the Court to extend discovery . . . because of the failures of the other party to respond, even if that failure is in bad faith."

July 10, 2009 Order at 34 (quoting Wells v. Sears Roebuck & Co., 203 F.R.D. 240, 241 (S.D. Miss. 2001)).

Repeating the accusation that Experian "mislead[] Fair Isaac" and reneged on its previous agreements regarding discovery, Fair Isaac argues that if the Court affirms Judge Mayeron's decision, it will condone Experian's alleged bad conduct and set bad precedent for how future litigants will conduct resolution of discovery disputes. See Objections at 12-13. But allegations of misconduct in discovery can be handled by the Court in a number of ways, and these mechanisms will guard against the evils Fair Isaac ominously foreshadows.

This case was filed nearly three years ago, fact discovery closed more than a year ago, all pretrial motions (both non-dispositive and dispositive) have been heard and decided, and trial is set to begin in only five weeks. Rule 16(b) gives a district court wide discretion to advance cases before it and simplify the procedure before the case is presented to the jury. See O'Malley v. Chrysler Corp., 160 F.2d 35, 36 (7th Cir. 1947). Overruling the Objections and denying Fair Isaac leave to move to compel serves those ends.[2]

---

[2] The Court is aware of two pieces of evidence that are already present in the record and were considered in the summary judgment motion on Fair Isaac's trademark claims. See July 24, 2009 Order at 43, n.16. The first piece of evidence consists of eleven pages of emails from consumers to Experian asking questions that tend to show that some consumers may have been confused about whether they were buying an Experian product rather than a Fair Isaac product. See Collyard Decl., Mar. 5, 2009 [Docket No. 627], Ex. 35. The other piece is a call script Experian created for its telephone operators that includes a section advising operators on how to respond when a consumer calls and says, "I want a refund because this is not a FICO score." Id., Ex. 7. These two pieces of evidence are noteworthy not because they directly relate to the

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Objections [Docket No. 695] are **OVERRULED**.

BY THE COURT:


      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 31, 2009.

---

question of good cause but because, as suggested by July 24, 2009 Order, they relate to the actual confusion issue and suggest that the additional consumer confusion evidence that Fair Isaac seeks by its Motion might very well be cumulative.  It therefore is difficult to comprehend how the production of additional consumer confusion evidence, to the extent that it even exists, would materially impact the issues in this case.