UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

FAIR ISAAC CORPORATION; and             CIVIL NO. 06-4112 (ADM/JSM)
MYFICO CONSUMER SERVICES, INC.,

    Plaintiffs,

v.                                                                                            <u>ORDER</u>

EXPERIAN INFORMATION SOLUTIONS, INC.;
TRANS UNION, LLC; and
VANTAGESCORE SOLUTIONS, LLC,

    Defendants.

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came on before the undersigned upon plaintiffs' Motion for Reconsideration [Docket No. 680]. The motion was decided on the papers.

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, now makes and enters the following Order.

**IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Reconsideration [Docket No. 680] is **GRANTED** based on the additional evidence presented by plaintiffs.

2. As a result of this Order, plaintiffs will not be required to produce to defendants an unredacted copy of Second Amended Privilege Log Entry 829.

3. As a result of this Order, plaintiffs will not be required to produce an unredacted copy of Second Amended Privilege Log Entries 494, 829, 4415, 4533, 4459, 4664, 4670, 4687 as it relates to topic "1". However, if they have not already done so, on or before September 14, 2009, plaintiffs shall provide a copy of these documents to defendants with the redactions of the contents of topic "2" removed.

Dated:       September 4, 2009

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**MEMORANDUM**

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

On March 23, 2009, this Court issued an Order [Docket No. 658], which in part, addressed Defendants' Motion to Compel Plaintiffs to Produce Documents that Plaintiffs are Withholding as Privileged Without Basis [Docket No. 506] and ordered plaintiffs to produce to defendants plaintiffs' Privilege Log Entries 494, 829, 4415, 4533, 4459, 4664, 4670.  The basis of the Court's Order was that plaintiffs had failed to provide the Court with adequate information to sustain their claim of privilege with respect to the documents reflected by these Privilege Log Entries.  In particular, as to Second Amended Privilege Log Entry 829, while the Court found that the "legal options" portion of the notes from the March 22, 2006 meeting reflected legal advice being given to the employees present at the meeting, the Court concluded that privilege was not applicable, as plaintiffs had failed to indicate why recipients Mary M. Busch and Colin Matthews needed to know the information in conjunction with their employment.  See March 23, 2009 Order at pp. 54-56.

As to Second Amended Privilege Log Entries 494, 4415, 4459, 4664 and 4670 (which are all copies of the same document--although 4664 lacks certain dates and is in different format), the Court determined that the redacted portions dealing with the first topic point ("topic '1'") listed on these documents constituted attorney-client

communications based on Renee Jackson's[1] representations and this Court's in camera review of the documents.  Id. at p. 56.  However, the Court again concluded that Second Amended Privilege Log Entries 494, 4415, 4459, 4664 and 4670 lost their privileged status as plaintiffs had provided no information as to why one of the recipients, Matthews, needed to know the information contained in the first topic point.[2]  Id.

Following issuance of this Order, plaintiffs made a written request to the Court for permission to file a motion for reconsideration with respect to the Court's Order requiring plaintiffs to produce Privilege Log Entries 494, 829, 4415, 4533, 4459, 4664, 4670.  [Docket No. 673].  On April 3, 2009, this Court granted plaintiffs permission to file their motion for reconsideration.  [Docket No. 679].  Plaintiffs then filed the instant motion for reconsideration.

Plaintiffs have challenged the Court's determination with respect to Privilege Log Entries 494, 829, 4415, 4533, 4459, 4664, 4670 on two grounds: (1) the Court improperly found that the plaintiffs had waived the attorney-client privilege since defendants never raised the waiver issue; and (2) based on evidence provided to the Court as part of their motion for reconsideration, plaintiffs had not waived the attorney-client privilege as to these entries.  See Fair Isaac's Memorandum of Law in Support of

---

[1]  Renee Jackson was at all times for the purposes of the defendants' motion to compel and motion for reconsideration, an Associate General Counsel for Fair Isaac.

[2]  This Court notes that Fair Isaac has not requested reconsideration of this Court's finding that topic "2", redacted from that Second Amended Privilege Log entries 494, 4415, 4459, 4664 and 4670, was not privileged, as it did not reflect any legal advice based on this Court's in camera inspection.  See March 23, 2009 Order at pp. 56-57.

3

its Motion for Reconsideration of Order Compelling Production of Privileged Documents ("Pls. Mem.") [Docket No. 682] at pp. 3-11.

