# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Fair Isaac Corporation and myFICO Consumer Services, Inc.;<br><br>    Plaintiffs,<br><br>v.<br><br>Experian Information Solutions, Inc.; Trans Union LLC; VantageScore Solutions, LLC; and Does I through X;<br><br>    Defendants. | Civil Action No:<br>0:06-cv-04112 (ADM/JSM) |

## **DEFENDANTS' PROPOSED SPECIAL VERDICT FORM**

We, the jury in the above-entitled matter, make the following findings of fact in response to the Court's questions presented to the jury:

### 300-850

1. Has the term "300-850" acquired secondary meaning?

    Yes _____        No _____

If your answer to Question 1 was "YES," then go to Question 2.

If your answer to Question 1 was "NO," then go to Question 23.

2. Is the term "300-850" functional?

    Yes _____        No _____

If your answer to Question 2 was "YES," then go to Question 23.

If your answer to Question 2 was "NO," then go to Question 3.

3. Did the term "300-850" acquire secondary meaning before Experian first used a scoring range of 330 to 830 or a similar range?

Yes _____     No _____

If your answer to Question 3 was "YES," then go to Question 4.

If your answer to Question 3 was "NO," then go to Question 10.

4. Is Experian's use of 330 to 830 as the scoring range for its PLUS credit scoring service likely to cause an appreciable number of reasonable purchasers to be confused, mistaken or deceived about the source or sponsorship of Experian's PLUS credit scoring service?

Yes _____     No _____

If your answer to Question 4 was "YES," then go to Question 5.

If your answer to Question 4 was "NO," then go to Question 10.

5. Is the use by Experian of 330 to 830 as its scoring range for its PLUS credit scoring service a fair use?

Yes _____     No _____

If your answer to Question 5 was "YES," then go to Question 10.

If your answer to Question 5 was "NO," then go to Question 6.

6. Did Fair Isaac inexcusably delay in taking action against Experian with respect to its use of the scoring range 330 to 830, resulting in prejudice or harm to Experian?

Yes _____    No _____

If your answer to Question 6 was "YES," then go to Question 10.

If your answer to Question 6 was "NO," then go to Question 7.

7. Did Fair Isaac represent by actions or words that it would not assert a right or claim against Experian over the term "300-850" and unreasonably delay in asserting such rights against Experian so that Experian would be unfairly harmed if Fair Isaac is permitted to assert its rights over the term "300-850" now?

Yes _____    No _____

If your answer to Question 7 was "YES," then go to Question 10.

If your answer to Question 7 was "NO," then go to Question 8.

8. Was Experian's infringement, if any, of the claimed trademark "300-850" willful and done with the intent to cause confusion as to the source or sponsorship of Experian's PLUS credit scoring service?

Yes _____    No _____

9. What amount of damages, if any, do you award Plaintiffs to compensate for Experian's infringement, if any, of the claimed trademark "300-850", and under what method of calculating damages (Plaintiffs' lost profits, reasonable royalty, or disgorgement of Experian's profits)?

      Amount:      $_____

      Method:      _____

10. Did the term "300-850" acquire secondary meaning before Trans Union first used a scoring range of 300 to 850 or a similar range?

      Yes _____      No _____

If your answer to Question 10 was "YES," then go to Question 11.

If your answer to Question 10 was "NO," then go to Question 18.

11. Is Trans Union's use of 300 to 850 as the scoring range for its TransRisk credit scoring service likely to cause an appreciable number of reasonable purchasers to be confused, mistaken or deceived about the source or sponsorship of Trans Union's TransRisk credit scoring service?

      Yes _____      No _____

If your answer to Question 11 was "YES," then go to Question 12.

If your answer to Question 11 was "NO," then go to Question 18.

12. Is the use by Trans Union of 300 to 850 as its scoring range for its credit scoring service a fair use?

       Yes _____    No _____

If your answer to Question 12 was "YES," then go to Question 18.

If your answer to Question 12 was "NO," then go to Question 13.

13. Did Fair Isaac inexcusably delay in taking action against Trans Union with respect to its use of the scoring range 300 to 850, resulting in prejudice or harm to Trans Union?

       Yes _____    No _____

If your answer to Question 13 was "YES," then go to Question 18.

If your answer to Question 13 was "NO," then go to Question 14.

14. Did Fair Isaac represent by actions or words that it would not assert a right or claim against Trans Union over the term "300-850" and unreasonably delay in asserting such rights so that Trans Union would be unfairly harmed if Fair Isaac is permitted to assert its rights over the term "300-850" now?

       Yes _____    No _____

If your answer to Question 14 was "YES," then go to Question 18.

If your answer to Question 14 was "NO," then go to Question 15.

15. Did Fair Isaac release Trans Union from liability for its use of the term "300-850"?

Yes _____        No _____

If your answer to Question 15 was "YES," then go to Question 18.

