# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Fair Isaac Corporation; and myFICO
Consumer Services, Inc.,

                Plaintiffs,

Civil Action No: 06 CV 4112
ADM/JSM

v.

Experian Information Solutions Inc.;
Trans Union, LLC; and VantageScore
Solutions, LLC; and Does I through X,

                Defendants.

### Fair Isaac's Memorandum of Law in Opposition to the Defendants' Motion for a Special Jury Questionnaire

The defendants' business model is based on collecting as much information as possible about private citizens—in particular, information about their personal finances and creditworthiness. The defendants now want to make it the Court's business to collect as much personal financial information as possible about the prospective jurors. The defendants' motion in limine asks the Court to (1) require each prospective juror to fill out an intrusive written questionnaire or (2) in the alternative, ask prospective jurors orally an even more intrusive (in many respects) list of questions. The defendants have no legitimate basis for seeking such an

invasive level of detail about a potential juror's financial and credit history and that of their family members. Their designs to compile an in-depth financial dossier on all of the prospective jurors should be rejected by the Court. The defendants' determination to gather this type of personal information provides further support for granting Fair Isaac's motion in limine to prohibit the defendants from using their vast databases of information to investigate prospective jurors during voir dire and trial.

**Argument**

I.  **The defendants' proposal reinforces Fair Isaac's concerns about what the defendants intend to do with juror information**

The defendants' motion asks the Court to provide a written questionnaire to prospective jurors and then distribute the answers to the parties and their attorneys electronically before "the time that the Court and counsel take up motions in limine and other preliminary matters."[1] The defendants submitted a copy of their proposed written questionnaire with their motion. The questionnaire would have each prospective juror reveal his or her name and address and other demographic information as well as private financial information such as whether the prospective juror has "ever been denied credit based either on a credit score or credit report"

---

1. Defendants' Memorandum of Law in Support of Defendants' Motion to Allow Juror Questionnaire at 5 [Docket No. 774].

and whether the prospective juror "or anyone in [the prospective juror's] household" has ever been a party to a divorce or a bankruptcy.[2]

If the Court does *not* use the defendants' proposed questionnaire then, "[i]n the alternative," the defendants request that the Court ask each of the prospective jurors an even more invasion set of oral questions, as set forth in Defendants' Proposed Voir Dire submission.[3] The defendants' proposed oral questions would include inquiries, for example, about what types of loans and credit each prospective juror has sought in the last four years, whether the prospective juror has ever had his or her credit line decreased or interest rates raised, and whether the prospective juror of any member of his or her family has ever defaulted on a loan or had a mortgage foreclosed on or otherwise "had any negative experiences with credit":

> 17. Have you applied for credit or a loan in the last four years? If so, what type of credit or loan did you seek? (i.e., credit card, car loan, mortgage)) . . . .
>
> 19. Have you ever had a credit line decreased or had your interest rates raised?

---

2. Aff. B. Berens Exh. 1 (Question Nos. 17 & 21) [Docket No. 777].
3. Defendants' Memorandum of Law in Support of Defendants' Motion to Allow Juror Questionnaire at 1 [Docket No. 774].

20. Have you had any negative experiences with credit you have obtained, such as defaulting on a loan or having a mortgage foreclosed on you or a family member?[4]

These even more invasive oral questions are *not* on the defendants' proposed written questionnaire.

## II. Whether in the form of a questionnaire or orally, the defendants have not met their burden for their invasive proposed questions

The defendants admit the embarrassing nature of their proposed questions for prospective jurors. But what they failed to acknowledge is that their questions—both on the proposed questionnaire and the defendant's proposed oral voir dire—go beyond embarrassment and would unnecessarily invade the privacy of the prospective jurors.

When a party proposes invasive questioning, "[i]t is the trial court's responsibility to ensure that voir dire is not an overly intrusive inquiry into the private affairs of prospective jurors."[5] "There must be some balance, some drawing the line, "as one court explained, "and when hard-charging counsel are in hot pursuit of every little empirical nugget they get

---

4. Defendants' Proposed Voir Dire at 2 [Docket No. 771].
5. *United States v. Serafini*, 57 F. Supp. 2d 108, 112 (M.D. Pa. 1999) (citing *United States v. Padilla-Valenzuela*, 896 F. Supp. 968, 972 (D. Ariz. 1995)).

