## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Fair Isaac Corporation and myFICO       Case No. 06-cv-4112 (ADM-JSM )
Consumer Services, Inc.;

               Plaintiffs,

v.

Experian Information Solutions Inc.;
Trans Union, LLC; VantageScore
Solutions, LLC; and Does I through X;

               Defendants.

**Memorandum of Law in Support of a Motion by Fair Isaac and Craig Watts for a Protective Order and to Quash an Invalid Subpoena and to Impose a Sanction on Experian or Its Counsel (or both) under Rule 45(c)(1)**

Defendant Experian Information Solutions Inc. recently issued and signed an invalid trial subpoena for Craig Watts. Watts is a non-officer employee of Plaintiff Fair Isaac Corporation. He has already been deposed by the defendants and he lives and works full time in California. Almost without question, Experian's counsel served this subpoena in bad faith or knowing it was invalid. Experian's counsel admitted in a recent email that a subpoena like the one served on Watts is unenforceable under Rule 45 of the Federal Rules of Civil Procedure. Federal subpoenas cannot issue from a federal court to compel someone's attendance at trial if the person on whom the subpoena was served resides outside of the issuing district or more than 100 miles from the place of the trial.

The defendants' suggestion in Court at the end of the day on Monday (November 2) that the Court should allow the defendants to take a deposition of Watts in California—as

1

an alternative to compelling his attendance at trial under Experian's (invalid) subpoena—is both unfair and hypocritical. The defendants have not only had a full-day videotaped deposition of Watts (the transcript of which they designated for trial), but there is no good cause to amend the scheduling order to allow for a second deposition in the middle of trial. Fact discovery has been over for more than fifteen months. (The Court recently declined to compel Experian to produce highly relevant consumer-confusion documents, despite Experian's agreement to do so, because Fair Isaac's motion to compel was filed *fifteen days* after the deadline for non-dispositive motions. The Court reminded the parties that "scheduling orders serve a purpose and counsel are expected to adhere to the established deadlines.") The suggestion by Experian that it should be allowed to take Watts's deposition in the middle of trial is not only unjustified but it is hypocritical. The defendants recently refused to allow Fair Isaac to take any depositions of two employee-witnesses of Experian and Trans Union whom the defendants only recently disclosed as live witnesses for trial. As the old saying goes, "What's sauce for the goose . . . ."

By this motion, Fair Isaac and Watts seek a protective order and an order quashing the defendants' invalid subpoena under Rules 26(c) and 45(c)(3)(A)) of the Federal Rules of Civil Procedure. Fair Isaac and Watts also seek an appropriate sanction on Experian or its counsel (or both) under Rule 45(c)(1), for imposing an undue burden and expense on Fair Isaac and Watts by a blatantly invalid subpoena. Fair Isaac and Watts respectfully suggest that an appropriate sanction would be the costs and fees associated the invalid subpoena, including the need to bring this motion.

## Argument

### I.   The Court is *required* by Rule 45(c)(3) to quash a subpoena that purports to compel attendance of someone outside the Court's subpoena power

On October 20, 2009, Experian served Craig Watts with a subpoena signed by Experian's counsel from White & Case and issued from this Court.[1] Nearly two weeks later, on November 1, the defendants served a copy of that subpoena on Fair Isaac.[2] The subpoena purports to require Watts to travel to Minneapolis from northern California, where Watts lives and works full time, to give testimony at the trial of this matter.[3] Watts is an employee of Fair Isaac who provides "public relations support" to the company.[4] His job duties consist "primarily [of] working with the news media and consumer advocacy groups."[5] Watts is not now nor has he ever been an officer or high-level employee of Fair Isaac or a managing agent of Fair Isaac; in fact, there are 212 people at the same level as Watts in the hierarchy of the company and 133 people are employed above the level of Watts.[6] He does not manage any employees and no employees report to him.[7] He also does not have any decision-making authority related to Fair Isaac's trademark rights.[8] Watts has already been deposed in seven-hour videotaped deposition by the defendants, portions of

---

1. Decl. R. Tietjen Ex. 1 (copy of Experian's counsel's cover letter and subpoena).

2. *Id.* ¶ 2 & Ex. 2 (copy of Experian's counsel's email to Fair Isaac on November 1, 2009).

3. *Id.* Ex. 1 (copy of Experian's counsel's cover letter and subpoena); Decl. Stephen Astle ¶ 4 (declaration of the person to whom Watts reports at Fair Isaac).

4. Astle Decl. ¶ 6.

5. *Id.*

6. *Id.* ¶¶ 7, 13.

