IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Fair Isaac Corporation and myFICO Consumer Services, Inc.; <br><br>　　　Plaintiffs, <br><br>v. <br><br>Experian Information Solutions, Inc.; Trans Union LLC; VantageScore Solutions, LLC; and Does I through X <br><br>　　　Defendants. | Civil Action No: 0:06-cv-04112 (ADM/JSM) <br><br>**Defendants' Response to Fair Isaac's Offer of Proof Regarding the Defendants' Destruction of Documents** |

Defendants Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union") and VantageScore Solutions, LLC (collectively, "Defendants") hereby respond to Plaintiffs' Offer of Proof Regarding the Defendants' Destruction of Documents ("Offer of Proof") (Docket No. 878).

As set forth more fully in Defendant's Motion *In Limine* to Exclude Evidence and Argument Relating to Spoliation (Docket No. 736), Plaintiffs attempt to inject into this trial evidence of shredding that is both irrelevant and highly prejudicial.[1]

Evidence of document destruction should not be admitted and Plaintiffs' adverse inference jury instruction with respect to the Project Trident shredding claim should be rejected for the following reasons.

---

[1] Any accusations of spoliation directed at VantageScore are beyond reckless since this entity was not yet in existence. Accordingly, VantageScore cannot be accused of, nor proven to have committed, spoliation and should not be subjected to any evidentiary presumptions or adverse inference instructions.

1. Defendants had no duty to preserve evidence at the time documents were shredded because they were not anticipating any litigation, let alone trademark litigation. At the time of the shredding, Defendants had no notice of a lawsuit and Fair Isaac's purported trademark rights and did not even know if VantageScore would become a marketable product. Because the score ranges of the PLUS and TransRisk scores were determined no later than 2003, documents allegedly destroyed in 2005 cannot possibly shed light on the reasons for choosing those ranges, and have no relevance to any trademark infringement claim arising out of the use of those ranges. Docket No. 738 at 6-9.

2. Defendants shredded documents pursuant to a routine document destruction policy – which ceased ten months before Plaintiffs filed this lawsuit – without any intent to destroy evidence or suppress the truth. Only superfluous documents were shredded. *Id.* at 9-10.

3. There is no showing that shredded documents substantiate Plaintiffs' case or that other available evidence is insufficient. *Id.* at 10-11. PX0022 does make reference to shredding on page three and to the VantageScore scoring range on pages 24 through 26 among many other aspects of VantageScore, including wrap-up security procedures. It is not surprising that such wrap-up topics would be covered towards the end of Project Trident.

In the event that evidence of shredding was permitted to be shown to the jury, Experian listed on its "may call" witness list its security expert, Theresa Wong, who

recommended and designed the security procedures for Project Trident. Experian gave the Plaintiffs a deposition of Ms. Wong last week, and she confirmed the ordinary course nature of the shredding, which was done to secure confidential individual consumer information and not to suppress evidence in anticipation of litigation. Ms. Wong testified that:

1. She was brought into Project Trident to perform an independent security assessment and she did a comprehensive review of security at the site. Wong Dep. Tr. 14:23-19:23; 41:19-24 (Exhibit 1 to the Elfand Declaration ("Elfand Decl.")).

2. Her recommendation relating to shredding specifically referred to "discarded, obsolete data, any documents [the Trident team] no longer need[ed]." *Id.* at 24:1-2. Shredding was only one element of the security protocol, which also included procuring a dedicated printer, changing door locks, getting locks for office cabinets and maintaining a clean-desk policy. *Id.* at 23:20-24:5; 25:7-19.

3. Project Trident involved individual consumer data that Experian has an obligation to preserve for its clients that provide the information and in accordance with Experian's own guidelines. *Id.* at 42:5-19.

4. Shredding was not done to hide improper behavior. *Id.* at 43:14-22.

5. During the project, she had no understanding that it might result in litigation. *Id.* at 22:2-4.

Plaintiffs' Offer of Proof does nothing to change these critical facts. It recites certain facts that are not in dispute, such as the fact that PX0022 depicts a snowman made of the shredded documents (Docket No. 878 at 3), but then attempts to elevate pure speculation to "reasonable inference" by making the wholly unsupported leap that the shredded documents must have included evidence of intent to copy and secondary meaning. *Id.* at 4-5. This falls well short of the legal standard, which requires a showing of prejudice through the loss of non-cumulative, probative evidence. *See Caparotta v. Entergy Corp.*, 168 F.3d 754, 758 (5th Cir. 1999) (ordering retrial for admission of evidence of "poor adherence" to document retention policy because the evidence had "minuscule" value but was substantially prejudicial).

