# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Fair Isaac Corporation and
myFICO Consumer Services, Inc.,

Case No. 06-cv-4112 (ADM/DJF)

Plaintiffs,

v.

Equifax Inc.; Equifax Information Services
LLC; Experian Information Solutions Inc.;
Trans Union, LLC; VantageScore Solutions,
LLC; and Does I through X,

**THIRD AMENDED
PROTECTIVE ORDER**

Defendants.

---

This matter is before the Court on *Plaintiffs' Motion to Modify The Protective Order* ("Motion") (ECF No. 1127). Plaintiffs Fair Isaac Corporation and myFICO Consumer Services, Inc. (collectively, "FICO") seek a modification to the existing Protective Order (ECF No. 671) to allow its outside counsel in a current pending litigation to access documents designated "Confidential" or "Confidential Attorneys' Eyes Only" for the limited purpose of determining whether those documents are responsive to a discovery request in that litigation and satisfying FICO's notice obligations to the producing parties prior to making any production of the documents. Defendants Experian Information Solutions Inc., Equifax Inc., TransUnion, LLC and VantageScore Solutions, LLC do not oppose the Motion. (*See* ECF No. 1131.) Additionally, twenty days have elapsed since the Motion was filed and no party has filed an objection. (*See* Docket.)

The Court finds that FICO has established good cause and accordingly **GRANTS** the Motion. Based on the Motion and the accompanying documents, the following shall govern discovery in this case (changes to the existing Protective Order (ECF No. 671) are shown in bold):

1.      As used in this Protective Order, these terms have the following meanings:

      "Attorneys" means counsel of record;

      "Confidential" documents are documents designated pursuant to paragraph 2;

      "Confidential–Attorneys' Eyes Only" documents are the subset of confidential documents designated pursuant to paragraph 6;

      "Documents" are all materials within the scope of Fed. R. Civ. P. 34; and

      "Written Assurance" means an executed document in the form attached as Exhibit A.

2.      By identifying a document "Confidential," a party may designate any document, including interrogatory responses, other discovery responses, or transcripts, that it in good faith contends to constitute or contain trade secret or other confidential information, including competitive or proprietary business information and any copies, notes, abstracts, summaries, analyses, or other documents that reflect Confidential information contained in the foregoing materials.

3.      All "Confidential" and "Confidential–Attorneys' Eyes Only" documents, along with the information contained in the documents, shall be used solely for the purpose of this action, and no person receiving such documents shall, directly or indirectly, transfer, disclose, or communicate in any way the contents of the documents to any person other than those specified in paragraphs 5, 6 and 21. Prohibited purposes include, but are not limited to, use for competitive purposes or the prosecution of additional intellectual property rights.

4.      The parties' agreement to or compliance with this Protective Order shall not affect any party's right to object to the production of documents it considers not subject to discovery. In addition, nothing in this agreement shall affect any party's right to seek greater protections for particular documents or categories of documents if necessary.

5.      Access to any Confidential document shall be limited to:

(a)      the Court and its officers;

(b)      counsel of record and their office associates, legal assistants, and stenographic and clerical employees, as well as outside photocopying, data processing, or graphic production services employed by the attorneys to assist in this litigation.

(c)      persons shown on the face of the document to have authored or received it;

(d)      court reporters retained to transcribe testimony;

(e)      a total of 8 officers or employees of each party to this action who need access to the information to assist the counsel of record in this matter. At least 10 days prior to allowing such access to any employee or officer, a party shall notify all other parties in writing of the names and current job title or position of the officer or employee who is going to be given access to the documents governed by this Order. If a party objects in writing to such disclosure within 10 days after receipt of notice, no disclosure shall be made to that employee or officer until the party seeking disclosure to that employee or officer obtains the prior approval of the Court or the objecting party.