## II.     ANALYSIS

### A.     Scope of Court's Review

Plaintiffs complained that because defendants never raised the issue of waiver in their motion to compel, Fair Isaac was not required to directly respond to that issue. See Pls. Mem. at p. 5. The Court rejects this assertion. The Court starts with the premise that "[t]he party asserting the attorney-client privilege or the work-product doctrine bears the burden to provide a factual basis for its assertions." Triple Five of Minnesota, Inc. v. Simon, 212 F.R.D. 523, 528 (D. Minn. 2002) (citing Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985)); see also Jones v. Murphy, 256 F.R.D. 510, 513 (D. Md. 2008) (quoting In Re: Grand Jury Subpoena, 341 F.3d 331, 335 (4th Cir. 2003)) ("The burden is on the proponent of the privilege, here the defendants, to demonstrate 'not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged [(confidential)] and that the privilege was not waived.'") (citations omitted); Turner v. Moen Steel Erection, Inc., NO. 8:06CV227, 2006 WL 3392206 at *6 (D. Neb. Oct. 05, 2006) (citing Kansas-Nebraska Natural Gas v. Marathon Oil Co., 109 F.R.D. 12, 20 (D. Neb. 1985)) ("The party claiming the privilege must show not only that the attorney-client privilege was applicable absent any waiver, but also that a waiver did not occur."); Verizon California Inc. v. Ronald A. Katz Technology Licensing, L.P., 266 F. Supp.2d 1144, 1150 (C.D. Cal. 2003) ("Thus, Verizon has not met its burden of demonstrating it has not waived its attorney-client privilege. . . ."). In its March 23, 2009 Order, this Court was faced with the issue of whether the documents comprising Privilege Log Entries 494, 829, 4415, 4533, 4459,

4

4664, 4670 were documents properly being withheld by plaintiffs on the basis of their claim that they were protected by the attorney-client privilege.  In support of their motion to compel, defendants argued that the documents were not privileged as business matters predominated the communications and pointed to the fact many of the entries in plaintiffs' privilege log did not include lawyers as authors or recipients.  Indeed, in examining Privilege Log Entries 494, 829, 4415, 4533, 4459, 4664, 4670, the Court notes that the entries lacked any mention of an attorney as being the author or recipient of the documents.  <u>See</u> Declaration of Michael A. Collyard ("Collyard Decl.") [Docket No. 535], Ex. 6 (Fair Isaac's Privilege Log for Purpose of Motion to Compel).  Based on defendants' characterization as to the business nature of the documents, in conjunction with their argument and this Court's observation that many entries did not include lawyers, the issue of waiver was squarely before the Court.

More to the point, however, recognizing that the application of the attorney-client privilege has the potential to bar the discovery of otherwise relevant information, this Court has a duty, based on the facts presented to it, to ensure that the privilege has been properly invoked, particularly where the privilege log made no mention of attorney involvement and gave no hint as to why a particular recipient was privy to what were supposedly attorney-client communications.

Thus, based on the evidence provided by plaintiffs, it was completely proper for this Court to conclude that by divulging the contents of Privilege Log Entries 494, 829, 4415, 4533, 4459, 4664, 4670 to non-lawyers, plaintiffs had not provided sufficient facts to support their withholding of the documents and had waived the privilege.

The Court will now address the additional evidence provided by plaintiffs in conjunction with the instant motion to determine whether the attorney-client privilege

5

has been properly asserted with respect to Privilege Log Entries 494, 829, 4415, 4533, 4459, 4664, 4670.

> **B.** **Second Amended Privilege Log Entry 829**

Second Amended Privilege Log Entry 829 contains notes regarding a meeting held with Fair Isaac employees in which attorney Jackson was asked to give legal advice about VantageScore after its launch. See Jackson Decl., ¶ 5.4; see also Second Declaration of Renee Jackson ("2nd Jackson Decl.") [Docket No. 683], ¶ 2. The notes reflected Jackson's thoughts and legal advice that she relayed during the meetings. Id. Specifically, the documents reflect legal advice conveyed to plaintiffs, shortly after the launch of VantageScore in March 2006, about their contracts with the credit bureaus, and the courses of action that plaintiffs could take with the bureaus. Id.. ¶ 2. As stated previously, this Court, in its March 23, 2009 Order, ruled that the document could not be withheld pursuant to the attorney-client privilege because plaintiffs had failed to indicate why recipients Mary M. Busch and Colin Matthews needed to know the information in conjunction with their employment.