If your answer to Question 15 was "NO," then go to Question 16.

16. Was Trans Union's infringement, if any, of the claimed trademark "300-850" willful and done with the intent to cause confusion as to the source or sponsorship of Trans Union's credit scoring service?

Yes _____        No _____

17. What amount of damages, if any, do you award Plaintiffs to compensate for Trans Union's infringement, if any, of the claimed trademark "300-850," and under what method of calculating damages (Plaintiffs' lost profits, reasonable royalty, or disgorgement of Trans Union's profits)?

Amount:    $_____

Method:    _____

18. Did the term "300-850" acquire secondary meaning before VantageScore Solutions, LLC first used a scoring range of 501 to 990 or a similar range?

Yes _____        No _____

If your answer to Question 18 was "YES," then go to Question 19.

If your answer to Question 18 was "NO," then go to Question 23.

19. Is VantageScore's use of 501 to 990 as the scoring range for its VantageScore credit scoring service likely to cause an appreciable number of reasonable purchasers to be confused, mistaken or deceived about the source or sponsorship of VantageScore's credit scoring service?

Yes _____          No _____

If your answer to Question 19 was "YES," then go to Question 20.

If your answer to Question 19 was "NO," then go to Question 23.

20. Is the use by VantageScore of 501 to 990 as its scoring range for its credit scoring service a fair use?

Yes _____          No _____

If your answer to Question 20 was "YES," then go to Question 23.

If your answer to Question 20 was "NO," then go to Question 21.

21. Was VantageScore's infringement, if any, of the claimed trademark "300-850" willful and done with the intent to cause confusion as to the source or sponsorship of VantageScore's credit scoring service?

Yes _____          No _____

22. What amount of damages, if any, do you award Plaintiffs to compensate for VantageScore's infringement, if any, of the claimed trademark 300-850, and under what method of calculating damages (disgorgement of VantageScore's profits)?

      Amount:    $_____

      Method:    _____

<u>Keyword Advertising</u>

<u>Experian</u>

23. Was Experian's use of "FICO" or "FAIR ISAAC" as keyword search terms on internet search engines likely to cause an appreciable number of reasonable purchasers to be confused, mistaken or deceived about the source or sponsorship of Experian's credit scoring services that are offered at www.freecreditreport.com?

      Yes _____    No _____

If your answer to Question 23 was "YES," then go to Question 24.

If your answer to Question 23 was "NO," then go to Question 26.

24. Did Experian use Fair Isaac's trademarks as keyword search terms to identify, describe, or otherwise refer to or compare their scoring services with Fair Isaac's credit scoring service and not to suggest that Fair Isaac sponsored or endorsed Experian's services?

      Yes _____    No _____

If your answer to Question 24 was "YES," then go to Question 26.

If your answer to Question 24 was "NO,", then go to Question 25.

25. Should Fair Isaac be barred from recovering for Experian's use of Fair Isaac's trademarks as keyword search terms due to Fair Isaac's own use of Experian's trademarks as keyword search terms?

Yes _____          No _____

<u>Trans Union</u>

26. Was Trans Union's use of "FICO," "FAIR ISAAC," "850 credit score," or "850 credit scores" as keyword search terms on internet search engines likely to cause an appreciable number of reasonable purchasers to be confused, mistaken or deceived as to the source of Trans Union's credit scoring services that are offered at www.truecredit.com?

Yes _____          No _____

If your answer to Question 26 was "YES," then go to Question 27.

If your answer to Question 26 was "NO," then go to Question 29.

27. Did Trans Union use Fair Isaac's trademarks as keyword search terms to identify, describe, or otherwise refer to or compare Trans Union's scoring service with Fair Isaac's credit scoring service, and not to suggest that Fair Isaac sponsored or endorsed Trans Union's service?

Yes _____          No _____

If your answer to Question 27 is "YES," then go to Question 29.

If your answer to Question 27 is "NO," then go to Question 28.

28.   Should Fair Isaac be barred from recovering for Trans Union's use of Fair Isaac's trademarks as keyword search terms due to Fair Isaac's own use of Trans Union's trademarks as keyword search terms?

   Yes _____          No _____

### Defendants' Counterclaim

29.   During the application process for a "300-850" trademark before the United States Patent and Trademark Office, did Fair Isaac through one of its officers or attorneys make a material misrepresentation that it knew to be false to or knowingly omit one or more material facts with an intent to mislead the Patent and Trademark Office?

   Yes _____          No _____

If your answer to Question 29 was "YES," then go to Question 30.

If your answer to Question 29 was "NO," then sign, date, and return this form.

30.   Did the United States Patent and Trademark Office rely on Fair Isaac's misrepresentation or omission in issuing the "300-850" trademark registration?

   Yes _____          No _____

Sign, date, and return this form.

Dated: _____     Presiding Juror: _____