81046824.1

4

their eyes on, it is the trial judge who must, *sua sponte*, reign them in and give the jurors some protection."[6]

Courts have found that no attempt to minimize embarrassment will allow inquiry into certain sensitive areas.[7] For example, in *Serafini*, a case cited by the defendants, the trial court struck a number of impermissible and improper questions before allowing a questionnaire to be submitted to jurors.[8] Among the questions found to be "beyond the pale" by the court in *Serafini* were those seeking information regarding membership in civic, social, religious, charitable, volunteer, professional, or business organizations.[9] The defendants are seeking this very type of information in their proposed voir dire questions ("35. What social, community, charitable, civic or political organizations do you belong to?").[10]

The defendants' most intrusive questions seek information about prospective jurors' past financial history. In addition to the lines of questions quoted above—asking about the types of loans and credit each prospective juror has sought in the last four years, whether the prospective

---

6. *United States v. McDade*, 929 F. Supp. 815 (E.D. Penn. 1996); *see also Brandborg v. Lucas*, 891 F. Supp. 352, 356 (E.D. Tex. 1995) ("the court must protect the privacy rights of the prospective jurors").
7. *Padilla-Valenzuela*, 896 F. Supp. at 971.
8. *Serafini* at 115-16.
9. *Id.* at 114.
10. Defendants' Proposed Voir Dire at 3 [Docket No. 771].

juror has ever had his or her credit line decreased or interest rates raised, and whether the prospective juror of any member of his or her family has ever defaulted on a loan or had a mortgage foreclosed on or otherwise "had any negative experiences with credit"—the defendants would also ask whether prospective jurors have had "any negative experiences in applying for credit" and whether the prospective juror or any member of his or her family has ever filed for bankruptcy. Personal financial information of this nature is among those areas that courts recognize are off limits in voir dire.[11]

Even when the case involves the banking industry, specific questions regarding a prospective juror's personal financial history have been considered overly intrusive.[12] Questions regarding loan denials, for example, as in the defendants' proposed oral Question No. 18 and Questionnaire No. 17, constitute an invasion of privacy.[13] And defaulting on a loan, losing a home to foreclosure, or filing for bankruptcy, which defendants inquire into, for example, through proposed oral Question

---

11. *See McDade*, 929 F. Supp. at 818 (finding questions about individual's income "offensively intrusive").
12. *United States v. Holck*, 398 F. Supp.2d 338, 368-70 (E.D. Penn. 2005).
13. *Id.* at 369.

Nos. 20 and 21, all address individual jurors' personal credit history, which are sensitive subjects deserving of the Court's protection.[14]

This Court has broad discretion in conducting a voir-dire examination. But the mere fact that this case involves a trademark for a credit score does not give the defendants a right to pry deeply into the credit histories and financial backgrounds of the potential jurors and their families. The defendants rely on the Eighth Circuit's 1972 decision in *Labee v. Roadway Express, Inc.*[15] to argue that the Court should exercise its discretion and submit the defendants' questionnaire to prospective jurors. But their reliance on *Labee* is misplaced. In *Labee*, the Eighth Circuit upheld a trial court's decision *not* to ask the specific questions sought by the plaintiff. The appellate court explained that a trial court has discretionary control over voir dire and this includes not only the power to submit a written questionnaire to jurors but the power to limit the specific questions used to investigate a prospective juror's impartiality.[16]

---

14. *See id.* at 370 (discussing the sensitive nature of a juror's credit history).
15. 469 F.2d 169 (8th Cir. 1972).
16. *Id.* at 172 ("The specific questions of the trial court were within its discretion and the Court cannot find that plaintiff was denied his right to an impartial jury."); *see also United States v. Brooks*, 174 F.3d 950, 957 (8th Cir. 1999) ("the district court took other steps . . . to ensure the impartiality of the jury").