7. *Id.* ¶ 8.

8. *Id.* ¶ 14.

which have been designated by the defendants for trial. Watts was deposed as an individual;

he was never designated as a deposition witness for the company under Rule 30(b)(6).[9]

Under Rule 45(b)(2) of the Federal Rules of Civil Procedure, a subpoena for

attendance at trial can only be issued within the district of the issuing court or, if outside the

district, within 100 miles of the place of the trial.[10] With respect to subpoenas served on a

party or an officer of a party, there are differing views in the federal courts about the reach

of Rule 45: some courts have allowed subpoenas for parties themselves or for officers of a

corporate party who live outside the boundaries described in Rule 45(b)(2); other courts

have quashed subpoenas for parties or officers outside the limits of Rule 45(b)(2), as

contrary to the language of the Rule itself.[11] Here, those competing views in the case law are

of no consequence because there is *no dispute* that Watts is neither an officer nor a high-level

employee of Fair Isaac. He is an ordinary employee, and there is no authority that pushes the

language of Rule 45 far enough to allow a subpoena to compel him to testify at trial in

Minnesota.

Rule 45(c)(3) of the federal rules makes clear that this Court *must* quash the subpoena

that Experian served on Watts; the Court has no discretion:

---

9. Tietjen Decl. ¶ 3.

10. *See* Fed. R. Civ. P. 45(b)(2).

11. *See, e.g., Mazloum v. Dist. of Columbia Metro. Police Dept.*, 248 F.R.D. 725, 728 (D.D.C. 2008) (recognizing this difference in court decisions but concluding that "there does not appear to be [any] basis in the text of Rule 45(c)(3)(A)(ii) to authorize valid service of a subpoena upon a party or a party's officer even when the person to be compelled resided beyond the 100-mile range of the subpoena power defined in Rule 45(b)(2)"); *see also, e.g., Archer Daniels Midland Co. v. Aon Risk Services, Inc.*, 187 F.R.D. 578, 588 (D. Minn. 1999) (Magistrate Judge Erickson) (although dealing only with the question of the location of depositions, not trial subpoenas, recognizing that "ordinary employees are subject to the general rule that a deponent should be deposed near his or her residence or principal place of work.").

(3) *Quashing or Modifying a Subpoena.*
    (A) **When Required.** On timely motion, the issuing court must quash or modify a subpoena that: . . .
        (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person . . . .[12]

There are many cases that support granting this motion to quash Experian's subpoena. For example:

- *Schipper v. BNSF Railway Co.*, 2009 WL 997149 (D. Kan. April 14, 2009): Denying a motion to compel the defendants' employees to testify at trial if those employees lived outside the district and more than 100 miles from the courthouse. *Id.* at *3 (copy attached as Ex. 3 to Tietjen Decl.).

- *Chao v. Tyson Foods, Inc.*, 255 F.R.D. 556 (N.D. Ala. 2009): Granting a motion to quash subpoenas that sought to compel corporate officers to give testimony at a trial outside the court's subpoena power. *Id.* at 559.

- *Johnson v. Big Lots Stores, Inc.*, 251 F.R.D. 213 (E.D. La. 2008): Granting a motion to quash trial subpoenas served on nine opt-in plaintiffs—actual parties to the litigation—because they were outside the subpoena power of the court. *Id.* at 22.

- *Lyman v. St. Jude Medical S.C., Inc.*, 580 F. Supp.2d 719, 733 (E.D. Wis. 2008): Granting a motion to quash a trial subpoena served on an officer outside the subpoena power of the court, noting: "'It is true that a witness's live testimony is often preferable to the presentation of deposition testimony. But the Federal Rules anticipate the unavailability of a witness and provide mechanisms to ensure that a party can gather that witness's testimony and then present it at trial.'" *Id.* at 734 (quoting *Big Lots Stores*, 251 F.R.D. at 219).

- *Jamsports & Entertainment, LLC, v. Paradama Prod., Inc.*, 2005 WL 14917 (N.D. Ill. Jan. 3, 2005): Granting a motion to quash a subpoena served on a party's chief financial officer because the officer was outside the subpoena power. *Id.* at *1 (copy attached as Ex. 4 to Tietjen Decl.).

Fair Isaac's research produced no decisions that support enforcement of a subpoena on an ordinary employee like Craig Watts who is outside the subpoena power of the Court.

---

12. Fed. R. Civ. P. 45(c)(3)(A)(ii) (emphasis added).

If this Court were to hold that Rule 45 authorizes nationwide service of the subpoena on Watts, the Court would be making an unprecedented decision that defies the plain language of the Rule.