As support, Plaintiffs focus on a reference to "mimicking" the FICO range in PX0022. But such evidence is cumulative because the mimicking reference appears in other documents. In fact, Plaintiffs have already used such documents on cross examination of Experian witness Stan Oliai. *See* Tr. 819:9-821:10 (Mr. Oliai was asked about the following reference in PX0398, which was received into evidence: "Extensive discussion of pros and cons of mimicking currently used score range versus using different score range.").

Plaintiffs also cite certain references in the documents to the possibility of litigation and seek to draw the inference that the parties had the requisite anticipation of imminent litigation. Docket No. 878 at 4-5 & n.18. But they cite nothing showing that litigation was even threatened at the time and instead focus on vague references to the possibility of antitrust or trade secret litigation. *See id.* at 4-5 (references to the

possibility of a lawsuit "yelling 'collusion'" or claiming parties "stole someone's IP"). Plaintiffs can cite no reference to even a remote fear of trademark litigation, and none existed. *See United States v. Kitsap Physicians Inc.*, 314 F.3d 995, 1001-02 (9th Cir. 2002) (no duty to preserve where defendants "were not on notice of litigation, much less a specific, future *qui tam* lawsuit" that was eventually brought); Carroll Dep. 70:9-12 (confirming no anticipation of litigation during Project Trident) (Docket No. 739, Ex. 18).[2]

Accordingly, admitting evidence of shredding during Project Trident serves no purpose in Plaintiffs' case and will inflame jury prejudice against Defendants. Such evidence should be excluded.

Moreover, Plaintiffs' submission does nothing to establish that an adverse inference is warranted with respect to alleged spoliation relating to the NCAC, or that Plaintiffs' latest spoliation theory has any bearing whatsoever on the issues in this trial. As an initial matter, Plaintiffs appear to be proposing to question Experian witness David Williams regarding the issue of spoliation, but they have no reason to believe that Mr. Williams would have any knowledge regarding legal hold procedures applied at the NCAC. Plaintiffs are well aware of Mr. Williams' lack of knowledge regarding the NCAC credit report dispute line, and they even moved to preclude Mr. Williams from testifying regarding the NCAC given his lack of foundation in that area as expressed

---

[2] Plaintiffs also cite a request for indemnification by the third party project manager, Mercer Oliver Wyman and suggest that one can infer anticipation of litigation from this request. Docket No. 878 at 5. But this again requires a quantum leap in logic as requests for indemnification in business agreements are routine.

during his deposition. As a result, Plaintiffs have no basis to address this topic with Mr. Williams. Counsel should be precluded from raising such an inflammatory and irrelevant topic in front of the jury with a witness they know cannot even answer the questions.

As for the substance of Plaintiffs' claim, they already submitted this same argument as part of their motion to compel NCAC and other call center documents earlier in the case. (Docket No. 603 at 32.) As Your Honor is aware, that motion was considered and rejected by Magistrate Judge Mayeron, (Docket No. 692.), and Your Honor overruled Plaintiffs' objections to Judge Mayeron's ruling, (Docket No. 710). Your Honor and Judge Mayeron made no finding, nor was there any evidence to support such a finding, that Experian acted in bad faith in carrying out its routine document retention procedures with respect to NCAC call recordings. *Id.*; *Morris* v. *Union Pacific Railroad*, 373 F.3d 896, 899-903 (8th Cir. 2004) (adverse inference was not justified where there was no intention to destroy evidence, even where there was a possibility of litigation).