(f)     outside independent persons (i.e., persons who, after the filing of the original complaint herein on October 11, 2006, have not been employed by any party) who are retained by a party or its attorneys to furnish technical or expert services, including any employees of and other persons providing assistance to these outside independent person, or to provide assistance as mock jurors or focus group members or the like, and/or to give testimony in this action;

(g)     witnesses during their testimony at a deposition, hearing or trial, so long as such disclosure is limited to documents that (1) were produced by the party for whom such witness is employed; or (2) in any way mention or refer to VantageScore or the project that became VantageScore (except that confidential pricing, sales and marketing strategy information for one Defendant Bureau may not be shown to another Defendant Bureau or a Fair Isaac witness—unless the witness is otherwise permitted under this Protective Order to access the information); or (3) show on their face that the witness authored or received them; or (4) memorialize that the witness was privy to the document's contents (e.g., a document refers to a meeting attended by the witness);

(h)     witnesses during their preparation to be deposed or examined at a hearing or trial on the subject matter reflected in a confidential document only if it is reasonably likely that the confidential document will be used at the proceeding. In order to determine if it is reasonably likely that the confidential document will be used at the proceeding, at least 14 days before

the scheduled proceeding, those parties which intend to question the witness about documents that have been designated as confidential by parties other than the party preparing the witness for testimony, shall provide to counsel who is preparing the witness for the proceeding, a description of the subject matters, categories of documents or documents by bates stamp numbers which are likely to be covered in the proceeding. No party shall be permitted to question a witness about a confidential document if that party has failed to apprise the attorney preparing the witness for the proceeding that the subject matter, categories of documents or documents by bates stamp numbers are likely to be covered during the questioning of the witness, as required by this Order.

(i)    any other person as to whom the source producing the information agrees in writing in advance. In the event that consent by the source is not given, the party seeking to disclose such information may move the Court for an order permitting disclosure pursuant to the terms and restrictions of this Order.

(j)    **attorneys for Mayer Brown LLP, as well as their office associates and legal assistants, who are counsel of record for Fair Isaac Corporation in the matter *In re FICO Antitrust Litigation*, 1:20-cv-02114 (N.D. Ill.). All persons designated within this paragraph shall have access to Confidential documents for the limited purpose of reviewing materials that are potentially responsive to requests for the production served in**

*In re FICO Antitrust Litigation* **and complying with the procedures set forth in this Protective Order for the production of such documents**.

6.     The parties shall have the right to further designate confidential documents or portions of documents as "Confidential–Attorneys' Eyes Only." Disclosure of such information shall be limited to the persons designated in paragraphs 5(a), (b), (c), (d), (f), (g), (h), (i), **and (j)**.

7.     The term "Confidential–Attorneys' Eyes Only" as used in this Protective Order means documents or deposition testimony that the designating party designates as highly confidential. A party may designate as "Confidential–Attorneys' Eyes Only" any document, deposition testimony, answer to interrogatory, or answer to request for admission that constitutes or discloses highly sensitive information that the Designating Party in good faith believes is unknown to or not readily ascertainable by the other party, its employees, the trade, or the public and that would damage the designating party if disclosed to employees of the other party or the public. All copies, abstracts, excerpts, analysis, or other writings that contain, reflect or disclose the substance of documents designated "Confidential–Attorneys' Eyes Only" shall also be deemed highly confidential.

8.     Third parties producing documents in the course of this action may also designate documents as "Confidential" or "Confidential–Attorneys' Eyes Only," subject to the same protections and constraints as the parties to the action. A copy of this Protective Order shall be served along with any subpoena served in connection with this action. All documents produced by such third parties shall be treated as "Confidential–Attorneys' Eyes Only" for a period of 15 days from the date of their production, and during that period any party may designate such documents as "Confidential" or "Confidential–Attorneys' Eyes Only" pursuant to the terms of this Protective Order.

9.      Each person appropriately designated pursuant to paragraphs 5(e), (f), and (h) to receive "Confidential" or "Confidential–Attorneys' Eyes Only" information shall, before receiving such information, execute a "Written Assurance" in the form attached as Exhibit A. At least 10 days prior to disclosure of any "Confidential" or "Confidential–Attorneys' Eyes Only" information to any person appropriately designated pursuant to paragraph 5(f) who is known to be an employee or agent of, or consultant to, any competitor in the credit risk scoring industry of the party whose designated documents are sought to be disclosed, counsel shall provide a copy of the Written Assurance signed by such person to counsel for the party whose designated documents are sought to be disclosed. If a party objects in writing to such disclosure within 10 days after receipt of notice, no disclosure shall be made until the party seeking disclosure obtains the prior approval of the Court or the objecting party. As to persons acting as mock jurors, before they can access the information, the signed Written Assurance does not need to be provided to the party whose designated documents are sought to be disclosed (unless the mock juror is a current or former employee or consultant of one of the receiving parties—in which case all of the procedures set forth in paragraph 9 shall be followed). The parties shall not contact, depose, or call at trial any expert or consultant of another party disclosed pursuant to the advance notice procedures set forth in this paragraph, who is not designated to testify at trial.