The Eighth Circuit has determined that a privileged communication in the corporate context does not lose it privileged status if it "is not disseminated beyond those persons who, because of the corporate structure, need to know its contents." Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 609 (8th Cir. 1977). Similarly, other courts have concluded that corporate privileged communications retain their privileged status within a corporation if an employee conveys legal advice received from counsel to other employees or officers of the corporation on a "need to know basis." See, e.g., Southeastern Pennsylvania Transp. Authority v. Caremarkpcs Health, L.P., 254 F.R.D. 253, 262 (E.D. Pa. 2008) ("As the memorandum was only disseminated to those

6

corporate employees in a 'need to know' position, the privilege was not waived."); Scholtisek v. Eldre Corp., 441 F. Supp.2d 459, 464 (W.D.N.Y. 2006) ("In general, whether the dissemination of privileged communications to corporate employees vitiates the privilege is decided by applying a "need to know" standard. . . ."); Deel v. Bank of America, N.A., 227 F.R.D. 456, 460 (W.D. Va. 2005) ("A corporation does not waive its privilege when non-lawyer employees send or receive communications because corporate communications which are shared with those having need to know of the communications are confidential for purposes of the attorney-client privilege."); F.C. Cycles Intern., Inc. v. Fila Sport, S.p.A., 184 F.R.D. 64, 71 (D. Md. 1998) ("The communications retain their privileged status if the information is relayed from a non-lawyer employee or officer to other employees or officers of the corporation on a need to know basis."); Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 633 (M.D. Pa. 1997) ("Communications between corporate counsel and company personnel . . . retain their privileged status if the information is relayed to other employees of officers of the corporation on a need to know basis."). An employee is on a need to know basis, so as to preserve the attorney-client privilege, if he is a policymaker for the corporation (i.e., an executive) or is responsible for the specific subject matter at issue in the communication. See Scholtisek, 441 F. Supp.2d at 464 (quoting Verschoth v. Time Warner Inc., No. 00CIV1339, 2001 WL 286763 at *2 (S.D.N.Y. Mar. 22, 2001)); see also Andritz Sprout-Bauer, Inc., 174 F.R.D. at 633 ("Only when the communications are relayed to those who do not need the information to carry out their work or make effective decisions on the part of the company is the privilege lost.") (citing In re Grand Jury, 758 F. Supp. 1411 (D. Colo. 1991)); Deel, 227 F.R.D. at 460 ("The Court will assume that the executives, Nichols, Boswell, and Ryan, needed to know of the

7

communications, thus BOA did not waive its privilege by sending these documents to the executives."). As such, this Court must determine, based on the new evidence provided by plaintiffs, whether Busch and Matthews needed to know the contents of Entry 829 in order to carry out their employment or make effective decisions on the part of the plaintiffs.

Busch was the "Legal Administrator" for plaintiffs General Counsel's Office. See 2nd Jackson Decl., ¶ 3. She worked with plaintiffs' attorneys and paralegals to process documents and assisted the attorneys in their attempts to advise the plaintiffs efficiently. Id. Entry 829 was provided to Busch so that she could maintain plaintiffs' General Counsel's files. Id. Given that Busch employed as part plaintiffs' General Counsel office to render legal services to plaintiffs, the Court finds that Entry 829 maintained its privileged status even though Busch received the document. See Compulit v. Banctec, Inc., 177 F.R.D. 410, 412 (W.D. Mich. 1997) ("the attorney-client privilege is not lost where a law firm shares privileged information with its associates, legal assistants, and secretaries.") (citing Jack B. Weinstein, Margaret A. Berger, Weinstein's Federal Evidence § 503.07[1], at 503-26 (2d ed.1997) (attorney-client privilege protects communications made to attorney's staff, consultants, and other agents employed in rendering services)).

As to Matthews, the new evidence provided by plaintiffs established that when he received Entry 829, he was the director level manager who oversaw plaintiffs' relationship with the bureaus. See 2nd Jackson Decl., ¶ 4. In particular, Matthews handled plaintiffs' relationship with Equifax and assisted other managers in the day-to-day relationships with the other credit bureaus, including being "intimately" involved in the maintaining and implementing contracts with the credit bureaus. Id. Matthews also

worked with plaintiffs' legal department to handle questions or concerns regarding plaintiffs' contracts with the bureaus. Id.  According to plaintiffs, Entry 829 was provided to Matthews so that he could provide his input to Jackson, who then in turn could provide legal advice to plaintiffs regarding their contracts and relationships with the credit bureaus. Id., ¶ 5.