When proposed questions encroach on sensitive information—as they would with the defendants' proposed voir dire—the Court should use its discretion to protect jurors from invasive financial questions, while still allowing a sufficient determination as to impartiality.[17] The defendants acknowledge that the Court's discretion in this area is not unlimited, but they fail, at the same time, to meet their burden to make a convincing case for the questions that they propose are warranted. The defendants offer no support for their conclusory argument that their questions about prospective jurors' past credit history relate to the case's central topic—the infringement of Fair Isaac's marks and the passing off of the defendants' products.[18]

When the proposed questions for jurors address a subject *not* "well known to inflame the passions of the community," the party requesting the questions bears the burden of establishing that the question "is reasonably calculated to discover an actual and likely source of prejudice, rather than pursue a speculative will-o-the-wisp."[19] The defendants' mere

---

17. *See Holck*, 398 F. Supp.2d at 369 (rejecting proposed questions on loan denials and credit scores).
18. *See United States v. Orenuga*, 430 F.3d 1158, 390 (D.C. Cir. 2005) (specific questions may be central to the case but that does not require a trial court to conduct voir dire on those questions).
19. *Id.* (quoting *Robinson*, 475 F.2d at 381).

assertion that prospective jurors' financial status or history are likely to create potential bias fails to demonstrate that those questions are reasonably calculated to discover actual prejudice. The defendants have therefore failed to meet their burden to require the Court to exercise its discretion and issue the defendants' questionnaire.

### III. No written questionnaire should be used because the demeanor of the prospective jurors cannot be observed

Putting aside the unduly invasive nature of the defendants' proposed questionnaire and alternative oral examination (the impropriety of which is discussed below), the idea that the Court should use any in-depth written questionnaire should be rejected. The voir dire should be conducted orally, in court, where the parties and their counsel can observe the prospective jurors while they answer questions.

The Eighth Circuit expressed its preference for open-court questioning of potential jurors as early as 1931, in *Gideon v. United States*.[20] A written questionnaire might save some time, but any time savings would come at the cost of allowing the court and the attorneys to observe the prospective jurors' demeanor. The Supreme Court noted the importance of observing demeanor in *Mu'Min v. Virginia*, where the Court

---

20. 52 F.2d 427 (8th Cir. 1931).

explained that "written answers would not give counsel or the court any exposure to the demeanor of the juror in the course of answering the content questions."[21] In short, in-court questioning of jurors is preferred over submission of a written questionnaire.[22]

## Conclusion

The defendants have failed to establish that the Court's broad discretion in conducting voir dire should be used to submit the potential jurors to this invasion of privacy. The personal financial information that the defendants seek about prospective jurors and their family members has no bearing on whether a juror can properly and fairly determine the facts of this case. Fair Isaac respectfully requests that the defendants' motion be denied and that the Court reject the unduly intrusive questions on the defendants' proposed oral voir dire as well.

---

21. 501 U.S. 415, 424-25 ("written answers would not give counsel of the court any exposure to the demeanor of the juror in the course of answering the content questions).

22. The declaration of the defendants' purported "expert" on jury selection (John Gilleland, Docket No. 775) not only assumes that the defendants' proposed line of invasive questioning is proper, *see* Gilleland Decl. ¶ 27, but he says nothing about the loss of the court and counsel's ability to judge the demeanor of prospective jurors if a questionnaire is used for these supposedly important questions. The defendants' purported expert, moreover, also appears to cite no empirical studies that would support his conclusion, *see id.* ¶ 29, that a written questionnaire would be better in a case like this.

If for some reason the Court allows the invasive questioning of the prospective jurors as proposed by the defendants, then Fair Isaac requests that the venire panel be told that the defendants are the ones seeking this information. Fair Isaac believes that the prospective jurors will be angry at being asked these detailed personal and financial questions, including about their families, and their anger should not be misdirected at Fair Isaac.

Date: September 28, 2009				**Robins, Kaplan, Miller & Ciresi, L.L.P.**

						**By:**   s/Randall Tietjen
							Ronald J. Schutz (130849)
							Randall Tietjen (214474)
							Christopher K. Larus (226828)
							Michael A. Collyard (302569)
							Laura E. Nelson (0342798)

						2800 LaSalle Plaza
						800 LaSalle Avenue
						Minneapolis, MN 55402
						Tel: (612) 349-8500
						Fax: (612) 339-4181

						**Attorneys for Plaintiffs**