## II.     Experian's subpoena is also invalid because the mileage fee is insufficient

With its subpoena, Experian delivered a check for $80 to Watts, as a witness fee for his attendance at trial.[13] Rule 45(b)(1) explains that a party serving a subpoena has to tender to the person "the fees for 1 day's attendance and the mileage allowed by law." Experian did not tender *any* mileage amount to Watts, who works and lives in California, approximately 2,040 miles from Minneapolis. At the mileage rate of $0.55 per mile, Watts's mileage fee should have been at least $2,000.[14] The inadequate fees provided by Experian to Watts is another, independent ground for holding that the subpoena was improperly served and should be quashed.[15]

## III.    Experian surely knew that it was serving an invalid subpoena and therefore did not take reasonable steps to avoid imposing an undue burden or expense

Rule 45(c)(1) requires "[a] party or attorney responsible for issuing and serving a subpoena [to] take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." The Rule further requires courts to enforce this duty and impose

---

13. Tietjen Decl. Ex. 1 (Experian's cover letter, noting that Experian was enclosing a check in the amount of $80 for a witness fee).

14. *See* Fed. R. Civ. P. 45; 5 U.S.C. § 5704; 28 U.S.C. § 1821; IR-2008-131 (Nov. 24, 2008).

15. *Tribulak v. Minirth-Meier-Rice Clinic*, 111 F.3d 135 (8th Cir. 1997) ("the district court did not abuse its discretion in quashing witness subpoenas which were not accompanied by the witness fee"); *see also CF & I Steel Corp. v. Mitsui & Co.*, 713 F.2d 494, 496 (9th Cir. 1983) (Rule 45 "requires simultaneous tendering of witness fees and the reasonably estimated mileage allowed by law under service of the subpoena"); *Alexander v. Jesuits of Missouri Province*, 175 F.R.D. 556, 560 (D. Kan. 1997) ("subpoena was neither served on the witness nor accompanied by an appropriately tendered witness fee, either of which precludes the subpoena from being enforceable").

an appropriate sanction for violations: "The issuing court *must enforce this duty and impose an appropriate sanction*—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply."[16] Here, there are good reasons to conclude that Experian's counsel knew full well that they were serving an invalid, unenforceable subpoena on Watts and, hence, that they were violating their duty to Watts.

In addition to the simple fact that the language of Rule 45 and a great deal of case law flatly prohibit what Experian did, Experian's own counsel, in a recent email regarding a trial subpoena that Experian served on a third-party in Atlanta (ChoicePoint), acknowledged that Experian's subpoena was unenforceable because "Atlanta is outside the subpoena power of the Court."[17] Experian's counsel later said that he did not intend to send this email to Fair Isaac and asked Fair Isaac's counsel to "[p]lease excuse [his] prior e-mail," but he never claimed that his email represented work product or a privileged communication (nor could he—it merely recognized the requirements of Rule 45), and he never made an effort to claw the document back under the terms of this Court's Protective Order.[18]

If it is reasonable to conclude that Experian knew that it was serving an unenforceable subpoena on Watts—and it is—then the Court should impose an appropriate sanction on Experian for violating its duty to avoid imposing undue burdens and expense on Watts. If a lawyer knows that he is serving an invalid and unenforceable subpoena, that lawyer has committed a per-se violation of his duty to the person on whom the subpoena is

---

16. Fed. R. Civ. P. 45(c)(1) (emphasis added); *see, e.g.*, In re *Byrd, Inc.*, 927 F.2d 1135, 1137-38 (10th Cir. 1991) (affirming a decision to award sanctions of fees and costs under Rule 26(g) because an attorney served a federal subpoena outside the subpoena power of the court).

17. Tietjen Decl. Ex. 5 (email from Mark Jacobson, October 16, 2009).

18. *Id.* Ex. 6 (later email from Mark Jacobson, October 16, 2009).

served.[19] The power of an attorney to issue, sign, and serve subpoenas under Rule 45 is a significant power and it is not one that a court should allow an attorney to exercise as though he were throwing darts at people, hoping that one might stick and make the person feel compelled to comply.

## IV.   Experian's casual (and hypocritical) suggestion that the Court should allow a deposition of Watts in California should not be entertained by the Court

The defendants have not made any motion for leave of court to amend the pretrial schedule to allow fact discovery to be re-opened so that Watts can be deposed a second time. But at the end of the trial day on Monday (November 2) Experian's counsel casually suggested to the Court that the Court should allow the defendants to take another deposition of Watts in California—as an alternative to compelling his attendance at trial under Experian's (invalid) subpoena. This idea—that Experian should be allowed to reopen fact discovery during the middle of trial—is unfair, unjustified, and hypocritical.