In addition, Plaintiffs have offered no evidence to suggest that the NCAC likely had any information relevant to this litigation, or that such information would have been destroyed. As Experian explained in response to Plaintiffs' motion to compel NCAC call center documents (and the numerous communications that preceded that motion), the NCAC is responsible for addressing consumer disputes regarding information on their credit reports, not credit scores, and was unlikely to possess information relevant to this litigation. (Docket No. 609 at 6.) Nonetheless, Experian agreed to review a sample of NCAC call recordings. This review confirmed Experian's belief that the NCAC did not

possess relevant information. In fact, Experian produced only one call transcript from its review – this transcript did not contain evidence of relevant confusion, but was produced for illustrative purposes only. *Id.* at 25.

Plaintiffs' only "showing" in support of their request to show spoliation evidence relating to the NCAC to the jury is their own self-serving statement that "one can reasonably infer . . . many instances of relevant and otherwise admissible consumer confusion would have been discovered by Fair Isaac." That is not a showing. Indeed, as this Court recognized, it is "difficult to comprehend how the production of additional consumer confusion evidence, to the extent that it even exists, would materially impact the issues in this case." (Docket No. 710 at 10, n.2.)

Moreover, Plaintiffs' offer of proof does not satisfy the strict standard necessary to justify an adverse inference instruction, such as a duty to preserve, bad faith, and prejudice. *See Wagoner* v. *Black & Decker (U.S.) Inc.*, Civ. No. 05-1537 (JNE/SRN), 2006 WL 2289983, at *3 (D. Minn. Aug. 8, 2008); *Morris*, 373 F.3d at 899-903; *Johnson* v. *Ready Mixed Concrete Co.*, 424 F.3d 806, 811 (8th Cir. 2005); *Blandin Paper* v. *J&J Indus. Sales, Inc.*, No. 02-4858, 2004 WL 1946388, at *7 (D. Minn. Sept. 2, 2004). In fact, the record is clear that Experian followed its routine retention procedure as it pertained to NCAC call recordings in good faith, and had no basis to believe it was required to suspend that procedure. Experian began retaining NCAC call recordings

(going back to January 2008) only out of an excess of caution once it learned of Plaintiffs' baseless requests for NCAC-related information.[3]

For these reasons, evidence relating to the shredding aspect of the security procedures during Project Trident and the NCAC call retention procedures should be excluded. Moreover, no adverse inference should be included in the jury instructions because the proper procedure would have been for the Court to make initial findings of fact necessary to determine whether spoliation occurred before allowing a party to present spoliation evidence to the jury. *See Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 269 (8th Cir. 1993) (district court may impose sanctions for spoliation based on its inherent power after making predicate factual findings).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny admission of Plaintiffs' evidence of document destruction and reject Plaintiffs' adverse inference jury instruction.

Respectfully submitted this 4th day of November, 2009.

**Lindquist & Vennum PLLP**

By:  s/ Mark A. Jacobson
Mark A. Jacobson (MN Bar #188943)

---

[3] If evidence of shredding or the NCAC retention procedures is admitted, Defendants should be entitled to introduce evidence that puts Plaintiffs' evidence in context by introducing evidence that Plaintiffs likely destroyed large quantities of relevant documents *after* they had decided to commence this litigation. *See* EX0361.

Christopher Sullivan (MN Bar #0343717)
LINDQUIST & VENNUM, P.L.L.P.
4200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 371-3211
(612) 371-3207 (facsimile)

M. Elaine Johnston
Robert A. Milne
Christopher J. Glancy
Jack E. Pace III
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036-2787
(212) 819-8200
(212) 354-8113 (facsimile)

*Attorneys for Defendant Experian*
*Information Solutions, Inc. (and authorized*
*to sign on behalf of all Defendants)*


Lewis A. Remele, Jr. (MN Bar #90724)
Christopher R. Morris (MN Bar #230613)
BASSFORD REMELE
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402
Tel: (612) 376-1601
Fax: (612) 333-8829

James K. Gardner
Ralph T. Russell
Dao L. Boyle
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 2200
Chicago, IL 60602
Tel: (312) 269-8030
Fax: (312) 269-1747

*Attorneys for Defendant*
*Trans Union LLC*

        Barbara Podlucky Berens (MN #209788)
        Justi R. Miller (MN #0387330)
        KELLY & BERENS, P.A.
        3720 IDS Center
        80 South Eighth Street
        Minneapolis, MN 55402
        Tel: (612) 349-6171
        Fax: (612) 349-6416

*Attorneys for Defendant VantageScore Solutions, LLC*