10.     All depositions or portions of depositions taken in this action that contain  trade secret or other confidential information may be designated "Confidential" or "Confidential–Attorneys' Eyes Only" information and thereby obtain the protections accorded such materials. Confidentiality designations for depositions shall be made either on the record or by written notice to the other parties within 10 days of receipt of the transcript. Unless otherwise agreed, depositions shall be treated as "Confidential– Attorneys' Eyes Only" during the 10-day period following

receipt of the transcript. The deposition of any witness (or any portion of such deposition) that encompasses "Confidential" or "Confidential–Attorneys' Eyes Only" information shall be taken only in the presence of persons who are qualified to have access to such information.

11.     Any party who inadvertently fails to identify documents as "Confidential" or "Confidential–Attorneys' Eyes Only" shall have 10 days from the discovery of its oversight to correct its failure. Such failure shall be corrected by providing written notice of the error and substituted copies of the inadvertently produced documents. Any party receiving such inadvertently unmarked documents shall make reasonable efforts to retrieve documents distributed to persons not entitled to receive documents with the corrected designation.

12.     Any party who inadvertently produces to any other party in this litigation documents that are deemed to be privileged or otherwise immune from discovery shall, promptly upon discovery of such inadvertent disclosure, so advise the receiving party and request that the documents be returned. The receiving party shall return such inadvertently produced documents, including all copies, within 10 days of receiving such a written request. The party returning such inadvertently produced documents may thereafter seek re-production of any such documents pursuant to applicable law. Any such disclosure shall not constitute a waiver of any claim of privilege, including subject matter waiver. Any motion challenging the assertion of privilege or otherwise referring to the document(s) at issue shall be filed under seal.

13.     If a party files a document containing "Confidential" or "Confidential– Attorneys' Eyes Only" information with the Court, it shall file such document under seal and do so in compliance with the Electronic Case filing Procedures for the District of Minnesota. Any document or information so designated shall retain such status even after it is used in connection with a hearing or filing with the Court. Before disclosure at trial or a hearing of materials or

information designated "Confidential" or "Confidential–Attorneys' Eyes Only", the parties may seek further protections against public disclosure from the Court.

14.     Any party may request a change in the designation of any information designated "Confidential" or "Confidential–Attorneys' Eyes Only". Any such document shall be treated as designated until the change is completed. If the requested change in designation is not agreed to, the party seeking the change may move the Court for appropriate relief, providing notice to any third party whose designation of produced documents as "Confidential" or "Confidential–Attorneys' Eyes Only" in the action may be affected. The party asserting that the material is "Confidential" or "Confidential – Attorneys' Eyes Only" shall have the burden of proving that the information in question is within the scope of protection afforded by Fed. R. Civ. P. 26(c).

15.     All documents produced before and up to the entry of this Protective Order shall be treated as "Confidential–Attorneys' Eyes Only" pursuant to the terms of this Protective Order irrespective of the designation on the documents. After the entry of this Protective Order, the documents shall be treated according to the particular designations on the documents.

16.     Within 60 days of the termination of this action, including any appeals, each party shall either destroy or return to the opposing party all materials designated by the opposing party as "Confidential" or "Confidential–Attorneys' Eyes Only" and all copies of such materials, and shall destroy all extracts and data taken from such material. Each party shall provide a certification as to such return or destruction within the 60-day period.     Attorneys shall be entitled to retain, however, a set of all documents filed with the Court, all correspondence generated in connection with the action, and attorney work-product materials that reflect "Confidential" or "Confidential–Attorneys' Eyes Only" information.

17.     Any party may apply to the Court for a modification of this Protective Order, and nothing in this Protective Order shall be construed to prevent a party from seeking such further provisions enhancing or limiting confidentiality as may be appropriate.