In their opposition to plaintiffs' motion for reconsideration, defendants pointed to Matthews' deposition, which they claimed showed that he was not knowledgeable about the contracts between plaintiffs and the bureaus, thereby undercutting any assertion by plaintiffs that he played a role in interpreting or making decisions related to the bureau contracts, and that he needed to be involved in the legal analysis underpinning policy decisions.  See Defendants' Memorandum in Opposition to Plaintiffs' Motion for Reconsideration ("Defs.' Mem.") at p. 9.  While Matthews testified in his deposition that he had not read the contract between plaintiffs and Experian, he did state that he did refer to and consult the agreements between Experian and plaintiff.  See Declaration of Megan Depasquale [Docket No. 688] ("Depasquale Decl."), Ex. 2 (Matthews Dep.) at p. 212.  This Court also notes that plaintiffs represented that Matthews handled plaintiffs' relationship with Equifax and assisted with the other bureaus, such as Experian, thereby placing less relevance in Matthews' having not completely read all of the agreements between plaintiffs and Experian.  See 2nd Jackson Decl., ¶ 4.  Moreover, defendants mischaracterized Matthews' testimony by claiming that he stated he could not recall a single reason why he would need to "refer" to the contracts (see Defs.' Mem. at p. 9), when his testimony was only that he could not recall the specific reasons why he had to refer to the contracts between plaintiffs and Experian in the past. See Depasquale Decl., Ex. 2 (Matthews Dep.) at p. 212.

9

Further, defendants' attempt to limit Matthews' involvement in VantageScore to a few conversations in June 2006, (Mathews Dep. at p. 28), does not address his involvement with VantageScore in March of 2006, the date of Entry 829. To the contrary, Mathews' testimony actually supported plaintiffs' argument that he was involved with responding, at least at some level, to VantageScore as part of his employment.[3] Given that Matthews' employment with plaintiffs involved the specific subject matter at issue in the communication -- the contracts and relationships with the bureaus -- and that he was given the documents in order to assist legal counsel in rendering legal advice on this subject, this Court concludes that Entry 829 did not lose its privileged status merely because Matthews was given the copy of the document.

For all of the reasons stated above, plaintiffs' motion for reconsideration as it relates to Second Amended Privilege Log Entry 829 is granted.

### C. Second Amended Privilege Log Entries 494, 829, 4415, 4533, 4459, 4664, 4670, 4687

Second Amended Privilege Log entries 494, 4415, 4459, 4664 and 4670 contain a redacted portion that was created with Jackson's assistance, input and at her direction. See Jackson Decl., ¶ 5.2; 2nd Jackson Decl., ¶ 6. Jackson asserted that the redacted portion contained information about which she gave legal advice, conveyed

---

[3] In addition, this Court rejects defendants' assertion that plaintiffs needed to provide additional evidence as to why Matthews needed to view the legal advice or analysis in order to perform his job. See Defs.' Mem. at p. 10. Jackson provided in her Declaration that Entry 829 was provided to Matthews so that he could give his input to Jackson who then provided legal advice to plaintiffs regarding their contracts and relationships with the credit bureaus in conjunction with the launch of VantageScore by defendants. See Upjohn v. United States, 449 U.S. 383, 394 (1981) (finding that the attorney client privilege applies to communications by corporate employee when the communication concerns matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the lawyer to provide legal advice to the corporation). Plaintiffs have sufficiently answered "why"

action items that she advised Fair Isaac should be done, discussed action items that were done at her direction, and conveyed her characterization of certain events and information. Id. Jackson represented that these documents were drafted and edited by both Matthews and plaintiffs' executive, Keri-Kramer's Dove, and that Matthews was involved in the discussion that informed Jackson's legal advice reflected in the document. Id., ¶¶ 7-8. These documents reflected information that Matthews needed to know to do his job, contained tasks that he was involved in and he provided updates to those actions. Id., ¶ 8. Based on this evidence, this Court concludes that the entries maintain their privileged status. While defendants argued that plaintiffs have failed to sufficiently set forth why Matthews needed to see the privilege information set forth in these entries (see Defs.' Mem. at p. 11), this Court finds that the input provided by Matthews, so as to inform the legal advice set forth by Jackson, which resulted in tasks that Matthews needed to perform as part of his employment, sufficiently sets forth why Mathews needed to see the privileged information. See Upjohn Co., 449 U.S. at 390 (The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.") (citations omitted); Diversified Indus., Inc., 572 F.2d at 609 (concluding that a privileged communication in the corporate context does not lose it privileged status if it "is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.").

---

Entry 829 was provided to Mathews and the Court will not require plaintiffs to provide additional detail, which could serve to compromise the privilege.

### D. Conclusion

In summary, this Court grants plaintiffs' motion for reconsideration as it relates to Second Amended Privilege Log Entry 829, and Second Amended Privilege Log Entries 494, 829, 4415, 4459, 4664 and 4670, as they relate to the contents of topic "1" in these documents.

J.S.M.