The defendants took a full-day videotaped deposition of Watts during fact discovery and they have designated portions of that transcript for trial. There is no good cause now to justify a mid-trial, second deposition of Watts.[20] Experian's suggestion is apparently based on the believe that the defendants might be able to take a better deposition if the Court would just allow them a second chance—a deposition mulligan. Fact discovery has been over for more than fifteen months, and at no time during those many months did the defendants

---

19. *See, e.g.*, In re *Byrd, Inc.*, 927 F.2d 1135, 1137-38 (10th Cir. 1991) (affirming a decision to award sanctions of fees and costs under Rule 26(g) because an attorney served a federal subpoena outside the subpoena power of the court).

20. *See Misc. Docket v. Misc. Docket*, 197 F.3d 922 (8th Cir. 1999) (affirming a decision by Judge Kyle to issue a protective order and quash a subpoena seeking a second deposition of a third-party former officer of a party corporation when the former officer had already been deposed once in a related case).

ever ask for leave to take a second deposition of Watts. Now, in the middle of trial, they suggest it for the first time.

This Court recently affirmed a decision by the Magistrate Judge denying a motion by Fair Isaac to compel Experian to produce highly relevant consumer-confusion documents that Experian had promised it would produce. Fair Isaac's motion in that instance was only a mere twenty days or so past the deadline for non-dispositive motions. The Court reminded the parties that the pretrial schedule has an orderly purpose: "While Fair Isaac's apparent optimism that the parties would have an ability to reconcile their disagreements without the Court's assistance is admirable, scheduling orders serve a purpose and counsel are expected to adhere to the established deadlines."[21] The suggestion by Experian that the defendants should be allowed a second deposition of Watts in the middle of trial, ignoring this Court's fact-discovery schedule, should be rejected by the Court out of hand.

If the defendants were to bring a motion seeking leave to file a non-dispositive motion to amend the pre-trial schedule to re-open fact discovery, so that they can have a second chance to depose Watts, the motion would be not only unfair but hypocritical. On August 24 and 25, 2009—six weeks before trial was originally scheduled to begin in early October—Experian and Trans Union served Fair Isaac with amended "Initial Disclosures," disclosing new individuals with discoverable information. Shortly thereafter, Fair Isaac asked the defendants to agree to allow some of those individuals to be deposed, to alleviate the prejudice that Fair Isaac would suffer from the defendants' late and untimely disclosure. With respect to two of those newly disclosed individuals, the defendants refused to allow any

---

21. Memorandum Opinion and Order at 8 (filed August 31, 2009).

depositions. The defendants rationalized their position on the ground that those two individuals (David Williams for Experian and John Danaher for Trans Union) had served as corporate designees for Experian and Trans Union in depositions under Rule 30(b)(6) and, therefore, those two individuals should not have to sit for individual depositions (even though Fair Isaac had not received notice from the defendants that those individuals had discoverable information).[22] Having just recently refused to allow Fair Isaac to take depositions of David Williams and John Danaher, it takes some chutzpah for Experian to suggest now that the defendants should be allowed a mid-trial deposition of Watts, who was timely disclosed by Fair Isaac and already deposed on his personal knowledge.

## Conclusion

The subpoena that Experian served on Watts is invalid and Experian had no good-faith basis in the law for serving the subpoena on Watts. Neither the language of Rule 45 nor the case law interpreting and applying Rule 45 allow a subpoena to be served on an ordinary (non-officer) employee of a corporate party if that person resides outside the subpoena power of the issuing court. There is good reason to conclude that Experian knew this when it served the subpoena but served the subpoena anyway. Fair Isaac and Watt's motion should be granted, issuing a protective order and quashing the subpoena, as well as ordering sanctions against Experian.

---

22. *Id.* Ex. 7 (email from Jack Pace, October 6, 2009).

Date:   November 3, 2009

**Robins, Kaplan, Miller & Ciresi, L.L.P.**

**By:**   /s/ Randall Tietjen
Ronald J. Schutz (130849)
Randall Tietjen (214474)
Michael A. Collyard (302569)
Laura E. Nelson (0342798)
Mary E. Kiedrowski (0346378)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Tel: (612) 349-8500
Fax: (612) 339-4181

**Attorneys for Craig Watts and Plaintiffs Fair Isaac Corporation and myFICO Consumer Services, Inc.**