18.     If any person (the "Receiver") receiving information governed by this Protective Order produced by a party (the "Producing Party") (a) is subpoenaed in another action, or (b) is served with a demand in another action to which he is a party, or (c) is served with any other legal process by a non-party to the Litigation, including any Governmental entity, seeking such information, the Receiver, before producing such information that was produced in this litigation, shall give written notice, by hand or facsimile transmission, within ten (10) business days of receipt of such subpoena, demand or legal process, to the Producing Party. The Receiver shall not produce any of the Producing Party's "Confidential" or "Confidential–Attorneys' Eyes Only" information, unless otherwise court-ordered, for a period of at least ten (10) business days after providing the required notice to the Producing Party, during which time the Producing Party may file objections or seek other relief against production of "Confidential" or "Confidential–Attorneys' Eyes Only" information with the appropriate court. If, within five (5) business days of receiving such notice, the Producing Party gives written notice to the Receiver that the Producing Party opposes production of its "Confidential" or "Confidential–Attorneys' Eyes Only" information, the Receiver shall not thereafter produce such information, except pursuant to a court order requiring compliance with the subpoena, demand, or other legal process. The Receiver shall provide the Producing Party at least five (5) days prior written notice of any hearing at which any court will consider the enforceability of the subpoena, demand, or other legal process. The Producing Party shall be solely responsible for asserting any objection to or seeking any other relief against the requested production. Nothing herein shall be construed as requiring the Receiver or anyone else

covered by this Order to challenge or appeal any order requiring production of "Confidential" or "Confidential–Attorneys' Eyes Only" information covered by this Order, or to subject himself or itself to any penalties for non-compliance with any legal process or order, or to seek any relief from this Court.

19.     No action taken in accordance with this Protective Order shall be construed as a waiver of any claim or defense in the action or of any position as to discoverability or admissibility of evidence.

20.     The obligations imposed by this Protective Order shall survive the termination of this action. Within 60 days following the expiration of the last period for appeal from any order issued in connection with this action, the parties shall remove any materials designated under this Protective Order from the office of the Clerk of Court.      Following that 60-day period, the Clerk of the Court shall destroy all "Confidential" or "Confidential–Attorneys' Eyes Only" materials.

21.     In addition to any restrictions in this Protective Order for "Confidential" or "Confidential-Attorneys' Eyes Only" information, the following restrictions shall also apply to any consumer credit scoring algorithms, related computer programs, source code, and specifications, and documents reflecting any such information that may be produced in this case (collectively referenced as "Confidential-Algorithm"):

    (a)     Such information will be designated "Confidential-Algorithm" by the producing party. Information produced in electronic form shall be so designated in the correspondence producing such information and on the face of the disc or other media used to produce such information.

11

(b)    Confidential-Algorithm information shall be produced in electronic form (if available in electronic form) in a readable way agreed to by the parties.

(c)    Only the receiving party's outside expert consultants as set forth in paragraph 5(f) and the receiving party's outside counsel of record can have access to the Confidential Algorithm information. The receiving party's outside counsel of record shall include those attorneys, legal assistants, secretaries, graphic production services and other staff employed within the offices of counsel of record who are necessary to assist in this litigation, so long as all such employees are identified by name and position to the party producing the Confidential-Algorithm information. In addition, the procedures set forth above in paragraph 9 must be followed before any outside expert consultants can access the Confidential-Algorithm information. Without further agreement or order of this Court, no one from the receiving party, shall have further access to the Confidential-Algorithm information after it is produced to the receiving party.

(d)    The Confidential-Algorithm information, any electronic copies of Confidential-Algorithm information, and any analysis of the Confidential-Algorithm information performed on a computer, shall only be placed on a stand-alone computer or stand-alone network of computers (that is not connected to a larger network, internet, or any peripheral devices not exclusively dedicated to the stand-alone computer or network) located at the office of the receiving party's expert consultants, the office of the receiving party's outside counsel of record, or at the offices of both the

receiving party's expert consultants and the receiving party's outside counsel of record. Such computers and peripheral devices shall be password protected. When not in use or when in transit or when unattended, the Confidential-Algorithm information, electronic copies of the Confidential-Algorithm information and any analysis performed on the Confidential-Algorithm information must be kept in a locked room that is accessible to only those persons entitled to receive such information, or, if the outside expert consultant is affiliated with an academic institution, the department administrators who ordinarily would have keys to the expert's room.

(e)     Electronic portable media, paper copies, print-outs, and analyses that relate to Confidential-Algorithm information may be made by the outside expert consultants or by the receiving party's outside counsel of record, provided however that these materials are (a) marked "Confidential-Algorithm" and bates stamp numbered, and (b) when not in use or otherwise unattended or in transit, they are kept in the locked room or locked file cabinet at the offices of the outside expert consultant or the receiving party's outside counsel of record.     In addition, the outside expert consultants and the receiving party's counsel of record shall be permitted to take these materials outside of the secured locations, providing the materials are (i) marked "Confidential-Algorithm" and bates stamp numbered, and (ii) kept in a secured container or location at all times when in transit, unattended or not in use, except that such materials may be sent in a sealed container to and from a receiving party's outside expert consultants and the receiving party's

outside counsel of record via messenger or an overnight mail or courier service with tracking capabilities. Outside counsel of record for the receiving party shall maintain a complete log of all documents, by bates stamp number, that he or she creates pursuant to this paragraph. The outside expert consultant for the receiving party shall maintain a complete log of all documents, by bates stamp number, that he or she creates pursuant to this paragraph and provide that log to the outside counsel for the receiving party to be incorporated into the outside counsel's log.

(f)    Confidential-Algorithm information or the results of any analysis of such information may be used in connection with a court filing or at the depositions of anyone already allowed access to such Confidential-Algorithm information, providing that any depositions or Court filing that contains Confidential-Algorithm information must be designated and treated as Confidential-Attorneys' Eyes Only under this Protective Order, and any such filing must be filed under seal pursuant to Paragraph 13 of this Protective Order. In the event that a party seeks to use Confidential-Algorithm information or the results of any analysis of such information at the deposition of a person not already allowed access to such information, the party taking the deposition may request from the party producing the Confidential-Algorithm information permission to use the information or analysis of such information at the deposition. If the party producing the Confidential-Algorithm information does not agree to the request, the party seeking to use the information or analysis of this information at the

deposition may not use the information or analysis at the deposition until it has moved and obtained from the Court an order permitting the use of this information or analysis at the deposition. The party producing the Confidential-Algorithm information shall have the burden of proving that the information or analysis of the information should not be used at the deposition of this person.

(g)     At the completion of this litigation, all Confidential-Algorithm information – including all electronic versions, paper copies and print-outs – must be returned to the producing party. Counsel of record for the receiving party, and expert consultants who had access to any such information are responsible for verifying that all handwritten or electronic notes or other work papers that relate to Confidential-Algorithm information – originals and copies – have been destroyed, and must confirm in writing to counsel for the producing party that the return of all Confidential-Algorithm information and the destruction of all notes and work papers have been completed within a reasonable time after the completion of this litigation.

(h)     The receiving party will bear all costs associated with the security measures necessary to maintain Confidential-Algorithm information in compliance with this Order.

22.     In addition to any restrictions in this Protective Order for "Confidential-Attorneys' Eyes Only" information, the following in-house counsel at Fair Isaac, defendants Experian Information Solutions, Inc. ("Experian") and Trans Union LLC ("Trans Union"), and former defendant Equifax (collectively referred to as "In-House Counsel Designees") shall be permitted

access as set forth in Paragraphs 24 and 25 to certain memoranda and order identified in Paragraphs 23 and 24, and to attend the full hearing on the motions for summary judgment as set forth in Paragraph 26:

    (a)    For Fair Isaac: Mark Scadina and Renee Jackson.

    (b)    For Experian: Ann Sterling and Jason Engel.

    (c)    For Trans Union: John Blenke and Gary Friedlander

    (d)    For Equifax: Kent Mast.

23.    For the purpose of this Order, the following documents are referred to as the "AEO Memoranda":

    (a)    Fair Isaac's Memorandum of Law in Support of its Motion to Compel an In-Camera Review of Documents and, if Appropriate, for Appointment of a Special Master to Conduct the Review (filed December 15, 2008);

    (b)    Defendants' Memorandum of Law in Opposition to Fair Isaac's Motion to Compel an In-Camera Review of Documents and for Appointment of a Special Master to Conduct the Review (filed December 29, 2008);

    (c)    Memorandum of Law in Support of Trans Union LLC's Motion for a Separate Trial on Plaintiffs' Breach of Contract Claim (filed January 30, 2009);

    (d)    Memorandum of Law in Support of Motion of Trans Union LLC and VantageScore Solutions, LLC for Summary Judgment Dismissing Contract Related Counts (Counts 13 and 14) (filed January 30, 2009);

(e)     Memorandum of Law in Support of Defendants' Motion for Summary Judgment Dismissing Trademark-Related Counts (Counts 1-4, 6, and 7) (filed January 30, 2009);

(f)     Memorandum of Law in Support of Defendants' Motion for Summary Judgment Dismissing Antitrust Counts (Counts Eight Through Twelve) (filed January 30, 2009);

(g)     Memorandum of Law in Support of Defendants' Motion for Summary Judgment Dismissing False Advertising Counts (Counts 5-7) (filed January 30, 2009);

(h)     Fair Isaac's Memorandum of Law in Opposition to Trans Union's Motion for a Separate Trial on Fair Isaac's Breach-of-Contract Claim (filed March 5, 2009);

(i)     Fair Isaac's Memorandum of Law in Opposition to Trans Union and VantageScore's Motion for Summary Judgment Dismissing Contract-Related Claims (filed March 5, 2009);

(j)     Fair Isaac's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment on Fair Isaac's Trademark-Infringement, Passing-Off, Deceptive-Trade-Practices, Unjust-Enrichment, Unfair-Competition, and False-Advertising Claims (filed March 5, 2009);

(k)     Fair Isaac's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment Dismissing Antitrust Counts (Counts Eight Through Twelve) (filed March 5, 2009);

(l)    Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment Dismissing Antitrust Counts (Counts Eight through Twelve);

(m)    Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment Dismissing Trademark-Related Counts (Counts 1-4, 6, and 7);

(n)    Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment Dismissing False Advertising Counts (Counts 5-7);

(o)    Reply Memorandum of Law in Support of Motion of Trans Union LLC and VantageScore Solutions, LLC for Summary Judgment Dismissing Contract Related Counts (Counts 13 and 14);

(p)    Reply in Support of Trans Union LLC's Motion for a Separate Trial on Plaintiffs' Breach of Contract Claim.

24.    The "In-House Counsel Designees," after executing a copy of the Written Assurance attached as Exhibit A to the Second Amended Protective Order, can have access to the AEO Memoranda (but not the supporting declarations, affidavits, or exhibits) and the Order and Memorandum that was filed on March 23, 2009 ("the Order") [Docket No. 658].

25.    Before any In-House Counsel Designee is allowed access to any of the AEO Memoranda or the Order, outside counsel for each of the parties and Equifax must have an opportunity to make good-faith redactions of the parts of AEO Memoranda and the Order that reflect highly competitive information. Only after all outside counsel have expressly conveyed the extent and nature of their redactions on a given document can the In-House Counsel Designees

have access to that document, and then the In-House Counsel Designees can only have access to the redacted version of that document.

26.    In-House Counsel Designees can attend the full hearing on the motions for summary judgment, unrestricted, for example, by what arguments might be made or what exhibits might be discussed.

**IT IS SO ORDERED.**


Dated: July 15, 2025                                    *s/ Dulce J. Foster*
                                                        DULCE J. FOSTER
                                                        United States Magistrate Judge

## EXHIBIT A

## WRITTEN ASSURANCE

_____ declares that:

1.      I reside at _____ in  the city of _____, county of _____, state of _____.

2.      I   am   currently   employed   by   _____   located   at _____ and my current job title is _____.

3.      I have been requested by counsel for (Fair Isaac Corporation; Equifax Inc.; Experian Information Solutions Inc.; Trans Union, LLC; VantageScore Solutions, LLC) to review certain material which I have been informed is designated information within the terms of the protective Order issued by the Court in Civil Action No. 06-CV-4112 (ADM-JSM), pending in the United States District Court for the District of Minnesota.

4.      I have read and believe I understand the terms of the Protective Order. I agree to comply with and be bound by the provisions of the Protective Order. I understand that any violation of the Protective Order may subject me to sanctions by the Court.

5.      I shall not divulge any documents, or copies or documents, designated "Confidential", "Confidential–Attorneys' Eyes Only" or "Confidential-Algorithm" obtained pursuant to such Protective Order, or the contents of such documents, to any person other than those specifically authorized by the Protective Order. I shall not copy or use such documents except for the purposes of this action and pursuant to the terms of the Protective Order.

6.      As soon as practical, but no later than 30 days after final termination of this action, I shall return to the attorney from whom I have received any documents in my possession designated "Confidential", "Confidential–Attorneys' Eyes Only," or "Confidential-Algorithm",

and all copies, excerpts, summaries, notes, digests, abstracts, and indices relating to such documents.

       7.     I submit myself to the jurisdiction of the United States District Court for the District of Minnesota for the purpose of enforcing or otherwise providing relief relating to the Protective Order.

      I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____

_____